1  Yi Tai Shao, Esq. (CA 182768)
   SHAO LAW FIRM, PC
2  4900 Hopyard Road, Ste. 100
   Pleasanton, CA 94588-7101
3  Tel:   (408) 873-3888
   Fax:   (408) 418-4070
4
   Attorney for Plaintiff Yi Tai Shao and in Pro Per
5

6

7

8                        U.S. District Court
                         Washington D.C.
9

10

11                                 Case: 1:18−cv−01233   Jury Demand
                                   Assigned To : Contreras, Rudolph
12                                 Assign. Date : 5/21/2018
                                   Description: Pro Se Gen Civil  (F Deck)
13

14

15

16

17

18

19

20

21

22

23

24

25                                        RECEIVED

26                                        MAY 2 1 2018

27                                        Clerk, U.S. District and
                                            Bankruptcy Courts
28

                                   - 1 -

COMPLAINT

| | |
|---|---|
| 1 | Yi Tai Shao, |
| 2 |     Plaintiff, |
| 3 | v. |
| 4 | Chief Justice John G. Roberts, Associate Justice Anthony M. Kennedy, Associate |
| 5 | Justice Clarence Thomas, Associate Justice Ruth Bader Ginsburg, Associate Justice |
| 6 | Stephen Beyer, Associate Justice Samuel Alito, Associate Justice Sonia Sotomayor, |
| 7 | Associate Justice Elena Kagan, Jordan Bickell, Jeff Atkins, US House Judiciary |
| 8 | Committee, US Senate Judiciary Committee, House Representative Eric Swamwell, |
| 9 | Senate Diane Feinstein, US Supreme Court, American Inns of Court, William A. Ingram |
| 10 | American Inn of Court, San Francisco Bay Area American Inn of Court, James |
| 11 | McManis, Michael Reedy, McManis Faulkner, LLP, Janet Everson, Santa Clara |
| 12 | County Superior Court of California, Rebecca Dalgado, Susan Walker, David |
| 13 | Yamasagi, Lisa Herrick, California Sixth District Court of Appeal or "The Clerk's |
| 14 | Office of California Sixth District Court of Appeal" or California Sixth District Court of |
| 15 | Appeal, Justice Conrad Rushing, Justice Eugene Premo, Justice Franklin Elia, |
| 16 | Justice Patricia Bamattre-Manoukian, Judge J. Clifford Wallace, Judge Edward Davila, |
| 17 | Judge Patricia Lucas, Judge Rise Pichon, Judge Theodore Zayner, Judge Joshua |
| 18 | Weinstein, Judge Mary Ann Grilli, Judge Maureen Folan, Judge Lucy H. Koh, Judge |
| 19 | Peter Kirwan, Commissioner Gregory Saldivar, Darryl Young,  Mary L. Murphy, |
| 20 | Sarah Scofield, Jill Sardeson, Misook Oh, BJ Fadem, John Orlando, David Sussman, |
| 21 | Tsan-Kuen Wang, Elise Mitchell, Carole Tait-Starnes, Department of Family and |
| 22 | Children Services, YouTube, Inc., a Delaware Corporation, Google Inc., a |
| 23 | Delaware Corporation, Kevin L. Warnock, Esther Chung, Does 1-50 |
| 24 | |
| 25 |     Defendants. |

DEMAND FOR JURY TRIAL

Verified Complaint for Declarative, Injunctive Relief and/or Monetary Damages

1. Violation of the First Amendment of Constitution (against Chief Justice John G. Roberts, Associate Justice Anthony M. Kennedy, Associate Justice Clarence Thomas, Associate Justice Ruth Bader Ginsburg, Associate Justice Stephen Beyer, Associate Justice Samuel Alito, Associate Justice Sonia Sotomayor, Associate Justice Elena Kagan, Jordan Bickell, Jeff Atkins, US House Judiciary Committee, US Senate Judiciary Committee, House Representative Eric Swamwell, Senate Diane Feinstein, US Supreme Court

2. Aiding and Abetting (against James McManis, Michael Reedy, McManis Faulkner, American Inns of Court)

3. Violation of the First Amendment of Constitution (against Judge Lucy H. Koh)

4. Violation of the First Amendment of Constitution (against Judge J. Clifford Wallace)

5. Violation of the First Amendment of Constitution (against Judge Edward Davila)

6. Violation of 42 USC §1983 (against Santa Clara County Superior Court of California, Rebecca Dalgado, Susan Walker, David Yamasagi, Lisa Herrick, California Sixth District Court of Appeal or "The Clerk's Office of California Sixth District Court of Appeal" or California Sixth District Court of Appeal, Justice Conrad Rushing, Justice Eugene Premo, Justice Franklin Elia,  Justice Patricia Bamattre-Manoukian, Judge J. Clifford Wallace, Judge Edward Davila, Judge Patricia Lucas, Judge Rise Pichon, Judge Theodore Zayner, Judge Joshua Weinstein, Judge Mary Ann Grilli, Judge Maureen Folan, Judge Lucy H. Koh, Judge Peter Kirwan, Commissioner Gregory Saldivar, Darryl Young,  Mary L. MurphySanta Clara County Superior Court of California, Rebecca Dalgado, Susan Walker, David Yamasagi, Lisa Herrick, California Sixth District Court of Appeal or "The Clerk's Office of California Sixth District Court of Appeal" or California Sixth District Court of Appeal, Justice Conrad Rushing, Justice Eugene Premo, Justice Franklin Elia,  Justice Patricia Bamattre-Manoukian, Judge J. Clifford Wallace, Judge Edward Davila, Judge Patricia Lucas, Judge Rise Pichon, Judge Theodore Zayner,

1

2

3

Judge Joshua Weinstein, Judge Mary Ann Grilli, Judge Maureen Folan, Judge Lucy H. Koh, Judge Peter Kirwan, Commissioner Gregory Saldivar, Darryl Young,  Mary L. Murphy, Sarah Scofield, Jill Sardeson)

4

5

6

7

7.Aiding and Abetting (against American Inns of Court, William A. Ingram American Inn of Court, San Francisco Bay Area American Inn of Court, James McManis, Michael Reedy, McManis Faulkner, LLP, Janet Everson, BJ Fadem, Elise Mitchell, John Orlando, David Sussman, Tsan-Kuen Wang, Carole Tait-Starnes)

8

9

8. Injunctive and monetary relief for civil harassment: YouTube, Inc., a Delaware Corporation, Google Inc., a Delaware Corporation

10

11

9. Injunctive and monetary relief for Civil harassment: Kevin L. Warnock, Esther Chung

12

10.  Government Code §815.6 (Department of Family and Children Services)

13

14

11. Government Code 815.6 (Santa Clara County Superior Court)

15

12. Government Code 815.6 (California Sixth District Court of Appeal)

16

17

18

19

20

21

22

23

24

25

26

27

28

## Table of Contents

VERIFIED COMPLAINT ................................................................................................ 8

JURISDICTION AND VENUE ...................................................................................... 8

PARTIES ........................................................................................................................ 8

A. On 8/4/2010 in illegal ex parte communications, a conspiracy between Judge Davila, Family Court Services Screener Jill Sardeson, Family Court Services Director Sarah Scofield, Social Worker Misook Oh at the Department of Family and Children Services, and Opposing counsel David Sussman was worked out to effect an illegal custody switch of SHAO's 5-year old daughter from SHAO to the child's father, who the child had consistently identified as abusive, who had a history of domestic violence against SHAO, and who was suffering from dangerous mental illness. This conspiracy to remove SHAO's custody, including Judge Davila signing an ex parte order of Contempt and orders filed on August 5, 2010, all happened outside the presence of the parties and without an evidentiary hearing, without any notice or opportunity to be heard. SHAO's child was illegally removed from her at the Case Management Conference, and has never been able to come home since.                                            44

B. SHAO hired McManis Faulkner, LLP to attack as unconstitutional the 8/4/10 and 8/5/10 orders that had been issued in violation of her Constitutional rights to custody and to due process, but on his first day, her attorney succumbed to pressure from Judge Davila during an in chambers conference not to attack those pleadings. By following the court's request rather than SHAO's request, SHAO's attorneys acted directly contrary to her interests and committed malpractice. This in chambers agreement between Attorney Reedy, Judge Davila and David Sussman that Reedy not attack the illegal orders was the second conspiracy.  SHAO did not learn of it until long after it occurred. 47

C. Irregular prolonged parental deprival of SHAO after her motion to set aside was granted, which was later discovered to be conspiracies to protect James McManis and Michael Reedy from their p 50

D. On September 12, 2012 at the Court's Judicial Child Custody Conference, Judge Theodore Zayner coached David Sussman to raise the issue of a remittitur that was issued on April 16, 2012, nearly six months prior, in order to use the remittitur as an excuse to revive Sussman's discovery motion which had asked for the address and phone number information of SHAO's family, aimed at harassing SHAO in retaliation for her having attacked the qualifications of the court appointed custody evaluator.        53

E. Judge Patricia Lucas issued an irregular child custody order of November 4, 2013 that was not based upon any facts that had been covered during the trial, but included facts that were custom designed to act as a defense to malpractice for Michael Reedy in his defense of SHAO's malpractice action against him. SHAO did not know at the time how close a relationship Judge Lucas and Michael Reedy had, nor that Michael Reedy was interfering in her custody case from behind the scenes to ensure his defense of no causation to her malpractice case against him.        55

F. SHAO discovered in September of 2014 that Wang had been diagnosed with a dangerous mental condition which could endanger the safety of their children at any time.  This evidence should have been the basis for an immediate return of child custody to SHAO,  but it was not.    57

G. After SHAO discovered the dangerous mental disorder Wang was suffering from, which should have justified an immediate custody switch back to SHAO, there was a sixth Conspiracy to abuse judicial contempt power to attempt to have SHAO arrested based upon a frivolous contempt request by Wang 60

- 4 -

H.    The judicial officers of the Santa Clara County Court continued to conspire to punish and harass SHAO in retaliation for her continually exposing their misconducts by challenging her bar license, her driver's license, and illegally imputing income to SHAO without any prior notice nor motion    61

I.    SHAO sued James McManis, Michael Reedy and McManis Faulkner, LLP in Santa Clara County Superior Court of California (case number 112CV220571) and in US District Court in Northern California in San Jose (case number 14-01137) without knowing the conspiracies James McManis and Michael Reedy had engaged in with the judges Davila, Zayner or Lucas. SHAO also brought another civil rights lawsuit with the US District Court (case number 14-01912) 63

J.    McManis Faulkner, LLC. irregularly procured a vexatious litigant order against SHAO from its client, Santa Clara County Superior Court of California, on June 16, 2015. Also after June 23, 2015, there was another mysterious prefiling vexatious litigant order issued by the same court, which bore a false stamped filing date of June 16, 2015 when such order was not in existence until after June 23, 2015 and was not entered into the docket of 112CV220571.    65

K.    One month after the issuance of these two vexatious litigant orders, SHAO finally discovered the close relationships that James McManis, Michael Reedy, and the McManis Faulkner law firm had going on with the various judges who had been systematically blocking her efforts to recover custody of her child.    69

L.    March 14, 2016's Incident exposed the conspiracies to use permanent parental deprival of SHAO as McManis and Reedy's sole defense from SHAO's lawsuit. 70

169.    McManis and Reedy have exerted their influence and successfully wreaked havoc behind the scenes of SHAO's various appeals, ensuring that the Appellate Records Clerks routinely issue false notices of Non Compliance and dismissals without basis in fact. They have kept SHAO busy for over a year just trying to undo this constant mischief. Any reasonable attorney or member of the public who knew of the sequence of events that occurred from March 12, 2016 through March 14, 2016 would believe that there was a conspiracy to dismiss Ms. Shao's appeals which involved at least Deputy Clerk of Court R. Delgado on behalf of Santa Clara County Superior Court, Justice Rushing of the California Sixth Appellate District Court of Appeal, and the McManis Faulkner firm's attorneys, if not family attorneys.    77

M.    The eighth conspiracy to dismiss SHAO's appeals arose 11 months after the March 14, 2016 dismissals. from February 2017 with multiple "shenanigans" continued to present where apparently Presiding Judge Patricia Lucas of Santa Clara County Court and other Justices at California Sixth District Court of Appeal were involved as well.    77

N.    The ninth conspiracy was to misuse the vexatious litigant prefiling order illegally procured by James McManis and Michael Reedy to deter SHAO's access to the family court and block SHAO's right to appeal.    85

O.    The 10th conspiracy was to frighten and bully SHAO by trying to have her get arrested again, and trying to get her confidential residence disclosed to her domestic violence perpetrator.    89

P.    Presiding Judge Patricia Lucas, Judge Peter Kirwan, Judge Maureen Folan and the Santa Clara County Court continued conspiring with James McManis and Michael Reedy to obstruct administration of justice to stay the jury trial of Shao v. McManis, et al. indefinitely, refused to change venue with false excuse of a stay of proceeding issued by Judge Woodhouse on March 11, 2016. When an application to lift stay to be made in front of Judge Woodhouse, the court would delegate Judge Peter Kirwan to handle with known direct conflicts of interest, and refused to allow it to be made in front of Judge Woodhouse, when lifting stay is within the jurisdiction of a case management judge.    93

- 5 -

Q.    In absence of all jurisdiction, in July 2016 Judge Theodore Zayner irregularly removed the civil case files of Shao v. McManis, et al from the trial department of Judge Derrick Woodhouse, and then "lost" Volume V of those case files, as well as the original deposition transcripts of James McManis and Michael Reedy, the key documents which contained admissions from Reedy and McManis of their influence over the judges through the Inns of Court and as the court's attorney which contained admissions of an attorney/client relationship between their firm and the court, and their co- membership in the Inns of court with all the judges who had denied SHAO's pleas for return of custody over the years. This demonstrates Santa Clara County Court's stalling SHAO's child custody return is to help establish the defense of James McManis and Michael Reedy against SHAO's malpractice lawsuit.        95

R.    The same scheme of irregularities of alterations of the docket, the court generating false reports/notices of non-compliance and deterring SHAO's filings also took place in the US Supreme Court, indicating a common pattern of mischief by McManis Faulkner influencing the Supreme Court to its advantage.    97

S.    EIGHT US SUPREME COURT JUSTICES OBSTRUCTED JUSTICE BY CONSPIRING TO ABDICATE THEIR CONSTITUTIONALLY IMPOSED JUDICIAL DUTY REPEATEDLY IN REFUSING TO DECIDE THREE REQUESTS FOR RECUSAL ON JANUARY 8, 2018, AND FEBRUARY 23, 2018 IN VIOLATION OF 18 USCS 371, 42 USCS 1985 AND 18 USCS 1512(C)(2) 110

T.    Judge J. Craig Wallace at the Ninth Circuit of U.S. Court of Appeal knowingly violated Rule 60(b) of FRCP where he willfully decided appeal within three days of submission when he knew that he has had direct conflicts of interest and thus he knowingly omitted almost all issues and wrote a 34 lines' Memorandum to suppress all discussion of conspiracies of James McManis and Michael Reedy with the state court judges/justices when 28 USC §455(b) motion to disqualify Ninth Circuit was pending, undecided where his name was referenced three time in that motion.    111

    1.    As A Social Club, Common Membership Of Judges And Attorneys Representing Parties Create The Appearance Of Bias............................. 111

    2.    The Ninth Circuit And Eight Justices of This Court Both Sponsored The Private Clubs Without Reservation ......................................................... 112

U.    Google, Inc, YouTube, Inc., JAMES MCMANIS, MICHAEL REEDY AND CHIEF JUSTICE JOHN ROBERTS APPEARED TO ALL CONSPIRE TO HARASS SHAO        114

V.    ON APRIL 5, 2018 SHAO discovered that her gmail accounts and many files stored on three of her computers had been hacked into and read, and that the focus of the hackers' attentions had been on all pleadings relevant to the appeal from the order requiring SHAO to reveal her confidential address to Wang and Sussman.        116

VIOLATION OF THE FIRST AMENDMENT OF THE CONSTITUTION ................ 117

A.    Conspiracy of obstruction or destruction of the function of the Clerk's Office of the US Supreme Court in violation of 18 USC §371 and 18 USC §2071        117

B.    All of the Eight Named Justices for Recusal Refused to Decide the Requests for Recusal that involve the central issue of their significant financial interest with the American Inns of Court, that disrupted the basic function of the US Supreme Court to decide in violation of 18 USC §371 122

COUNT II ............................................................................................................ 133

AIDING AND ABETTING (THE CRIMES AND IRREGULARITIES IN

- 6 -

COURT I) ................................................................................................... 133

(Against James McManis, Michael Reedy, McManis Faulkner, American Inn of

Court, William A. Ingram American Inn of Court, San Francisco Bay Area

Intellectual Property American Inn of Court).................................................. 133

COUNT III............................................................................................... 134

FIRST AMENDMENT VIOLATION ............................................................. 134

(Against Judge Lucy H. Koh) ..................................................................... 134

COUNT IV. .............................................................................................. 136

FIRST AMENDMENT VIOLATION ............................................................. 136

(Against Judge J. Clifford Wallace) ............................................................ 136

COUNT V................................................................................................. 137

FIRST AMENDMENT VIOLATION ............................................................. 137

(Against Judge Edward Davila)................................................................... 137

COUNT VI ............................................................................................... 139

42 USC §1983 violation ............................................................................ 139

COMPLAINT

**VERIFIED COMPLAINT**

Pursuant to Rule 9, Plaintiff, Yi Tai Shao, alleges the following particular facts:

### JURISDICTION AND VENUE

1. Count I, III through V of this civil action are brought pursuant to the First Amendment of the US Constitution, Count VI is based on 42 U.S.C. §1983, seeking declarative relief and/or injunctive relief against the named defendants and monetary damages against Presiding Judge Patricia Lucas, Presiding Judge Rise Pichon, Judge Edward Davila, Judge Theodore Zayner, Presiding Judge Conrad Rushing and Sarah Scofield for the non-judiciary acts that are completely in excess of any subject matter jurisdictions, Counts II and VII are aiding and abetting these federal claims which are brought for monetary damages. Count VIII and IX are Constitutional privacy cause of actions. Jurisdiction of this court is invoked pursuant to 28 USC §1331 and 28 USC § 1343.

2. Count X through XII are supplemental state law claims that are so related to the claims raised in Count I through VII that they form a part of the same case or controversy under Article III of the US Constitution such that jurisdiction of this Court is invoked pursuant to 28 USC §1367(a).

3. Venue is proper in this judicial district pursuant to 28 USC §1391(b)(1)&(2), (c)(1)(2) (3), (e)(1) and (g) because some of the actions giving rise to plaintiff's claims alleged below were committed within the jurisdiction and many defendants reside or work in this jurisdiction.

### PARTIES

4. Plaintiff Yi Tai Shao ["SHAO"], also known as Linda Shao, is a licensed attorney in California since 1996. She suffered a continuous lengthy parental deprival of custody with only supervised visits with her child as the result of a series of multiple conspiracies (at least 10 are named in this Complaint) of judicial corruption with the common goal of permanent parental deprival and harassment since August 4, 2010, suffered at the hands of

- 8 -

a group of judges associated with the giant gang, American Inns of Court.  Despite her successful 7/22/11 motion to set aside the original orders depriving her of custody (because they were based on fraud and a violation of her due process rights) she has never been able to get her child custody back. Her child was taken from her and was placed by the court in an unsafe home with her abusive and mentally unstable ex-husband, Tsan-Kuen Wang.  Once this happened, rather than fixing the unsafe situation, the courts have continually violated the law in concert to maintain SHAO's deprival of custody so that she will not have a viable cause of action to sue the attorneys and judges who placed her child in danger.

5.    SHAO sued her own attorneys, James McManis, Michael Reedy, and McManis Faulkner, LLP, for working against her interests in order to protect the judge who made the initial illegal order. Thereafter her former attorneys used their position of influence with the courts to ensure that she not regain custody under any circumstances. Their defense to malpractice rests on "no causation." If the child never got back to the mom, they argue, it is not our fault. The original mistake had no consequence, they argue, since the child would never have been returned anyway. Meanwhile the only reason the child never got returned was because they got their judicial pals to ensure that outcome in order to protect them from liability. This has been going on for almost eight years. The child is nearly grown up.

6.    SHAO's prior attorneys James McManis, Michael Reedy and McManis Faulkner, LLP have close relationships with the judges of the local superior court, appellate court and Supreme Court of the State of California, the US District Court in Northern California, the Ninth Circuit and the US Supreme Court. That firm has served as the local court's own attorney and has represented several judges and many court employees as well. The partners often serve as Special Masters, a current judge used to be a partner at the firm, and they all socialize together regularly through their activities in a club called the American Inns of Court.  The American Inns of Court started out as a social and professional networking arena for many attorneys judges and justices, but has become an inappropriate secret legal society in which financial interests and favors are traded behind the scenies, and outcomes of cases are decided before trial or appeal.  As leaders and

- 9 -

sponsors of these Inns of Court James McManis and Michael Reedy have been able to utilize their positions of influence within the inns to manipulate the legal proceedings SHAO has been involved in in order to ensure an outcome that protects them from liability for their malpractice in her matter.

7.  There were four major lawsuits involved on the underlying matter:  Two at Santa Clara County Superior Court of California:

(A) The original family law case (105FL126882; US Supreme Court: 17-613) and

(B) The Attorney Malpractice civil case (Shao v. McManis, et al. 112CV220571; California Sixth District Court of Appeal: H042351 & H045502; US Supreme Court: 17-82); and two at US District Court in Northern California:

(C) Shao v. McManis, et al., which got dismissed with a 12b Motion by Judge Lucy H. Koh, who failed to disclose her conflicts of interests although she had close relationships with both attorney malpractice defendants James McManis and Michael Reedy (USDC, Northern California, 5:14-cv-01137-LHK; Ninth Circuit: 14-17063; US Supreme Court: 17-256), and

(D) A civil rights lawsuit against four Santa Clara County Court judges (Judge Edward Davila, Judge Theodore Zayner, Judge Patricia Lucas, and Judge Mary Ann Grilli) and other court related government employees who deprived SHAO of child custody without due process. (USDC, Northern California, 3:14-01912 WBS; Ninth Circuit: 15-16817)

8.  Over the past 7+ years, SHAO's appeals were constantly denied. In mid March of 2016 SHAO discovered that all proceedings after October 2011 had been being manipulated by James McManis and Michael Reedy to ensure that they could maintain their "no causation" defense.  In July 2015, SHAO discovered that James McManis and Michael Reedy had a special long term and ongoing relationship with the sitting judges through their club the William A. Ingram American Inn of Court of the American Inns of Court. SHAO further discovered that James McManis had been representing the local court as its own attorney and also had been representing some judges, court staff and bailiffs "pro bono" on their personal legal matters, and had been occasionally working for the court sitting as a Special Master.  SHAO filed 3 Petitions for Writ of Certiorari with the US Supreme Court regarding Cases A (Petition No. 17-613), B (17-82), and C (17-256), all

- 10 -

three focused on the issues of the lack of an impartial tribunal because of James McManis and Michael Reedy's various relationships of influence with the courts.

9.  There will be a Petition regarding case D coming soon, in view of the Ninth Circuit's recent denial of rehearing of that appeal, failure to decide a 28 USC §455 motion and failure to decide a Rule 60(b) motion.  These two motions were stymied by the original founder and the designer of the American Inns of Court, Judge J. Clifford Wallace, who failed to disclose his direct conflict of interest.  The motions are about SHAO's lack of access to an impartial court because the judges deciding her matters are all active members of the club the American Inns of Court, which provides opportunities for ex parte communication, favors, and gifts to flow between attorneys and judges outside of the courtroom.  This is a clear violation of Rule 5-300 of the California Rules of Professional Conduct.

10. Chief Justice John G. Roberts, Associate Justice Anthony M. Kennedy, Associate Justice Clarence Thomas, Associate Justice Ruth Bader Ginsburg, Associate Justice Stephen Beyer, Associate Justice Samuel Alito, Associate Justice Sonia Sotomayor, Justice Elena Kagan are all Supreme Court Justices working at the US Supreme Court, which is located in Washington DC.  They are sued for violation of due process in the First Amendment of the Constitution where they conspired to abdicate their Constitutionally imposed duty to decide SHAO's requests for their recusal and to obstruct justice in violation of 18 USC §371. All of the eight Justices have had long term financial interactions with the American Inns of Court, where they received multiple awards, did not disclose the value of such gifts as is required by the Guide to Judiciary Policy §620.50, and sponsored multiple clerks (their personal research attorneys) who worked for them to apply for and accept large sums of financial gifts under the guise of the "Temple Bar Scholarship." Such scholarship is not exempted from being defined as 'gifts' and must be disclosed pursuant to the Guide to Judiciary Policy §620.25, §620.35(a)& (b)(7). Each Clerk receives an estimated value of at least $7,000, in violation of 18 USC §201. These "scholarships" were designed to be given to the Clerks solely because of their judiciary positions that have the power to recommend orders.  Such gifts should not be solicited at all pursuant to the Guide to Judiciary Policy §620.30, §620.35(a), §620.45 and §1020.30, and 18 USC §201.  The

- 11 -

eight Justices sponsored 38 clerks to solicit such gifts from 1996 through 2017, with the total value of gifts involved being estimated to be at least $266,000.  It has been criticized by the legal scholars about these Clerks' superior favors from the Justices where after they left the U.S. Supreme Court, they are associated with the business clients and have been sorted out by the US Supreme Court Justices to have their Petitions reviewed, leaving the great majority cases regarding Constitution rights infringement cases unattended like garbage.

11.  The Chief Justice is in charge of all administration of the US Supreme Court.  SHAO has standing to sue the Chief Justice for declarative relief since Chief Justice Roberts, along with the seven other Justices, conspired to obstruct justice and failed to perform his Constitutionally imposed duty to decide three Requests for Recusal during the closed conferences of January 8, 2018 and February 23, 2018, regarding his and the other 7 Justices' conflicts of interests based on their relationships with the American Inns of Court and/or James McManis, Michael Reedy and the firm McManis Faulkner LLP. The Petitions for writs of Certiorari submitted to the Supreme Court by SHAO were all specifically about the improprieties going on with the attorneys and judges within the American Inns of Court.  Therefore, their relationships, including their substantial financial interests with the American Inns of Court, required them to disqualify themselves under Canon 3 of the Code of Conduct for US Judges.

12.  Chief Justice Roberts' name has been associated with the American Inns of Court for years in that he is an Honorary Bencher of the King's Inn and an Honorary Bencher of Middle Temple Inn.  He also failed to disclose his close relationship with James McManis where both of them are Honorary Benchers of the King's Inn where Chief Justice Roberts was the 2nd one and James McManis was the 3rd US citizen who received this utmost high honor of the Inns. Based on undisclosed conflicts of interest and their secret meeting in the conferences, there is a natural inference that Chief Justice Roberts and the other seven Associate Justices agreed in concert to obstruct justice by not disclosing their financial interests and personal interests with the American Inns of Court and/or with James McManis, and jointly not to decide on the three Recusal Requests, and jointly decided to deny SHAO's Petitions taking advantage of the present extremely low review percentage.

- 12 -

With the large financial interests with the American Inns of Court, it is impossible that Chief Justices and the seven Associate Justices could be impartial to decide SHAO's petitions where the function of American Inns of Court was at issue.

13. In addition to the substantial financial interests with the American Inns of Court as discussed above, Associate Justice Kennedy who is in charge with all Applications arising from the Ninth Circuit of the US Court of Appeals, had promptly denied two of SHAO's applications, returned SHAO's 60(b) motion without docketing the process of this motion's filing but had never disclosed his conflict of interests. The first Application, 14A677, filed in December 2014, involved the immediate relief request regarding child safety in view of discovery of Tsan-Kuen Wang's (SHAO's ex-husband's) 5 DXM-TR-IV mental disorders, including one very dangerous disorder that involves constant suicidal thoughts. Justice Kennedy did not disclose his personal relationship with James McManis and Michael Reedy through the American Inns of Court as is required by Canon 3. The second application (16A863) filed on February 28, 2017 was to ask for relief from delay because SHAO did not receive the California Supreme Court's decision on her Petition for Review. While any reasonable judge who reads the application or the proposed Petition for Writ of Certiorari would know instantly that there was conflict of interests because the issues of attorney-judge's relationships through the American Inns of Court were discussed conspicuously a few times in both the application and the proposed Petition, when SHAO submitted for filing her Rule 60(b) motion regarding Justice Kennedy's lack of disclosure of his relationship with James McManis and Michael Reedy in 16A863, the motion was returned by the Clerk's Office based on the reason that the US Supreme Court did not accept Rule 60(b) motions. The Clerk's Office failed to make an entry on the docket regarding receipt of the Rule 60(b) motion as is required by F.R.A.P. Rule 45 (b)(1) and 18 USC §1512(c).

14. Justice Kennedy and Justice Ginsburg both have their names associated with the American Inns of Court which also have accepted attorneys' donations. They are "Anthony M. Kennedy American Inn of Court" in Sacramento, California and "Ruth Bader Ginsburg American Inn of Court". Justice Kennedy was the Keynote speaker for the William A.

- 13 -

Ingram American Inn of Court's annual Symposium of 2004 where James McManis was another speaker.

15. Jordan Bickell is a supervising Clerk at the US Supreme Court's Clerk's Office with his place of work located in Washington D.C., in charge of proceedings after a Certiorari is issued and is in a position parallel to Chief Supervising Clerk of the Clerk's Office of the US Supreme Court. He is sued as he acted beyond the scope of his job duty to bring in a clerk named Donald Baker, who stepped into the authority of Jeff Atkins for the sole purpose of deterring filing of the Amicus Curiae Motion of Mothers of Lost Children in 17-82, where the Respondents are James McManis, Michael Reedy and their firm McManis Faulkner, LLP., in violation of 18 USC §1512(c) (tampering with records and filing) and 18 USC §371 (conspiracy with Respondents James McManis, Michael Reedy and McManis Faulkner to disrupt the function of the Clerk's Office). Mr. Bickell blocked the filing of a well-prepared Amicus Curiae Motion by Mothers of Lost Children in 17-82 and further concealed such motion documents in September 2017, de-filed the same motion in 17-613 later on December 18, 2017, and further altered the docket entry of 17-613 in violation of 18 USC §1512(c), 18 USC §371, Rule 5 of Federal Rule of Civil Procedure, F.R.A.P. Rule 45, and the First Amendment of the Constitution.

16. Jeff Atkins is a supervising Clerk at the US Supreme Court's Clerk's Office, with his place of work located in Washington D.C., who is in charge of the proceedings before issuance of a Certiorari. He is sued under the First Amendment for aiding and abetting Jordan Bickell to step into his authority to disrupt the process of amicus curiae motions at the Supreme Court where Bickell deterred filing of the Amicus Curiae motion in 17-82 and made whirlwind change of personnel in order to cover this irregularity, for deterring the filing of §60(b) motions in 16A863 and 17-256, trying to de-file Petition 17-613 after docketing, altering docket of 17-613, and refusing to e-file/e-post the entire Requests for Recusal in violation of 18 USC §1512(c), 18 USC §371, Rule 5 of Federal Rule of Civil Procedure, Rule 45 of Federal Rules of Appellate Procedure, and the First Amendment.

17. The U.S. House Judiciary Committee is a standing Committee of the US Congress in Washington D.C. established in 1813, having a name as the lawyer for the House of Representatives, with exclusive role in impeachment proceedings. The House Judiciary

Committee is at the forefront of legal and regulatory reform, and has "the Task Force on Judicial Impeachment" which has announced that "Though Judges rule on the law, they are not above the law. To preserve equality and fairness in our constitutional democracy, we must protect the integrity of the courts." All of the Committee members received mail from SHAO regarding evidence of disruption of the function of the Clerk's Office at the U.S. Supreme Court, as well as evidence of the eight Justices' significant financial interests with the American Inns of Court. Yet, all of them have seemingly disregarded the judicial corruption.

18. The U.S. Senate Judiciary Committee is a standing Committee of the US Congress in Washington D.C. established in 1813, having the power to consider judicial nominations, impeach federal employees and judges/justices, and the power to propose legislation for the US on civil rights. Just like the US House Judiciary Committee, the Senate Judiciary Committee failed to take any action when they received from SHAO proof of the misconduct going on in the Supreme Court's Clerk's offices.

19. Eric Swalwell is the US House Representative in SHAO's area. He was made aware of the irregularities at the US Supreme Court, but refused to take any action.

20. Diane Feinstein is the US Senator in SHAO's area. She was made aware of the irregularities at the US Supreme Court but refused to take any action.

21. The U.S. Supreme Court is located in Washington D.C. and is sued for obstruction of justice for the irregularities from September 2017 until February 2018, its disallowing filing of 60(b) motions in 2017 and 2018.

22. The American Inns of Court is a private, non-profit organization comprised of more than 400 Chapters throughout the US, with the headquarters located in Washington D.C.. It was incorporated in about 1985. The Inns accept donations from their attorney members. Even though being a membership restricted private club, it has used the facilities of the U.S. Supreme Court to hold its annual meetings, and has used one of the Justices of the Supreme Court to host its meeting, with the remuneration amount for such hosting by a Justice unknown. All of its Chapters typically hold social meetings 7-11 times a year, where the judges receive free meals and/or awards, and their Executive Committee members have additional meetings about 7 more times per year. The membership is

confidential for all 400+ Chapters except one. The attorneys support all activities, awards to judges, scholarships to clerks at the US Supreme Court, and US Court of Appeal. The Judge members typically have free memberships and will receive various awards paid to them either directly or indirectly by the attorney members, attorneys who may appear in front of them for their cases. The organization provides ex parte communication platforms to facilitate private confidential communications between the attorneys and the judges/justices through the judge-conducted one-on-one mentorship and judge-directed pupilage groups in non-public settings. The attorney members have the contact information of the member judges and may communicate freely with the judges privately. Such social function was designed by Judge J. Clifford Wallace, a judge at the Ninth Circuit of U.S. Court of Appeal, providing a unique extrajudicial socializing function between attorneys and judges where the attorneys sponsor all of the activities. It published a video called "American Inns of Court Members Services" where attorney Emmanuel Sanchez stated:

> "This is the only organization that I know that the lawyers and judges belong to the trial bar have a chance to meet outside of the courtroom in a social setting and really able to establish the rapport."

23. The American Inns of Court have partners overseas with British Inns as well as the Kings' Inn. It provides annual luxury gifts of "Temple Bar Scholarship" to the Clerks (research attorneys) working at the US Supreme Court or selective Courts of Appeals where many attorney members of the American Inns of Court appear regularly. These Clerks recommend orders to the eight Justices for whom they work. Neither the Clerks nor the Judges ever disclosed the value of gifts received from the American Inns of Court. As mentioned above, such gifts should not have been solicited nor accepted at all pursuant to the Guide to Judiciary Policy §620.30, §620.35(a), §620.45 and §1020.30, and 18 USC §201. These clerks who had received special favor from the Justices continue receiving special favors after they left their posts as clerks, forming a special class to have their represented business client cases being selected for certiorari, causing gross injustice.

24. The William A. Ingram American Inn of Court ["Ingram Inn"] is a Chapter of the American Inns of Court, with organizational form unknown, located within the geographical limit of Santa Clara County. As testified by Michael Reedy in July 2015,

- 16 -

this Inn at that time consisted of 100-110 members, including about 30 judges and justices and 60-70 attorneys. The members meet regularly 8 times a year where socializing is encouraged and involved in each meeting. Its Executive Committee has an additional 6 to 7 meetings a year, on different meeting dates from the regular meetings. The judges also act as mentors for attorneys. The members have direct email access to the judges. There is a Symposium where gifts and awards are made to judges. The expenses of the Inn's activities are entirely funded by the 60-70 attorneys who are members (despite the current website stating a reduced fee for judges, Mr. Reedy testified that the judges' membership had been free). The Ingram Inn accepts donations. Defendant Michael Reedy has been on the Inn's Executive Committee together with several Judges of the Santa Clara County Superior Court of California and the Court of Appeal of the Sixth District. Michael Reedy is the Inn's present President-Elect. Almost all justices and judges who may affect the decisions inside the geographical limit of Santa Clara County have been invited to attend the activities of the Ingram Inn. The Inn of Court's Members' Handbook describes the meetings as meant for socializing:

> "The schedule for the monthly meetings (not the dinner meetings) is to gather at 5:30 for **socializing** and hors d'oeuvres. After administrative announcements, the formal program by a Pupillage Group commences at 6:00 p.m. and ends at 7:00 p.m. After the program ends, there is further **socializing**." [emphasis added]

25. The San Francisco Bay Area Intellectual Property Rights American Inn of Court ["SF IP Inn"] provides the same social function as the Ingram Inn, but holds more meetings than the Ingram Inn. It has 9 regular meetings per year. James McManis and Judge Lucy H. Koh (who dismissed the Complaint in Case C that caused Petition 17-256) were Masters of the same SF IP Inn. Its membership became confidential after 2009.

26. James McManis is a resident in California, and was Shao's attorney from August 20, 2010 through about March 16, 2011. Mr. McManis is a leading attorney of the American Inns of Court, a major financial sponsor of the American Inns of Court, a Master at San Francisco Bay Area Intellectual Property American Inn of Court, and the founder of McManis Faulkner, LLP, which sponsored many judicial seats with the names of judges they sponsored remaining undisclosed. Through his social status, elevated by the American Inns of Court, he represented Santa Clara County Superior Court in unknown

- 17 -

matters as the court's own attorney, and he also represented judges, courtroom clerks, bailiffs, and court reporters in their personal  legal matters free of charge, and has been being appointed as a Special Master  (i.e. working for) the Santa Clara County Superior Court and the US District Court in Northern California for many years.  Mr. McManis is also an attorney admitted to U.S. Supreme Court.  Mr. McManis publicized his relationship with Chief Justice John G. Roberts by stating that he received the highest honor of the Inns of Court as an Honorary Bencher of the King's Inn, while, before him, there were only 2 persons from the U.S. who had received the same award, one of whom was Chief Justice John G. Roberts.  James McManis admitted to SHAO during his deposition on July 20, 2015, that there was a Justice at the California Sixth Appellate Court and a Justice at the California Supreme Court who were his clients, where he had provided "pro bono" free legal services to these judges/justices regarding their "personal affairs" but he refused to disclose who they are.  See **Exhibit 1** for selected pages of the Deposition Transcript of James McManis.  Through winning numerous lawsuits in front of his own clients and friends without disclosing such relationships, Mr. McManis has advertised himself as a "Super Lawyer". In March 2016, his conspiracy with Justice Rushing and his client Santa Clara County Court to dismiss SHAO's child custody appeal (H040395) pending with California Sixth District Court of Appeal was exposed and such "shenanigans" have been continuing until the present. (See **Exhibit 2** for its Exhibit A: "Declaration of Meera Fox In Support of Appellant's Motion to Change place of appeal to an impartial venue" filed on April 24, 2017 with California Sixth District Court of Appeal in H039823) In addition, in November 2016, Mr. McManis was discovered to have conspired with Darryl Young, Lead Attorney at California Department of Child Support Services, to harass SHAO.  Recently, it appeared that he had aided or abetted Jordan Bickell and Jeff Atkins to deter the filing of the Amicus Curiae Motion of Mothers of Lost Children in 17-82 , where he was a Respondent.  McManis appeared to have aided and abetted the same irregularities that took place in the US Supreme Court between September 2017 until February 23, 2018, as well as what had been done by Santa Clara County Superior Court and the California Sixth District Court of Appeal.  In addition, he appeared to have conspired with Google Inc. and Chief Justice John G. Roberts in

- 18 -

suspending SHAO's usage of multiple google accounts in March 2018.  He purged the evidence of A.022 about his relationship with Chief Justice John G. Roberts and his leading role in American Inns of Court in later January 2018, by deleting such "News Release" from his firm's webpage and so causing it to disappear from the internet.  He appeared to have conspired with Kevin L. Warnock and Esther Chung, who were discovered in April 2018 to have been hacking SHAO's internet for purposes of disrupting and altering the legal documents in SHAO's laptops. until present.

27. Michael Reedy is a resident in California and a partner to James McManis at McManis Faulkner, LLP.  Reedy was SHAO's attorney from August 23, 2010 through about March 16, 2011.   He has been an officer of William A. Ingram American Inn of Court, together with Judge Patricia Lucas, Judge Theodore Zayner[1] (Santa Clara County Superior Court) and Associate Justice Patricia Bamattre-Manoukian (California Sixth District Court of Appeal) and has closely interacted with these judges/justices regularly for at least 14 times a year for 10+ years. Judge Carole Overton who once dismissed the 112CV220571 case was also a member of the Ingram Inn, according to Mr. Reedy's testimony during his deposition on July 22, 2015. Mr. Reedy is the President-Elect of the William A Ingram American Inn of Court. He was invited by the American Inns of Court to attend its annual meeting in October 2017 which was hosted by Associate Justice Elena Kegan when Petitions 17-82 and 17-256 were pending with the US Supreme Court where he was one of the Respondents for the two cases.

28. McManis Faulkner LLP is a law firm founded by James McManis, located in San Jose, California.  Before late May of 2017, for many years, McManis Faulkner LLP published on its website a page called "Representative Clients" which enlisted Santa Clara County Superior Court as well as Santa Clara County Bar Association. The webpage was changed in May 2017 after its own expert witness in Linda Shao v. McManis Faulkner, LLP, James McManis and Michael Reedy, Carrol Collins, III, also admitted that there was a public view that there was attorney-client relationship between Santa Clara County Superior

---

[1] Since 2018, after being criticized by SHAO many times, Judge Patricia Lucas and Judge Theodore Zayner were just discovered to have their names removed from the Executive Committee of the Ingram Inn after they were exposed to have been closely related to Michael Reedy for more than 10 years through this Executive Committee.

Court of California and McManis Faulkner, LLP. It supported many judicial seats but no judges supported by it ever disclosed such sponsorship as required by California law.

29. Janet Everson is a resident in California, the attorney of James McManis, Michael Reedy and McManis Faulkner, LLP in Linda Shao v. McManis Faulkner, LLP, James McManis, Michael Reedy and Catherin Bechtel. She participated in the conspiracy of her clients in dismissing the child custody appeal in H040395, and conspired with James McManis, Michael Reedy and McManis Faulkner, LLP to obstruct justice, and delay the jury trial in 112CV220571 since December of 2015. She conspired with her clients on permanent parental deprival of SHAO as her litigation strategy. She caused her associate to participate in ex parte communications with the trial judge, and manipulation of the court proceeding in 112CV220571.

30. Justice Conrad Rushing is the Presiding Justice at the Sixth District Court of Appeal of California, a resident in California. He abused his judicial power to consummate the conspiracies to dismiss appeals, in order to achieve the common goal of permanent parental deprival, and keeping SHAO's family court proceedings and SHAO's suing James McManis et al's case to be within the control of James McManis's clients, Santa Clara County Court, the Sixth District Court of Appeal of California, despite of direct conflicts of interest. The conspiracies he participated in abusing his judicial power include:

(1) Presiding Justice Rushing committed superspeed dismissal of H040395 child custody appeal in violation of Rule 8.57 (lack of notice and motion) based on a false Notice of Non-compliance issued by Appellate Unit of Santa Clara County Court on the Saturday of March 12, 2016 made within a day following the March 11, 2016's hearing in front of trial judge Derrick Woodhouse where James McManis requested stay of the jury trial of SHAO v. McManis, et al., pending "resolution" of H040395's custody appeal and his attorney kept predicting the dismissal. On March 14, 2016 (Monday), within 25 minutes of the Court's opening, Justice Rushing irregularly dismissed the child custody appeal without complying with Rule 8.57 of California Rules of Court, without any notice nor motion, based on a false Notice of Non-compliance issued on March 12, 2016 (Saturday) by Rebecca Degaldo at the Appellate

- 20 -

Unit at Santa Clara County Superior Court, who attended the courthouse on Saturday with a special pass of her supervisor Susan Walker, to issue false Notices of Non-compliance in violation of California Government Code §53894, §6200, §68050 et seq. and California Penal Code §96.5 (obstruction of justice) and §182 (criminal conspiracy) for the purposes of dismissing Shao's child custody appeal, with the "shenanigans" continuing in 2017 until present, with the acts in clear absence of all subject matter jurisdiction.

(2) In a hindsight of March 14, 2016's illegal dismissal, Presiding Judge Rushing also dismissed appeal in another case of H037820 for the apparent purpose to deter child custody return. H037820 was to challenge Judge Mary Ann Grilli's order to validate the orders of August 4 and 5 of 2010 simultaneously with her order to grant SHAO's motion to set aside those orders and Theodore Zayner's order to take off the evidentiary hearing on custody issue but to continue depriving SHAO of child custody on October 31, 2011.   Presiding Judge Conrad Rushing violated California Government Code §68061 in the May 22, 2014's Order to dismiss SHAO's appeal of H037820 with a new issue raised the first time on the judgement with a case law to dismiss appeal with knowledge that being not applicable and knowingly concealed this new issue from disclosure during the oral argument.

(3) Since October 30, 2017, Judge Rushing has knowingly allowed Appellate Unit of Santa Clara County Court to omit from the records on appeal SHAO's most important records on appeal for case number of H040977 (omitting crucial documents of SHAO's Opposition to Wang's pleading on Remittitur and Objection to Wang's Declaration), and failed to rule on SHAO's objection on lack of crucial records for that appeal in H040977 which was filed on October 30, 2017 for more than 6 months, but now Justice Elia as acting Presiding Judge, refused to give SHAO extension to allow the records to be complete and would require SHAO to file Opening Brief without the most crucial documents on the records on appeal, and further denied SHAO's motion to augment the records to include the most important documents for appeal and denied SHAO's motion to change place of appeal. H040977 had no trial but simply on paper; the missing documents were the most important documents on SHAO's side. This

- 21 -

appeal was attempted dismissal twice by false notices that were issued on March 12, 2016 (Saturday) as well as the false docket entry of February 27, 2017.  And now, even though the records were eventually made, the records on appeal were so deficient as to violate due process but the Appellate court would not cure the due process violation.

(4) Most notably was, in addition to his illegal dismissal of March 14, 2016 of the appeal of H040395, Justice Rushing directed the Clerk's Office to create a false docket entry of February 27, 2017 regarding a Notice of Non-compliance of February 24, 2017 which actually was **non-existent**, then he insisted on legality of such *non-existent* notice to be valid in order to accuse SHAO of being default in an attempt to dismiss the child custody appeal the second time, for the apparent purpose of helping out James McManis and Michael Reedy in violation of California Government Code §6200, §53894, California Penal Code §182 and §96.5 and SHAO's due process rights in XIV Amendment and the First Amendment of the US Constitution.    Since February 2017, Presiding Justice Rushing further directed the Clerk's Office to delay filing of Shao's pleadings, altering the docket entry of H040395 multiple times, including but not limited to removing the docket entry about filing of Declaration of Meera Fox on May 10, 2017 from the docket of H040395, in violation of California Government Code §6200, §68050 et seq., Penal Code §137, and Penal Code §96.5.

31. Associate Justice Franklin Elia is a Justice at California Sixth District Court of Appeal, and residents in California, who are sued for declarative relief under 42 USC §1983 for conspiracy with Presiding Justice Conrad Rushing to deter SHAO's child custody return and to deter SHAO's right to appeal including

(1) his joining with Presiding Judge Conrad Rushitur to violate California Government Code §68061 in the May 22, 2014's Order to dismiss SHAO's appeal of H037820 with a new issue raised the first time on the judgement with a case law to dismiss appeal with knowledge that being not applicable and knowingly concealed this new issue from disclosure during the oral argument;

(2) knowingly allowing Appellate Unit of Santa Clara County Court to omit the most important records on appeal for case number of H040977 (omitting crucial documents of SHAO's Opposition to Wang's pleading on Remittitur and Objection to Wang's

- 22 -

Declaration), and failed to rule on SHAO's objection on lack of crucial records for that appeal in H040977 for six months until May 4, 2018 when Justice Elia denied the Objection on lack of record. Justice Elia also denied SHAO's motion to augment the records on appeal but require SHAO to file Opening Brief without her most crucial pleadings.  This is another obstruction of appeal in violation of due process. See, e.g, People v. Rogers (2006) 39 Cal.4th 826, 857-858.  SHAO filed a motion to reconsider such denial of extension by objecting to the lack of material records on appeal violated due process, and requested to change place of appeal due to appearance of bias and prejudice for such situation and based on Declaration of Meera Fox, the court also denied.  Justice Elia joined the conspiracy in not to transfer the venue of the cases outside the the control of James McManis.

(3) failure to disclose his close relationships with James McManis, Michael Reedy and McManis Faulkner as discovered in December 2016  (See **Exhibit 3** for Declaration of Michael Bruzzone) in violation of Canon 3 of California Code of Judicial Conduct, but participated in SHAO's appeals and making decisions in 2014, 2017, and 2018.

33.     Associate Justice Eugene Premo is a Justice at California Sixth District Court of Appeal, and residents in California, who are sued for declarative relief under 42 USC §1983 for

(1) his joining with Presiding Judge Conrad Rushing to violate California Government Code §68061 in the May 22, 2014's Order to dismiss SHAO's appeal of H037820 with a new issue raised the first time on the judgement with a case law to dismiss appeal with knowledge that being not applicable and knowingly concealed this new issue from disclosure during the oral argument;

(2) Again, on March 16, 2018, Justice Premo committed violation of California Government Code §68061 on March 16, 2018 in raising 5 new issues the first time in his judgment, in issuing illegal waiver of oral argument notice, and in arbitrarily blocking SHAO's right to appeal by denying her application for extension by one day to allow her Petition for Rehearing, where she mentioned that his Judgement on March 18, 2018 in H038531 affirming Judge Joshua Weinstein's Order requiring SHAO's disclosure of her residence has become moot.   Justice Premo knew disclosure of SHAO's residence would prejudice SHAO's Constitutional privacy right and would be likely result in infliction of

great bodily injury to SHAO with the foreseeable harm which was codified in California Government Code §6208.1(a)(2), yet he refused to change his Judgement of March 16, 2018 after knowing Judge Joshua Weinstein's Order had become moot one year ago.

(3) failure to disclose his relationships with James McManis, or Michael Reedy and/or McManis Faulkner in violation of Canon 3 of California Code of Judicial Conduct that was discovered only in December 2016, but participated in many decisions of SHAO's appeals in violation of the First and XIV Amendment of the US Constitution from 2012 until April of 2018.

34. Associate Justice Patricia Bamattre-Manoukian is a Justice at California Sixth District Court of Appeal, and a resident in California, who is sued for declarative relief under 42 USC §1983 for failure to disclose her close relationships with Michael Reedy and/or McManis Faulkner, LLP in violation of Canon 3 of California Code of Judicial Conduct and the First and XIV Amendment of the Constitution which was only discovered on July 22, 2015, but she participated in denial of SHAO's writ of habeas corpus twice in 2012 (seek child custody return as Judge Zayner refused to return her child custody and cancelled the trial on October 31, 2011 even though the August 2010's parental deprival orders were set aside) and 2014 (after discovery of WANG's dangerous mental disorder that may harm the children any time) that was discovered only in December 2016, and continue participating in decision to deny SHAO's Petition for Writ of Mandate to challenge Judge Zayner's striking disqualification in 2014. These actions formed part of the general conspiracy plan to deter SHAO's child custody return.

35.    "The Clerk's Office of California Sixth District Court of Appeal" or California Sixth District Court of Appeal in California, is sued for damages under California Government Code §815.6 for its failure to discharge its statutory duty to maintain docket and filing, in compliance of California Government Code §68050, et seq, in falsifying the Feb. 27, 2017's docket entry in both H040395 and H040977 to create non-existent Notices of Default dated February 24, 2017 and delayed numerous filings of SHAO pending Presiding Justice Conrad Rushing's "screening" and altered the docket of H040395 multiple times in violation of California Penal Code §137, California Government Code §53894 and California Penal Code §182.

- 24 -

36. "Santa Clara County Superior Court of California" is located in California. SHAO sued it for damages under California Government Code §815.6 for its failure to discharge its statutory duty to maintain docket and filing, in compliance of California Government Code §68050, et seq.  It is sued further under 42 USC §1983 for its severe obstruction of justice with the willful intent to obstruct SHAO's fundamental rights to access the courts which are clearly in absence of all subject matter jurisdiction, in violation of California Penal Code §95.6 and §182.  There is no judicial immunity for Clerk's Office's deterring appeals and creating false records.

41. The illegal conducts performed by Santa Clara County Superior Court of California include:

(1) An unknown person(s) at the Court helped its attorney James McManis by issuing a mystic Prefiling Vexatious litigant order in latter June of 2015, requiring Judge Maureen Folan to sign it and backed date the filing date of the Prefiling Order (in case number 112CV220571).

(2)    When the Prefiling Order was never entered into the court's docket, after being criticized by SHAO numerous times for these irregularities, between July 17 and August 28, 2017, such docket entry was created by unknown person at the Court to show the court's docket of Linda Shao v. McManis Faulkner, LLP, James McManis, Michael Reedy (112CV220571) which falsely indicated that there was such docket entry on June 16, 2015 when there was no such docket entry prior to July 17, 2017, in violation of California Government Code §6200, §68050 et seq. and §58394, and Penal Code §96.5. The prefiling vexatious litigant order is void for not supported by a statement of decision.

(3)    Its Appellate Unit caused two false notices of Non-compliance to be issued on Saturday, March 12, 2916 for the illegal purpose of dismissing SHAO's appeals in violation of California Government Code §6200, §53894 and California Penal Code §95.6 and §182.

(4)    When the false docket entry of Feb. 27, 2017 was shown in the docket of the custody appeal case of H040395, Santa Clara County Court moved the family case docket of 105FL126882 completely away from the public's access as a

- 25 -

confidential file until about October 2017 such as to disallow any access by Shao and the public about the case information of 105FL126882 (2005-1-FL126882).

(5) Its Clerk's Office altered the docket of 105FL126882 in May 2016 by changing the adjudicating officer's name for June 2 and June 8 of 2016 hearings-- the four motions that Judge Joshua Weinstein illegally "cancelled" on April 29, 2016, from Judge Weinstein to Judge Mary Ann Grili. In cancelling such motions, the court failed to return the filing fees to SHAO either.

(6)    Its Appellate Unit deterred appeals of SHAO by delaying preparing records on appeal for H040395 for about 4 years, deterring court reporters from filing transcripts for the appeals in H040395 (child custody appeal) and H042531 (appeal from vexatious litigant orders) until they received a Notice of Appeal from the court which was delayed for about 4 years in H040395 and 2 years in H042531.

(7) Its Clerk's Office de-filed an ex parte application on or about July 15, 2015, and further completely removed the Request for Order from the docket.

(8) Its Clerk's Office defiled 4 motions on April 29, 2016 pursuant to Judge Joshua Weinstein's Order even though the Order was not served and did not have a proof of service.

(9) Its Clerk's Office refused to accept filing in or about September of 2017 regarding SHAO's objections and responses to the illegal actions jointly made by the court and Department of Child Support Services.

(10) Its Administration of the Court persisted on refusing to change the venue of Linda Shao v. McManis Faulkner LLP, James McManis, Michael Reedy, despite there is direct conflicts of interest.

(11) It concealed the trial evidence (about child abuse) for more than a year after July 2013's trial.

37. David Yamasagi, prior CEO of Santa Clara County Court, a resident of California, is sued for failure to discharge his statutory duty prior to September 30, 2016 pursuant to California Government Code §815.6, and concealing from disclosure the conflict of interests—the court's relationship with James McManis but went ahead to allow obstruction of justice in

- 26 -

(1) allowing McManis Faulkner and James McManis to appear with the Court as a party without disclosing the attorney-client relationship between James McManis and Santa Clara County Court, in violation of California Penal Code §95.6, (2) refusing to change venue of the court on 112CV220571 and 105FL126882, (3) failure to disclose his personal attorney-client relationship with James McManis, such that he knowingly violated the fundamental rights of SHAO to have an impartial court in seeking her grievances as guaranteed by the First and Fourteenth Amendment of the US Constitution.

38. Lisa Herrick is working at the Administration of Santa Clara County Superior Court of California as its inhouse attorney. She is sued for participation of the conspiracies of the Appellate Unit's frauds in generating false notices to dismiss SHAO's appeals on March 12, 2016, deterrence appeals of SHAO under the common scheme to cause permanent parental deprival, deterring appeals, concealing the judiciary corruptions, concealing the material facts of attorney-client relationship between James McManis and the court, and disruption/obstruction of justice.

39. Presiding Judge Patricia Lucas, who is employed by Santa Clara County Court, is a resident of California. SHAO sue her for declarative relief under 42 USC §1983 for severe violation of due process in violation of the First and VIX Amendment in

(1) failing to disclose her conflict of interests,

(2) willfully conspired with James McManis and Michael Reedy in using the judgement to permanently deprive SHAO of child custody based on a new issue that was never discussed at trial in violation of California Government Code §68061: lack of substantial change of circumstances in comparison with August 4, 2010, which is deviated from the purpose of the custody trial--- whether SHAO should regain her child custody as the original parental deprival was illegal.

(3) As part of the conspiracy plan, Judge Lucas knowingly twisted Dr. Michael Kerner's report in her judgement.

(4) Willfully refused to decide the issue of whether Judge Davila's orders of August 4 and 5 of 2010 violated Constitutional due process, in participation of the common scheme of permanent parental deprival with the last overt act lasting until present.

- 27 -

(5) knowingly misused her judicial power to issue a supervised visitation order of "severe mental abuse" despite no evidence could possibly support such finding and further included 5 pages of statement of facts not presented at the trial which appeared to have been written by McManis Faulkner, LLP. while such Statement of Decision and Order was delayed beyond the statutory 90 days following the trial.

(6) Knowingly participated in the conspiracies to seal permanent parental deprival by using the vexatious litigant prefiling order illegally obtained by James McManis and Michael Reedy to block SHAO's right to access the family court, with conscious knowledge that SHAO did not need to do that according California Supreme Court's decision in <u>Shalanti v. Girardi</u> and further denied SHAO's application to file a Request for Order to change venue of the trial court pursuant to California Code of Civil Procedure §397(b) in June 2017.

40. SHAO further sues Judge Patricia Lucas for monetary damages under California Government Code §815.6 for her failure to discharge her statutory duty as a Presiding Judge under Rule 10.603(a)(1) of California Rules of Court and further violated California Government Code §§137, 6200, 53894, 68050, et.seq., and California Penal Code §95.6 and §182 which is regarding the administration of justice and not in judiciary capacity, including

(1) the misconducts of the Santa Clara County Superior Court stated above in Paragraph 36 of this Complaint, which all took place while she was in charge of all civil matters of the court as the Assistant Presiding Judge or as the Presiding Judge,

(2) her knowingly caused evidence of child abuse that was admitted into evidence in July 2013's child custody trial that was conducted in front of her to be disappeared for a year,

(3) her knowingly caused court reporter's transcript for the child custody trial to be altered and purged regarding her statements made on the record on July 11, 2013[2],

---

[2] In the early afternoon of July 11, 2013 when all experts' testimony was closed, Judge Lucas stated on the record as the trial judge two or three times of her apology to SHAO regarding her parental deprival in the past three years and stated that she would assure "the order will never be the same." Yet in the ensuing morning, her attitude drastically changed and started limit witness's testimony.

(4) knowingly allowed removal of SHAO's family case docket information away from her access in February for many months in 2017 when there was a second round of conspiracy to dismiss SHAO's child custody appeal,

(5) knowingly allowed the Appellate Unit to keep issuing false notices for the sole purpose of dismissing appeals, with clear knowledge that such actions would deter SHAO's child custody return and has caused disruption of the function of the Appellate Unit and Clerk's Office,

(6) knowingly allowed the Appellate Unit to deter the court reporter for the child custody trial to file the hearing/trial transcripts of July 2013, and thus deterred and delayed SHAO's child custody appeal.

(7) knowingly allowed the Appellate Unit to delay preparing records on appeal for the child custody appeal for already about 4 years, and thus deterred and delayed SHAO's child custody appeal.

(8) knowing participating the common plan to dismiss the child custody appeal and to avoid evidence of these conspiracies to be exposed in front of the jury and so she refused to allow the trial court to change venue away from Santa Clara County Court regarding both the family case (105FL126882) and the civil case (112CV220571), has caused the jury trial of the civil case to stay indefinitely beyond 5 years of commencement of the action in conspiracy to obstruct justice with knowledge that there is direct conflict of interests, and knowingly disregarded SHAO's repeated reminder of the Court's sua sponte duty to change venue without need of a motion under People v. Ocean Shore (1938) 24 Cal.App.2d 420, 423. .

42. Judge Rise Pichon works for the Santa Clara County Court in California.  Judge Pichon is sued for declarative relief under 42 USC §1983 for her obstruction of justice in failure to disclose the conflicts of interest between James McManis, Michael Reedy, McManis Faulkner and Santa Clara County Court, and issued the May 27, 2016 Order knowing that her Order contradicted her prior instruction to Judge Weinstein, that her order violated Shalanti v. Girardi, and that her order violated Constitutional guarantees to due process and would effectively block SHAO's fundamental right to access the court.  SHAO also sues Judge Pichon for monetary damages under California Government Code §815.6 for her

willful failure to discharge her statutory duty as a Presiding Judge during 2014 and 2016 under Rule 10.603(a)(1) regarding the misconduct of the Appellate Unit and Clerk's Office stated in Paragraph 36 of this Complaint that took place after January 1, 2017, willful concealment of the relationship of McManis Faulkner law firm and Santa Clara County Court, and in refusing to change venue of SHAO's family case of 105FL126882 and 112CV220571 to an impartial venue after being repeatedly informed of the Court's sua sponte duty to change venue without need of a motion under People v. Ocean Shore (1938) 24 Cal.App.2d 420, 423, with the purposes of obstruction of justice, in violation of California Penal Code §95.6.

43. Judge Edward Davila is a judge at U.S. District Court in Northern California in San Jose, California since 2011. Judge Davila is sued under 42 USC §1983 for declaratory relief for his criminal act in violation of due process and California Penal Code§182, §278.6 and §96.5 done while he was a judge at Santa Clara County Court where Judge Edward Davila conspired with David Sussman (Tsan-Kuen Wang's attorney), Sarah Scofiled, and Jill Sardeson to misuse his judiciary power to illegally deprive SHAO of child custody on August 4, 2010, a Case Management Conference, without any notice, motion, nor evidentiary hearing, as part of the common scheme to deprive SHAO child custody permanently with the last overt act of this conspiracy continuing until present. At the beginning of the Case Management Conference, Judge Davila directed Jill Sardeson to lock the 5-year-old minor at Jill Sardeson's office for 3 hours in the afternoon of August 4, 2010 in order to transfer child custody to WANG that evening. Upon receiving the voice mail of David Sussman ex parte made at the night of August 4, 2010, Judge Davila and Jill Sardeson worked late in the evening to issue a supervised visitation order without presence of any party or counsel, and signed off a sibling separation order next day without a hearing nor review by any counsel (except David Sussman), in violation of Penal Code §278.6, §182, and §95.6. The August 5, 2010's Order was never served but simply faxed to all parties later.

44. Judge Edward Davila is further sued for monetary damages under 42 USC §1983 as it was discovered on July 22, 2015 that on August 23, 2010, he conspired with David Sussman and Michael Reedy to cause permanent parental deprival of SHAO where he instructed

Michael Reedy not to do any legal work, not to get child custody back for Shao, and not to file a motion to set aside August 4 and 5, 2010's orders, and not to file an opposition to the Motion of vexatious litigant filed by Sussman against SHAO on August 23, 2010.   Such conspiracies were made in absence of all jurisdictions, in violation of Penal Code §278.6, §182 and §95.6.

45. Judge Theodore Zayner is a judge at Santa Clara County Superior Court of California in California.  Judge Zayner failed to disclose his close relationship with Michael Reedy and James McManis and participated in the common scheme to cause permanent child custody deprival of SHAO by

   (1) Suppressing SHAO's positive psychological evaluation of Dr. Michael Kerner from disclosing from February 25, 2011 until SHAO filed a motion to release the report and further knowingly disregarded such evidence in order to deter child custody return.

   (2) Cancelling the evidentiary hearing but maintained the set aside supervised visitation order in force for another about 2 years for the common scheme of causing SHAO's permanent parental deprival with a false excuse of a need of child custody evaluation even though SHAO had obtained very positive report for her psychological evaluation with very positive reports from the supervised visitation's professional supervisor.

   (3) On or about September 5, 2012, Judge Zayner coached David Sussman on how to harass Shao at the Judicial Custody Conference by placing on calendar Tsan-Kuen Wang's discovery motion to compel Shao's family members' phone number and residence filed in June 2010 in retaliation of Shao's effort to get her child custody back.  The JCC was to remove "Dr." John Orlando from being custody evaluator and to strike his custody evaluation report.  Judge Zayner harassed SHAO for such attack and supported the veracity of "Dr." John Orlando despite knowing he was illegally practiced psychology.

   (4) assigning the custody trial to Judge Patricia Lucas, another close judicial friend of Michael Reedy and James McManis, without disclosing her conflicts of interest when all of them have beenf closely connected via membership at the Executive Committee

of the William A. Ingram American Inn of Court[3].  In October 2014, Judge Zayner knowingly disregarded of and further suppressed the evidence of Tsan-Kuen Wang's dangerous mental disorder, in order to stall child custody's return to SHAO to help James McManis and Michael Reedy's sole defense to Shao's lawsuit against them. Judge Zayner's conspiracies with James McManis and Michael Reedy and David Sussman and Tsan-Kuen Wang for the common scheme of permanent parental deprival of SHAO were corroborated in July 2017, where it was discovered by his extrajudicial behaviors in removing the court files of Shao v. McManis et al (112CV220571) in or about July 2016, including the original transcripts of deposition of James McManis and Michael Reedy, in violation of California Penal Code §6200.  Thus far, Volume 5 of the court file is still missing and the original deposition transcripts are still not in the court's files; these files were disappeared in the hands of Judge Zayner. Such willful removal of files should constitute violation of California Government Code §6200 and Penal Code §95.6. SHAO has the standing to sue Judge Theodore Zayner for declarative relief as well as compensatory and punitive damages as his removing court files is not covered by judicial immunity as not made in the capacity of judicial officer and in excess of all jurisdictions.   .

46. Judge Joshua Weinstein is a judge at Santa Clara County Superior Court of California in San Jose, California. He succeeded the seat of Judge Zayner in the Family Court since 2015.  He participated in the conspiracy to ensure permanent parental deprival of SHAO in (1) in retaliating against and harassing SHAO's trying to get back her child custody, Judge Weinstein knowingly abused his judiciary power to order a bench warrant on March 7, 2015 to arrest Shao based on Wang's frivolous contempt proceeding, which was even ordered in the presence of Shao's attorney on or about March 7, 2015, and expressly stated that he would not call off the warrant under any circumstances when all other judges always set up a hearing to allow recalling of a warrant.

(2) Judge Weinstein further knowingly cancelled twice of SHAO's genuine order to show cause re Contempt against Tsan-Kuen Wang without any notice nor motion, but

---

[3] Recently, Judge Zayner and Judge Lucas's names disappeared from the list of Officers of the Ingram Inn.  See also footnote 1.

COMPLAINT

maintained Tsan-Kuen Wang's frivolous Order to Show Cause re Contempt for three years until June 17, 2017 when he eventually dismissed the criminal prosecution to protect Wang from examination about his mental disease as there were subpoenaed medical records of CIGNA that were mailed to the Court timely for the hearing.

(3) Judge Weinstein then knowingly returned the CIGNA's evidence of Wang's mental illness to CIGNA, disregard of Shao's reminder of the use of it for the subsequent hearing, when no court ever returned a document production to the court pursuant to a civil subpoena throughout the history of the courts.

(4) After June 17, 2017's trial re Wang's OSC re Contempt, on July 21, 2017, there is a hearing regarding WANG's "emergency" order requiring Shao to disclose to Wang and Sussman her private residence, in disregard of clear and convincing evidence that SHAO had serious safety concern where SHAO presented to the Court numerous police reports. The professional supervisor Esther Alex-Taylor, witnessed an incident of SHAO in 2014 during the past 7 years' supervised visit, who provided a declaration that SHAO has significant safety concern that should not be required to disclose her residence. The minor's counsel also filed her response that there was no need for SHAO to disclose her residence to Wang. Yet, Judge Weinstein, in violation of the local rule, promptly sign off the "Emergency Order" on receipt of Sussman's submission, without waiting for the minor's counsel's response, used several seconds to flipp some pages of the CIGNA re-submitted documents that were all about the mental disorders of Wang and concluded that SHAO must disclose her residence as there were child visits taken place at her residence. There were suspicious cars stalking SHAO when such Order was issued. Yet, in disregard of SHAO's Constitutional right to privacy and severe safety concerns, Judge Weinstein knowingly intended to expose SHAO to danger, with the foreseeable severe bodily injuries codified in California Government Code §6208.1.

(5) On April 29, 2017, without any notice nor motion, Judge Weinstein "cancelled" four motions/Requests for Order filed by Shao on April 27 and 28 of 2017, with the false excuse of existence of the prefiling vexatious litigant order, even though Judge Weinstein was made known that such order, while having issue of violation of due

- 33 -

process, does not apply to existing case pursuant to the prevailing laws of the State of California and the docket of 112CV220571 (The prefiling order issued in that case did not stop SHAO to file a motion at all.) and Judge Weinstein actually had decided SHAO's motion to reopen (even though he denied) on Feb. 1, 2016 pursuant to the instruction of Presiding Judge Pichon, despite of existence of the prefiling order.

47. Judge Mary Ann Grilli is a judge at the Family Court of Santa Clara County in California. She participated with the common scheme of permanent parental deprival of SHAO by refusing to return the child custody to SHAO on July 22, 2010 when she determined that the initial parental deprival was made without an evidentiary hearing which violated Constitutional due process, and knowingly violated the due process of SHAO by a creative order of October 31, 2011 to grant SHAO the motion to set aside August 4 and 5 of 2010's Order but continue having the same orders to be in force. She conspired with Judge Theodore Zayner to omit the ground of granting SHAO's motion to set aside from the order and contributed to consummating continuous parental deprival of SHAO, with an ex parte communication with David Sussman in violation of California Penal Code §182 and §287.6. The last overt act of the common scheme of permanent parental deprival lasted until present.

48. Judge Maureen Follan works for Santa Clara County Superior Court of California in California. She violated California Government Code §68081 by raising new argument first time in her tentative decision and disallowed SHAO a chance to present evidence to rebut the new argument, which violated due process. She conspired with James McManis, Michael Reedy and McManis Faulkner in back-dating the Prefiling Order-Vexatious Litigant Order and signed off the order. She caused Prefiling Order-Vexatious Litigant Order to be irregularly issued which was not shown in the docket. Some unknown person altered the docket by creating such docket entry at a time between July 17 and August 28 of 2017. She knew or had reason to know that the Prefiling Order was not made on June 16, 2015 but issued that in favor of James McManis and Michael Reedy, without disclosing the court's relationship with James McManis and Michael Reedy. Not only that Judge Folan failed to disclose the court's relationships with James McManis and Michael Reedy. On November 21, 2017, she further blindly disregarded the fact that McManis Faulkner's

- 34 -

website posted for years that Santa Clara County Superior Court is a representative client to McManis Faulkner.  In knowingly disregard of the undisputed evidence of the direct conflict of interests of attorney-client relationship between Santa Clara County Superior Court of California and  James McManis, Judge Folan has obstructed justice by refusing to transfer the court to an impartial venue with a false excuse that trial Judge Derrick Woodhouse had not lifted the stay while the case had been transferred from the trial court to the CMC judge and the CMC judge has the power to lift the stay.   She blocked SHAO from all discovery after James McManis and  Reedy were deposed.  This false prefiling order made on a different ground than what she ordered on June 16, 2015, without any statement of decision, violates California Government Code §53894 and California Penal Code §95.6 that SHAO may sue for declarative relief against Judge Folan pursuant to California Penal Code §98.

49. Judge Peter Kirwan works at Santa Clara County Superior Court of California.  Judge Kirwan is the President of the William A. Ingram American Inn of Court while Michael Reedy who is a defendant of Shao v. McManis, et al., is the President-Elect of the Ingram Inn.  On December 4, 2017, SHAO made an application to lift stay from access to the trial judge Derrick Woodhouse, yet such application was directed to Judge Peter Kirwan who went ahead to deny the application despite SHAO reminded him of his direct conflict of interests (relationship with Michael Reedy) that he should not decide SHAO's application to lift stay.   Later Judge Kirwan further illegally denied SHAO's verified Statement of Disqualification of himself in violation of California Code of Civil Procedure §170.3 but issued an order to recuse himself in December 2017 based on the social relationship with Michael Reedy through the Ingram Inn, the very reason for SHAO's request for recusal.  Yet he insisted to be still on the case management calendar, until another attorney Gina Kong, as a contracting attorney to SHAO, appeared for the case management conference on Feb. 8, 2018 and asked the court to be changed pursuant to California Code of Civil Procedure §397(b).  He then transferred the case management to Judge James Stoelker who also has direct conflicts of interest as Judge Stoelker also was a long term member of the Ingram Inn.  Before the conference SHAO asked Janet Everson for a stipulation to continue and she rejected as she said this hearing would be very important.  There is no doubt that

- 35 -

Janet Everson or her clients have had ex parte communication with the court to know the hearing being "very important." Judge Stoeler, apparently followed the instruction of Judge Kirwan and took this matter off calendar with an excuse that "there is a stay in place from the appeals and also this will give you time to lift the stay and request a change of venue." Judge Kirwan thus apparently participated in the common scheme of obstructing the justice in deterring and delaying the trial court in Shao v. McManis et al to be transferred out to other venues in consciously disregard existence of direct conflict of interests. Such knowing obstruction of justice violated California Penal Code §96.5.

50. Rebecca Delgado is a Deputy Clerk working at the Appellate Unit of Santa Clara County Superior Court of California in California. She is sued for monetary damages under both Government Code §815.6 for failing to discharge her statutory duty and 42 USC §1983 for violation of SHAO's due process rights guaranteed by the First and XVI Amendment and violation of California Government Code §53894 and §6200 in repeatedly generating false Notices of Default and Notices of Non-compliances for the purpose of dismissing appeals filed by SHAO, and in deterring the court reporters from filing hearing transcripts for the purpose of deterring several of SHAO's appeals, and in refusing to prepare records on appeal for years for the purpose of delaying appeals. As of present, H040395's records for appeal still not prepared for about 4 years, after she issued at least 5 false notices trying to dismiss the appeal.

51. Susan Walker is the Supervisor working at the Appellate Unit and Record Unit of Santa Clara County Superior Court of California in California. She is sued under 42 USC §1983 for violating SHAO's due process rights in First and XIV Amendment and violating California Penal Code §137, §182 and §96.5, in influencing Rebecca Delgado to produce false testimony as contained in the false notices of default or false notices of non-compliance, and aiding and abetting Rebecca Delgado to violate California Government Code §53894 , to generate false notices on March 12, 2016 (Saturday) and to deter the court reporter from filing the transcript in multiple appeals to consummate the common plan of deterring SHAO's child custody return, and disrupting SHAO's appeals. In H040395, there were already about 4 years passed but no records on appeal prepared. This also prejudiced SHAO's right to access the court in violation of the First and XIV Amendment.

- 36 -

52. Judge J. Clifford Wallace is a Judge at the Ninth Circuit Court of Appeal with his residence in the Ninth Circuit covered states with specific state unknown.  He is the designer of the function of the American Inns of Court.  Pending appeal of 15-16817, multiple conspiracies of James McManis and Michael Reedy with the California Courts and the conflicts of interest of the Ninth Circuit were exposed.  Such conflict of interests is again derived from James McManis and Michael Reedy's relationship with the American Inns of Court. Judge Wallace is sued for willfully handling SHAO's appeal in 15-16817 on December 21, 2017 in violation of due process guaranteed by the First Amendment of the Constitution as any reasonable judge would have known his direct conflicts of interest and would have recused himself as the appeal includes SHAO's Rule 1006 Declaration for newly discovered facts of James McManis and Michael Reedy's conspiracies with their judicial pals who are Respondents in that appeal, including Judge Edward Davila, Judge Patricia Lucas, Judge Theodore Zayner and Judge Mary Ann Grilli, motion for judicial notice about many evidence of such conspiracies and SHAO's 28 USC 455(b) motion which conspicuously stated its name being "Motion to Disqualify the Ninth Circuit and Request to Change Venue to a District that **does not sponsor American Inns of Court and has no relationship with James McManis, Michael Reedy and McManis Faulkner, LLP**".  Within 3 days' the Ninth Circuit's notice of "submission," it appeared that without waiting for assignment to an appellate panel, Judge Wallace took over the appeal and issued his order in a short double spaced 4 pages where he did not discuss any of the issues raised in SHAO's Opening Brief in violation of the Constitutional requirement for a written opinion. There he did not mention the 28 USC §455(b) motion at all, failed to disclose his conflict of interest.  After SHAO filed the Rule 60(b) motion together with her Petition for Rehearing, Judge Wallace continue not making disclosure as required by Canon 3 of Code of Judicial Conduct for US Judges and denied Petition for Rehearing and not mention Rule 60(b) in his decision.

53. Judge Lucy H. Koh is a judge at U.S. District Court in Northern California in San Jose, California.  She is sued for declarative relief under the First Amendment for her knowingly failure to disclose her conflicts of interest in violation of Canon 3 of Code of Judicial Conduct for US Judges and obstruction of justice under California Penal Code §95.6.  Judge Lucy Koh knowingly failed to recuse herself in handling Shao v. McManis, et al. in 14-

01137 as she knew that she should and did recuse herself in the related 14-01912 case one week before she received the case of 14-01137's assignment.  She knowingly refused to disqualify herself in 14-01137 for the purpose of retain her judicial power in this case in order to abuse her power to dismiss the case to help her prior attorney and colleague James McManis and her friends James McManis and Michael Reedy.  Pending the disqualification motion, Judge Koh wrote the decision on dismissal of the complaint of Linda Shao v. McManis Faulkner, LLP, James McManis, Michael Reedy, Catherine Bechtel that was filed with the USDC in San Jose, California on September 22, 2014 and then put the denial of disqualification in Foot Note No. 2.  Judge Koh issued the order without disclosing her extrajudicial regular social relationship of 14+ times a year with Michael Reedy, her regular social relationship with  James McManis by S.F. Bay Intellesctual Property American Inns of Court, and her close working relationship with  James McManis as her colleague who had worked closely with Judge Koh as a Special Master at the USDC in Northern California and in Santa Clara County Superior Court, and McManis Faulkner who is possibly her judicial seat sponsor.  In addition, she violated Rule 58 by denying the motion to disqualify her with a footnote in the dismissal order that granted McManis and Reedy's 12b motion.

54.  Sarah Scofield is the Director of the Family Court Services at Santa Clara County Superior Court of California in California.  On or about April 7, 2010, she conspired with David Sussman, Tsan-Kuen Wang, Department of Children and Family Services of Santa Clara County, and Judge Edward Davila to permanent deprive the child custody of SHAO, with the last overt act of such common scheme having been lasted until 2018 by the other co-conspirators.  She telephoned Anita Hu the social worker on April 7, 2010 misrepresenting that she was a screener assigned to handle the report of SHAO on the minor's sexual abuse, when, in fact, SHAO did not report to the Court and there was also no emergency screening order in place and she was not the screener.  There was a motion for emergency screening filed by Wang to be heard in front of Judge Edward Davila on April 8, 2018.  Scofield then conspired with her supervised employee of the court, Jill Sardeson, to follow Wang's instruction to make false report in violation of California Government Code §53894, which would be passed on to her through Misook Oh at the Department of Children and Family Services.  In obstruction of justice and to consummate the plan to deter child custody's

- 38 -

return to SHAO, Scofield later directed Jill Sardeson on or about February 28, 2011 not to release to SHAO her psychological evaluation done by Dr. Michael Kerner, after Jill Sardeson reviewed the evaluation which was positive to SHAO. She further conspired with Judge Patricia Lucas and David Sussman to restrict Jill Sardeson's testimony at the custody trial of July 2013 to be 1 or 2 hours only in order to help conceal the material evidence of judiciary corruption for the purpose of assisting the plan to continuously deprive SHAO child custody after this trial.

55. Jill Sardeson is a screener at the Family Court Services of Santa Clara County Superior Court of California. She knowingly presented false report, not under oath, to Judge Edward Davila on the Case Management Conference of August 4, 2010 in violation of Government Code §53894 with the intent to cause permanent parental deprival of SHAO and to separate the 5-year-old minor from her beloved mother in order to retaliate against the minor's reports of child abuse at Wang's place. Jill Sardeson further presented perjured testimony at July 2013's trial, for the purpose to facilitate permanent parental deprival of SHAO, with the last overt act of the common scheme lasted until present.

56. Department of Children and Family Services of Santa Clara County in California has repeatedly knowingly disregard of the imminent threats of life, safety and health of the minor and refused to investigate the frauds involved where Misook Oh and Margid Davis conspired with Tsan-Kuen Wang, David Sussman, Sarah Scofield and Jill Sardeson to cause parental deprival of SHAO with the last overt act lasting until present, in failure to perform its statutory function to protect risk of harm to the minor in violation of California Government Code §815.6 and in knowing violation of SHAO's due process rights under 42 USC §1983.

57. Misook Oh is a social worker at Department of Children and Family Services. In violation of her statutory duty to document her conversations with the parents, she actively conspired with Tsan-Kuen Wang and David Sussman and Jill Sardeson to falsify her reports in violation of California Government Code §53894, California Penal Code §182, §278.6 and §95.6, acted as a media to pass Wang's bottom line instruction of immediate parental deprival to Jill Sardeson regarding how to consummate the common plan of

- 39 -

parental deprival.  See **Exhibit 4** of Declaration of Mei-Ying Hu about how Misook Oh harassed the 5 year old minor before parental deprival on August 4, 2010.

58. B.J. Fadem, a licensed attorney of California was the minor's counsel from May 2010 until July of 2016.  Fadem failed to disclose his/her personal bias and hatred against a mother based on Fadem's own psychological state and joined the common scheme of the conspiracy to effectuate permanent parental deprival of SHAO and failed to represent his/her client's best interest.  On October 31, 2011, Fadem conspired with Judge Theodore Zayner and David Sussman to cancel the evidentiary hearing on child custody's issue, with knowledge that being violative of SHAO's Constitution due process rights, and further recommended a full child custody evaluation to be done in front of Fadem's buddy, "Dr." John Orlando, with the plan to disregard Dr. Michael Kerner's positive report for SHAO that was released in June 2011.  Fadem, with himself/herself being psychologically unstable, knowingly disregarded the discovery of WANG's dangerous mental disorder in mid-September of 2014 and continued conspired with Sussman to cause permanent parental deprival of SHAO.  Fadem withdrew from this conspiracy in July 2016; he/she knowingly failed to represent the wishes of the minor as required by California Family Code §3151. While California Welfare and Institutions Code §317(e)(2) required the minor's counsel to determine and represent the child's wishes for a child at age 4 or above, California Family Code §3042 required the child wishes to be heard by the court only after age 14.  The last overt act of this conspiracy of permanent parental deprival continues to present.

59. "Dr." John Orlando conspired with Judge Theodore Zayner, BJ Fadem, David Sussman, Tsan-Kuen Wang and James McManis who represented Santa Clara County Bar Association, to provide illegal false report for the use of the family court in violation of California Rules of Court Rule 5.220 and 5.225 where he illegally represented himself as a psychologist when in fact he was not a licensed psychologist, illegally practice forensic psychology, knowingly failure to conduct a psychological testing on WANG, and further illegally diagnosed SHAO as having schizophrenia without conducting any mental examination.  In making the false report, Orlando knew or had reason to know that his false report would be used for permanent parental deprival of SHAO, which would assist

- 40 -

James McManis's sole defense to SHAO's lawsuit against James McManis. "Dr." Orlando further perjured himself during the July 2013's trial. The last overt act for the common scheme lasted until present.

60. Carole Tait-Starnes is a licensed LMFT in California. It was discovered on September 15, 2014 that she was one of Wang's mental health provider, then Wang caused her to be the minor's counselor since August of 2010 without disclosing the conflict of interests. Carole Tait-Starnes concealed the mental disorders of Wang from reporting. In April 2012, Tait-Starnes further made a false report to "Dr." John Orlando with the intent to join the common scheme to permanently deprive SHAO of child custody, with the last overt act of such conspiracy lasts until present.

61. Darryl Young is the Lead Counsel at Department of Child Support Services of Santa Clara County. She conspired with James McManis, Michael Reedy and David Sussman to misuse a void child support order of May 3, 2013 to harass Shao multiple times by suspending her driver's license and threatening suspension of Shao's bar license without any preceding notice. Darryl Young was fully aware of the evidence that the May 3, 2013's child support order was procured by fraud of Tsan-Kuen Wang, but caused the original evidence for Wang's fraud (subpoenaed documents from Chicago Title Insurance) *not to return* to Shao in violation of Penal Code §95.6, and refused to allow the May 3, 2013's order to be vacated. She was fully aware of the conflict of interest arising from the various relationships James McManis and Michael Reedy had with the Court but requested the Court not to consider any other than the interest issue. On July 27, 2017, she instructed Mary L. Murphy to perform the hearing where she picked up a printout from the court and handed it as instruction to Commissioner Sardivar to allow him to read that as an order.

62. Mary L. Murphy is an attorney at Department of Child Support Services. She knew the falsity involved in the DCSS's motion to modify child support that was heard on July 27, 2017, she helped the fraud by deliver a printout to Commissioner Sardivar to cause him to read that as an order in aiding and abetting obstruction of justice in violation of Penal Code §96.5. In conspiracy with such action, Santa Clara County Superior Court of California's clerk's office rejected filing of SHAO's responsive declaration to the application on September 19, 2017.

- 41 -

63. Commissioner Gregory Sardivar is working at Santa Clara County Superior Court of California. Commissioner Sardivar knew or should have known SHAO's request to change place of trial and SHAO's request to vacate the May 3, 2013's Order was it was made based on WANG's perjured Income and Expense Declaration but knowingly disregard the issue of lack of impartial court, acted like a puppy in the court on July 27, 2017, in conspiracy to obstruct justice.

64. YouTube, Inc. is a Delaware Corporation with its principal office located at 1000 Cherry Avenue, San Bruno, California 94066. YouTube, Inc. and Google, Inc. conspired to hack into the gmail accounts of Plaintiff because of SHAO's publication of the videos of the radio shows about the crimes and illegal acts involved with her appeals at the US Supreme Court.

65. Google, Inc. is a Delaware Corporation with its principal office located at 1600 Amphitheatre Pkwy, Mountain View, California 94043. Google, Inc. filed a Petition for Writ of Certiorari on September 8, 2017 with the US Supreme Court in the case number of 17-357 and received a special favor from Chief Justice John G. Roberts in early 2018 with a unique special conference proceeding of 1/5/2018 where it was able to uniquely allowed filing of a Supplemental Brief on January 10, 2018 without an order when the 1/5/2018's conference date is not shown on the court's published agendas. Disregard of numerous private and attorney-client communications were made through these gmails which are obvious from the names of the emails, Google, Inc. suspended services of Plaintiff's gmails without any preceding notice because of Plaintiff's publication of the videos on the YouTube about the US Supreme Court Justices' financial interest with the American Inns of Court from late February 2018.

66. Kevin L. Warnock is a resident in San Francisco, California who is specialized in networking and closely connected with Intel Corporation. Wang has been working as a Manager at Intel Corporation. James McManis and Michael Reedy are counsels for Intel corporation. It is likely that Kevin L. Warnock was hired by them or their comrades to stalk SHAO and hack on SHAO's pleadings. Warnock conspired with Esther Chung to hack into about 3,000 legal documents of SHAO and destroyed SHAO's on-going case files as seen in three laptop computers and illegally tampered at least a filed copy stored in

- 42 -

SHAO's laptops that is regarding the Ninth Circuit's case of 15-16817 where SHAO requested to remand to the trial court by adding the conspiracies of James McManis and Michael Reedy based on belated discovery of conspiracies.

67. Esther Chung is a California attorney with her office located in Belmont, California, who conspired with Kevin L. Warnock to review some legal documents.  She hacked into the legal documents regarding the appeal of H043851 (Judge Joshua Weinstein's July 21, 2016's Order to disclose SHAO's address to Wang) and the legal documents filed with the Ninth Circuit in 15-16817.

68. Tsan-Kuen Wang is a resident of California, who is SHAO's ex-husband. He is one of the major conspirators for the entire common scheme of permanent parental deprival of SHAO and to seal the judiciary corruptions of James McManis and Michael Reedy in violation of Penal Code §182, §278.6 and §96.5.  He committed spousal abuse, child abuse. In June 2006 when he and his attorney exposed SHAO's residence on the public records, there were many incidents of stalking by suspicious car.  There were 3 reports made by SBC for about 75 harassing phone calls made to the residence of SHAO from June through December 2005, which ended after a detective telephoned Wang threatening to put him into jail.

69. David Sussman is Wang's attorney, is a resident of California.   It is undisputed that the parental deprival of 2010 was contributed by Mr. Sussman's ex parte communications with Judge Davila. Sussman had a history of sending virus email to SHAO. Sussman appeared with the civil court on December 9, 2015 and pointed his finger with a threatening stance at the jury trial judge Derrick Woodhouse warning the court to suppress the evidence of judiciary corruptions contained in the deposition transcripts of James McManis and Michael Reedy.  He is one of the major conspirators for the entire common scheme of permanent parental deprival of SHAO, including to block SHAO's access to the courts with the illegal prefiling order-vexatious litigant, and to seal the judiciary corruptions of James McManis and Michael Reedy in violation of Penal Code §182, §278.6 and §96.5.

- 43 -

70. Doe 1 through 50 are unknown at this time the Complaint is filed, who are agents, representatives, co-conspirators, supervising staffs or members of a named organization, to the named defendants that may be involved in the causes of action of this Complaint

## FACTS

**A. On 8/4/2010 in illegal ex parte communications, a conspiracy between Judge Davila, Family Court Services Screener Jill Sardeson, Family Court Services Director Sarah Scofield, Social Worker Misook Oh at the Department of Family and Children Services, and Opposing counsel David Sussman was worked out to effect an illegal custody switch of SHAO's 5-year old daughter from SHAO to the child's father, who the child had consistently identified as abusive, who had a history of domestic violence against SHAO, and who was suffering from dangerous mental illness. This conspiracy to remove SHAO's custody, including Judge Davila signing an ex parte order of Contempt and orders filed on August 5, 2010, all happened outside the presence of the parties and without an evidentiary hearing, without any notice or opportunity to be heard. SHAO's child was illegally removed from her at the Case Management Conference, and has never been able to come home since.**

71. On 5/25/2005, SHAO filed for divorce with Santa Clara County Superior Court of California (105FL126882 or 2005-1-FL126882). At the time she had 99.7% child custody based on a domestic violence temporary restraining order (TRO) against Wang for his violence.  Even with the TRO in place, SHAO documented many incidents of being stalked and followed by her ex-husband Tsan-Kuen Wang and his agents. In violation of the TRO, Wang's attorney David Sussman knowingly exposed SHAO's private residence to the public in Wang's pleadings filed with the Court in June of 2005.  Upon SHAO's motion and showing of good cause, on June 21, 2005, Judge Margret Johnson ordered sealed all of the court's records that contained information regarding the location of the residence of SHAO.

72. In May 2008, SHAO settled her divorce (105FL126882) with Wang, agreeing to  50-50 child custody. However, during the two months' period 3/13/2010 through the Mother's Day 5/9/2010, Wang relinquished his custody 100% to SHAO in fear of prosecution by the police when their 5-year-old daughter complained about suffering sexual exploitation by Wang's girlfriend's son while in Wang's care.

- 44 -

73. On 8/4/2010, as yet unaware that a set-up and conspiracy to deprive her of her child was underway, SHAO was contacted by Family Court Services Screener Jill Sardeson and asked to bring her 5-year-old to the court. The pretense was that the child would be interviewed by the Family Court Services Screener regarding the abuse she had suffered at the home of Wang during the week of July 19, 2010.  SHAO complied.  When she arrived, Screener Sardeson took SHAO's five year old into her office and locked the door. The child was held there for three hours, during which time a Case Management Conference on the matter was held by Judge Edward Davila. As part of the conspiracy, at the beginning of the CMC, Judge Davila ordered that the child should not leave the courthouse. In order to effectuate this parental deprival, Judge Davila caused the hearing to be last until 5:40 p.m.  At about 5:40 p.m., SHAO saw her 5-year-old stepping out of Jill Sardeson's room in tears.  She never got a chance to say a proper goodbye to her. At about 5:45 p.m., right before the child was forcibly put into Wang's car, the child yelled out loudly "Father, You Liar!" in front of many policemen present in the court parking lot.   When SHAO's son, the child's elder brother came to say goodbye to her on the ensuing date, 8/5/2010, the child was found next day to have been severely battered with large dark purple eye bags about 1" under each eye. The child was traumatized, spaced out, not fully present. She had both hands hidden in a coat with long sleeves, but her hands were not in the sleeves.  She trembled when her brother hugged her to say good-bye.

74. SHAO has since this night never had her child come home.  Despite never having done anything but be a good mom, SHAO has been on supervised contact only with her child for nearly eight months.  The court that deprived her of custody without any hearing or notice or opportunity to be heard has maintained her deprival of custody to cover its own and its colleagues' liability for the original illegal taking of SHAO's child from her.

75. SHAO found, in the process of discovery, that the night before her child was taken away, her ex husband's attorney had already submitted a requested order ex parte regarding Contempt to the family court judge Edward Davila ["Davila"].  Before 8/4/2010's CMC, Judge Davila had already approved such order and had authorized Family Court Services Screener Sardeson to trick SHAO into bringing the child to court under the ruse of an interview as part of the screening. Ex husband Wang's attorney David Sussman had had

- 45 -

multiple ex parte communications with both the court and Sardeson that evening before, to plot the child snatching carefully so as to catch SHAO unaware and ensure her compliance in presenting the child to Sardeson at the courthouse. Court bailiffs and courtroom staff had been informed in advance that their services would be required after court hours.

76. With no hearing and no evidence before him, based only upon his illegal ex parte communications with Wang's Attorney David Sussman, Judge Davila signed a further order at the night of August 4, 2010 requiring SHAO see her child only in supervised visitation, and made a finding that SHAO had subjected the child to "emotional abuse." The following day, on 8/5/2010, without any hearing or notice, and without any evidence before him aside from further ex parte communications with Attorney Sussman, Judge Davila signed a further order requiring that any sibling contact between the five year old and her older brother also be supervised. These two orders signed on the night of 8/5/2010 were made without any hearing, never legally served on SHAO, but were faxed to her later.

77. SHAO's five-year-old child was ordered removed from SHAO at the 8/4/10 Case Management Conference, which was not a hearing, just a status conference, without notice, and without any opportunity to be heard, and over the objection of both minors' counsels and of SHAO (everyone objected except Wang). The child's own counsel objected, stating that the minor's wishes were to stay with SHAO only, and that the child had disclosed having been abused by WANG. SHAO was taken completely by surprise. It was an illegal ambush. The 8/4/10 order removing the child had already been illegally presented to Judge Davila beforehand.

78. A month later, in September 2010, SHAO obtained a copy of the case file on her daughter's abuse case from Child Protective Services. SHAO discovered therein clear evidence of the conspiracy that had taken place between the court screeners, Sarah Scofield, Judge Davila and Attorney Sussman to plot depriving SHAO of custody.

79. The main orchestrator of this plot, working behind the scenes, appeared from the records to have been the Director of Family Court Services of Santa Clara County Superior Court, Sarah Scofield, for whom Jill Sardeson works. Scofield had begun ex parte communications between Family Court Services, Judge Davila, and David Sussman as

- 46 -

early as April 7, 2010, making the plan to deprive SHAO of child custody (in violation of California Penal Code §287.5, California Rules of Court Rule 5.215, California Penal Code §137, California Government Code §53894, and California Penal Code §96.5., basic rights of due process, and current California Family Code §216.)

80.    In March of 2011, SHAO obtained discovery of Jill Sardeson's notes, which showed that Wang used Social worker Misook Oh to pass to Sardeson a message regarding his "bottom line instruction" on August 3, 2010, the eve of the order for the illegal child custody switch, which reads:

> "the bottom line
> didnot return child to mother
> father did not allow to
> go to vacation
> scare leave child in NY"

(See the handwritten notes of Jill Sardeson posted at shaochronology.blogspot.com; http://shaochronology.blogspot.com/2014/01/evidence.html)

81.    SHAO also discovered evidence from their various phone records being subpoenaed, of several ex parte telephone calls having been made the night before the illegal custody switch between her ex husband Tsan-Kuen Wang, Social Worker Misook Oh, and Family Court Services Screener Jill Sardeson. None of these phone calls had been documented by either Jill Sardeson nor Misook Oh even though they were required to. (See, also, shaochronology.blogspot.com; http://shaochronology.blogspot.com/2014/01/evidence.html )

82.    Santa Clara County Court has deterred SHAO from being able to take a deposition of Tsan-Kuen Wang since 2011, in violation of  California Family Code §218.


**B.    SHAO hired McManis Faulkner, LLP to attack as unconstitutional the 8/4/10 and 8/5/10 orders that had been issued in violation of her Constitutional rights to custody and to due process, but on his first day, her attorney succumbed to pressure from Judge Davila during an in chambers conference not to attack those pleadings. By following the court's request rather than SHAO's request, SHAO's attorneys acted directly contrary to her interests and committed malpractice. This in chambers agreement between Attorney Reedy, Judge Davila and David Sussman that Reedy not attack the illegal orders was the second conspiracy.  SHAO did not learn of it until long after it occurred.**

- 47 -

83. On August 20, 2010, SHAO hired McManis Faulkner, LLP. Attorneys Michael Reedy, James McManis and Catherine Bechtel of that firm represented her. SHAO made it clear to her attorneys that she wanted child custody returned to her immediately and that she wanted Judge Edward Davila's 8/4/10 and 8/5/10 orders declared void and reversed for their having been issued in violation of due process. The law firm did not disclose to SHAO that they had a conflict of interest in that their senior partner James McManis had an attorney-client relationship with the Santa Clara County Superior Court. The attorneys did not disclose to SHAO that they had a social relationship through the American Inns of Court with several Santa Clara Superior court judges. The attorneys did not disclose to SHAO that Judge Davila was the President of Santa Clara County Bar Association which is their client. The attorneys further did not disclose that they had a conflict of interest in representing SHAO in that their allegiance was to pleasing the judges of the court which overrode any duty to vigorously advocate on behalf of the interests of SHAO. Failure to disclose these conflicts of interest and failure to advocate on SHAO's behalf and attack the orders she hired them to have overturned were instances of obvious malpractice by SHAO's attorneys.

84. On the first day Michael Reedy showed up in the Court as SHAO's attorney, August 23, 2010, Reedy was told by Judge Davila in chambers not to attack the orders of August 4 and 5 of 2010, even though SHAO had specifically directed Reedy to do so. The judge admonished Reedy that the best course of action would be to not attack the orders, but instead to stall indefinitely until a new status quo of custody had been established. An associate attorney's note regarding Reedy's conference with her on August 25, 2010, reporting on what had occurred during the in-chambers meeting he had had with judge Davila, recited that Davila had directed "no review of Request and Order Pursuant to Emergency Screening." Reedy had been asked to participate in the ongoing plan to make the temporary parental deprival a permanent state of affairs.

85. Judge Davila's direction to SHAO's attorney Reedy not to file a motion to set aside his illegal orders indicates that Judge Davila knew he had violated both the law and SHAO's Constitutional rights when he removed her child. Davila did not want his improper actions highlighted in the public record where it might draw critique from the press, his colleagues

- 48 -

or any judicial oversight body.  In addition, Judge Davila instructed Reedy not to file an opposition to Sussman's motion to declare SHAO as a vexatious litigant and a security payment order in a clear attempt to block SHAO's access to the Court and effectuate permanent parental deprival.   Judge Davila's instruction to Reedy not to file a motion to set aside the illegal orders violated California Penal Code §96.5.

86. Reedy violated his fiduciary duty to his client SHAO when he succumbed to this pressure from Judge Davila not to attack the orders and instead agreed to let the new illegally gained custodial status quo remain unchallenged.  Reedy was SHAO's attorney for 7 months, and during that time he never challenged the orders he had been hired to get overturned.  During this time he never told SHAO about Judge Davila's directing him not to attack the illegal orders. He just kept making different excuses for why he had not done so.

87.  SHAO only found out about the conspiracy that took place on that first day of his representation of her among her attorney Michael Reedy, Judge Davila, and opposing counsel Sussman to maintain the illegal orders in effect and unchallenged, several years after it had occurred.  In discovery, after having sued Michael Reedy and his firm for malpractice, SHAO read in his notes of a call he had had with opposing counsel about that first chambers conference on August 23, 2010 at which Reedy had secretly sealed her child's terrible fate. In his telephone notes on September 21, 2010, Reedy quoted opposing counsel David Sussman's saying to Reedy about the chambers conference:  "Thanks for keeping things quiet.  Appreciate professionalism.  He [Sussman]would have jumped up & down if told he could not submit add'l papers…"[4]

88. Around the end of his representation of SHAO, Michael Reedy told SHAO that he had met Judge Zayner at the William A. Ingram American Inn of Court.  Judge Zayner would be the new judge succeeding Judge Davila in SHAO's family law case.  Michael Reedy disclosed to SHAO and that the McManis firm had sponsored many judges' judicial seats. This was the first time SHAO had heard of the American Inns of Court.

---

[4] MF00163, produced by McManis Faulkner, LLP.

COMPLAINT

**C. Irregular prolonged parental deprival of SHAO after her motion to set aside was granted, which was later discovered to be conspiracies to protect James McManis and Michael Reedy from their p**

89. The first thing SHAO did once she terminated her attorney client relationship with Michael Reedy and McManis Faulkner's firm was to attack as unconstitutional the illegal orders she had hired the firm to have reversed. The orders were declared unconstitutional during the hearing of 7/22/2011 and SHAO won her motion to have the orders overturned, but by then Reedy's complicity in Judge Davila's plan to allow a new custodial status quo to develop had allowed such status quo to develop. Even though the orders were reversed, nothing changed. The child was not returned to SHAO and her prior custody never got reinstated.

90. Judge Grilli, who overturned the illegal orders on 7/22/10, withheld the return of child custody to SHAO initially with the excuse that it would be only a week before the full trial on child custody was scheduled to take place (July 29, 2011). SHAO had all necessary witnesses ready for trial on 7/22/2011. Judge Grilli also ordered that Wang submit to a psychological examination. However, following ex parte communications with opposing attorney David Sussman and BJ Fadem, Judge Mary Ann Grilli changed the order she had made on July 22, 2011, postponed the trial on calendar for July 29, 2011, and disregarded SHAO's proposed Order After Hearing which stated the court's reasons for granting SHAO's motion to set aside having been because the orders were entered in violation of SHAO's due process rights to notice and an opportunity to be heard at an evidentiary hearing. Judge Grilli secretly directed attorney Sussman (not the successful moving party on the motion to set aside but the opposing party's attorney) ex parte to prepare another alternate Order After Hearing three months later. Sussman stated in his proposed Order that the 8/4/10 and 8/5/10 oklrders had been set aside, but he did not state the basis upon which the court had done so. The first paragraph of that order, which Judge Grilli signed on 10/31/2011, reads: "Petitioner's Motion to set aside orders of August 4 and 5 of 2010 is granted." The second paragraph states "The August 4 and 5 of 2011 [sic: 2010] order for supervised visitation shall continue until further Order of the Court." In one breath, Santa

- 50 -

Clara County Court both set aside and also illegally maintained the set aside orders in full force and effect, still without any evidentiary hearing.

91.    The trial on custody was continually delayed after having been taken off calendar by Judge Grilli at the ex parte direction only of David Sussman, attorney for Wang. Judge Grilli used BJ Fadem to inform all counsel of the postponement of the trial.  After further delays by the Court, Judge Theodore Zayner again took the trial off calendar on October 31, 2011, and used the new status quo of the child having lived now for more than a year in Wang's sole custody as an excuse to require a custody evaluation.  On October 31, 2011, Judge Zayner further denied a request that an attorney be appointed to represent the interests of SHAO's older son, even though Judge Zayner had previously promised SHAO that one would be appointed when he ordered the original child's counsel to withdrew from representation three weeks earlier. Judge Zayner knew there was a sibling separation order against the older son preventing him from seeing his sister unsupervised, and that the son wanted to challenge that order, but he removed the son's attorney anyway.

92.    Judge Zayner further suppressed and disallowed the positive results of the psychological examination that SHAO had had to be disclosed to SHAO although the judge had allowed Family Court Services Screener Jill Sardeson to read the evaluator's report about SHAO's good mental health and ability to parent well. SHAO had to file a motion to get that report released to her in June, 2011.  The report concluded that SHAO was psychologically sound and a capable parent. This evidence contradicted the court's ongoing no contact order with her child except under professional supervision, so it was not released to her until she forced the issue.

93.    At the time when Judge Zayner again cancelled the trial on October 31, 2011, Michael Reedy and his firm were on notice that SHAO was suing them for malpractice.  At the time SHAO did not understand why judge Zayner was causing such long delays in her case.  SHAO knew that Judge Zayner knew Michael Reedy since they had met at the Inn of Court club, but she was not aware at that time that Judge Zayner was a close friend to Michael Reedy, was serving as a co-officer of an elite social club with Michael Reedy, and was covering for and protecting Michael Reedy, who had committed malpractice in agreeing with Judge Davila's directions not to attack the illegal custody switch orders.

- 51 -

This local social club has confidential membership and is a Chapter of the American Inns of Court. Reedy testified on July 22, 2015 that there were at that time 100-110 members in the club, including about 30 judges/justices and 60-70 attorneys. Reedy testified that the judges' memberships were free.  The judges and attorneys have closely related social interactions privately.  It is called "William A. Ingram American Inn of Court" ["Ingram Inn"].

94.  In response to Santa Clara County Court's unreasonable stalling of SHAO's child custody return, SHAO filed a writ of habeas corpus with California Sixth Court of Appeal, case number H037833, which was promptly denied by Associate Justice Patricia Bamattre-Manoukian, without stating a reason.  The denial was made without disclosing Justice Bamattre-Manoukian's close, 10+ years' social relationship with Michael Reedy through the same Ingram Inn of Court.  The Petition for Review of that decision was denied by California Supreme Court's Chief Justice.  At the time SHAO was unaware of the potential attorney-client relationship of that Chief Justice with Attorney James McManis, whose firm she had sued for malpractice.  At that time James McManis was a Master with many judges at San Francisco Bay Area Intellectual Property Rights American Inn of Court ["SF IP Inn"] and Michael Reedy was handling the affairs of the local Ingram Inn.

95.  SHAO appealed that denial to the US Supreme Court with Petition number 11-11119, with Rehearing denied on December 9, 2012.  At that time, SHAO was unaware of the relationships of the Justices of the US Supreme Court with James McManis and Michael Reedy through the American Inns of Court.

96.  SHAO further filed an appeal from Judge Mary Ann Grilli's October 31, 2011 order and from Judge Zayner's Minute Order of October 31, 2011 cancelling the custody trial and refusing to appoint a new attorney for SHAO's older son.  The appeal with the California Sixth District Court of Appeal is case number H037820.  Ever since James McManis and Michael Reedy started getting involved behind the scenes in the business of squelching all SHAO's appeals after having been sued for malpractice, Real Party in interest Wang's opposing Attorney Sussman has not needed to file any Answering Brief to any and all appeals of SHAO.  Even in the absence of any opposition from Wang, Presiding Justice Conrad Rushing and Justice Premo conducted an irregular oral argument in May, 2014,

- 52 -

where they restricted SHAO from talking more than 10 minutes when the time allocated for oral argument is 30 minutes pursuant to California Rules of Court.  Then, on May 22, 2014, Justice Rushing denied SHAO's appeal based on a surprising new issue that was not raised during the oral argument, in violation of California Government Code §68081.  The Opinion raised the new issue that the October 31, 2011's order is not appealable, yet the case law cited in the Opinion by Presiding Justice Conrad Rushing actually did not support the finding nor was it applicable case law.

97.  At that time, SHAO was unaware of Justice Rushing's conflicts of interest, his potential attorney-client relationship with James McManis, his prior attorney-client relationship with James McManis when he was previously employed by the Santa Clara County Court, for which James McManis served as counsel, his cozy relationship with McManis Faulkner, LLP, and his collegial relationship with James McManis while James McManis has been working for the Court as a Special Master and taught at judicial education meetings regarding Special Masters.  SHAO's appeal to the California Supreme Court was again denied by the Chief Justice Tani G. Cantil-Sakauye.  At the time, SHAO was unaware of the potential attorney-client relationship between the Chief Justice and James McManis.

98.  SHAO appealed to the US Supreme Court with case number of 14-7244 on or about November of 2014.  Again, SHAO was unaware of the relationship of the Justices with James McManis or Michael Reedy through the American Inns of Court.

**D.    On September 12, 2012 at the Court's Judicial Child Custody Conference, Judge Theodore Zayner coached David Sussman to raise the issue of a remittitur that was issued on April 16, 2012, nearly six months prior, in order to use the remittitur as an excuse to revive Sussman's discovery motion which had asked for the address and phone number information of SHAO's family, aimed at harassing SHAO in retaliation for her having attacked the qualifications of the court appointed custody evaluator.**

99.  Despite having a copy of the thorough psychological evaluation of SHAO showing that SHAO was in good psychological health and a capable parent, Judge Theodore Zayner ordered a child custody evaluation to be done by a private "forensic psychologist" who the court regularly relied upon and well supported by Santa Clara County Bar Association, who called himself "Dr." John Orlando.  Without performing any tests, "Dr." John

Orlando illegally diagnosed that SHAO had schizophrenia without any examination, a mental disorder suffered by less than 1 percent of the U.S. population, and for which there was no evidence in the extensive phsychological testing SHAO had already been subjected to at the request of the court.

100. SHAO then discovered that "Dr." Orlando had no psychologists license and was not qualified to deliver any psychological opinions. Orlando had illegally issued his unqualified diagnosis of SHAO in order to help the court and Wang continue to deprive SHAO of custody.

101. SHAO requested a Judicial Custody Conference to disqualify "Dr." Orlando on September 12, 2012. On September 6, 2012, Sussman filed a bizzare "Case Management Conference Questionnaire" where he did not check custody as an issue but only checked "other" and specified issues of "remitter", a typo, and "discovery motions." On September 12, 2012, in response to SHAO's request to discuss the child custody issue, Judge Zayner reminded David Sussman to discuss the "remittitur" issue instead, and used that to "revive" Sussman's discovery motion filed in March 2010 to compel disclosure of the private home address and phone numbers of SHAO's family members. Page 13 of the hearing transcript shows:

> MS. SHAO:  Your Honor, the most important thing is custody.
> THE COURT:  You mean on the remittitur.
> MR. SUSSMAN:  On the remittitur, yeah.  Frankly, I've never run into it before and I have to think about it."

Toward the end of that hearing, Mr. Sussman revealed Judge Zayner's extrajudicial ex parte coaching of him:

> THE COURT:  We'll see you on November 1st at 9:00.
> MR. SUSSMAN:  Thank you, Your Honor.  Thanks for your time. By the way, I thought your direction last week was extremely helpful."

Yet, there had been no hearing at all "last week," only Sussman's bizarre and inexplicable out-of-the-blue mention of remittitur in his  "Case Management Conference Questionnaire" and mistyped remittitur to be "remitter", which corroborated his statement on 9/12/2012 that "I've never run into it before."

- 54 -

102. Judge Zayner disallowed SHAO to do any discovery after Jill Sardeson had admitted to receiving and acting in accordance with Wang's "bottom line" instruction not to allow the child to be returned to her mother that she had put in her notes. Sardeson had admitted this note during her deposition in June 2011. Judge Zayner granted Sarah Scofield's motion for protective order to block SHAO from probing into her conspiracies with Judge Davila and David Sussman. In early 2012, SHAO discovered that Wang had placed their daughter at the home of his attorney Sussman's paralegal for many days while Wang was out of town. During that period the minor child was interrogated by Sussman and his paralegal at Sussman's Office. SHAO issued a subpoena asking to depose that paralegal. Judge Zayner issued a monetary sanction against SHAO and granted Wang's motion for a protective order to block discovery. Sussman filed motions for protective order to block depositions of Wang and him and Judge Zayner simply let the motions to be continued for about 3 years such as to block discovery.

103. Judge Zayner also denied SHAO's motion to dismiss WANG's Order to Show Cause re Contempt filed in 2013 even though that Order to Show Cause re Contempt was fatally flawed in that it was based on a violation of the illegal August 4, 2010 Order that had already been set aside by the October 31, 2011 Order.

> **E.    Judge Patricia Lucas issued an irregular child custody order of November 4, 2013 that was not based upon any facts that had been covered during the trial, but included facts that were custom designed to act as a defense to malpractice for Michael Reedy in his defense of SHAO's malpractice action against him. SHAO did not know at the time how close a relationship Judge Lucas and Michael Reedy had, nor that Michael Reedy was interfering in her custody case from behind the scenes to ensure his defense of no causation to her malpractice case against him.**

104. After numerous (about 23) separate requests for child custody return on the record by SHAO for the court continuing to violate her Constitutional due process rights in each and every hearing during the two year span following the court's granting the set aside of the initial parental deprival orders of 2010 without actually changing the orders at all, Judge Zayner finally set a custody trial to take place in July 2013. Judge Zayner assigned Judge Patricia Lucas to hear SHAO's custody trial. SHAO did not know at the

time that Judge Zayner, Michael Reedy and Judge Lucas were close friends through being the Executive Committee members of the Ingram Inn of Court. Judge Lucas refused to issue a statement of decision on SHAO's request that the August 4 and 5 2010 orders were void and were violative of Constitutional due process. Judge Lucas also denied SHAO's request that child custody be returned to her based on a creative new reason that was never discussed at trial: a lack of substantial change of circumstances from the status quo of illegal parental deprival for three years from August 4 2010.  Apparently, the status quo that the court had improperly caused on purpose, starting with Judge Davila's instruction to Michael Reedy, was now so entrenched that it had silently shifted the burden of proof to SHAO to show why a change in custody would benefit the child's best interests.

105. The trial took place in July, 2013 for 9 or 10 days.  On July 11, 2013, at the completion of the experts' testimonies, Judge Lucas stated on the record multiple times apologizing to SHAO about what had happened and saying that she regretted that she was unable to turn back the clock to three years ago and stated that "I can assure you that the order will never be the same."  The next day, however, Judge Lucas's attitude had somehow, mysteriously, been drastically changed.  Pursuant to the direction of Sarah Scofield, Judge Lucas restricted Jill Sardeson's time of examination to be only 1 or 2 hours, and allowed David Sussman and the minor's counsel to use the majority time of the 1 or 2 hours. Judge Lucas refused to conduct an in-chamber interview of the minor.   The Court reporter delayed making the July 11, 2013 transcript for about 5 months and did not deny that she was under threats with regard to its contents.  The reporter refused to give SHAO a certified copy of the July 11, 2013 transcript.  When SHAO finally got access to that transcript it had been purged of Judge Lucas's multiple apologies made on the record. The clerk refused to file the original transcripts she had prepared, alleging that the Appellate Unit of Santa Clara County Court disallowed her to file them until the Appellate Unit of the Court sent her a Notice of Appeal (H040395).  Thus far, the reporter's transcripts are still sitting at the retired reporter's home for almost 4 years.

106. Judge Lucas delayed beyond the statutory 90 days to issue her Statement of Decision and Order on November 4, 2013.  On October 16, 2013, 3 weeks prior to that, she had signed

- 56 -

an order to dispose of the trial exhibits, which included evidence of child abuse from the police and from the medical doctors. All the trial evidence then disappeared for a year until SHAO later filed a motion seeking to locate the whereabouts of the trial exhibits.

107. Judge Lucas's Nov. 4, 2013 Statement of Decision and Order includes a five pages' "recital of facts" which were not facts that were presented at trial. This indicates that Judge Lucas had ex parte access to information outside the trial and case file, or had direct ex parte assistance in drafting from her close friend and colleague Michael Reedy in writing her statement of decision. SHAO did not know at the time that Judge Lucas was a close friend to Michael Reedy, a co-Officer of this elite social club with Michael Reedy and Judge Zayner, or that she was covering for and protecting Michael Reedy, whom SHAO was suing for malpractice.

108. SHAO did not realize that Judge Lucas's Statement of Decision and Order of Nov. 4, 2013 would become Michael Reedy's defense to her suit against him for malpractice until December of 2015, when James McManis and Michael Reedy filed about 14 motions in limine focusing on the application of collateral estoppel of Judge Lucas's Nov. 4, 2013 Statement of Decision and Order (custody trial), while that order was still pending appeal with California Sixth District Court of Appeal (Case Number H040395) for two years (as of December 2015) without any progress (as Santa Clara County Superior Court's Appellate Unit has delayed producing the records on appeal and blocked the court reporter from being allowed to file the purged child custody trial hearing transcripts). But in hindsight it is probable that the Nov. 4, 2013 Order was custom made by Reedy himself to protect Michael Reedy from SHAO's suit and to reward Michael Reedy for choosing loyalty to the judge and court over loyalty to his client.

109. Neither Judge Lucas nor Judge Zayner nor anyone from the court ever disclosed their close personal relationship with Michael Reedy and James McManis to SHAO. SHAO only discovered it years later during discovery (on July 22, 2015).

**F.      SHAO discovered in September of 2014 that Wang had been diagnosed with a dangerous mental condition which could endanger the safety of their children at any time. This evidence should have been the basis for an immediate return of child custody to SHAO, but it was not.**

COMPLAINT

110. In July 2014, SHAO issued a subpoena to CIGNA Health Insurance Company for all claims records of WANG. David Sussman did not object to the subpoena, and SHAO obtained all psychological claims records regarding Wang's mental health that professionals had made, a total of more than 250 pages from CIGNA Health Insurance Company.

111. These CIGNA Health Insurance records revealed that:

(1) The minor's complaint of brutal physical abuse by Wang from July 19 through 25 of 2010 was corroborated by Wang's having been suffering during that time from an ongoing dangerous mental disorder. Such disorder was diagnosed by Dr. Sandy Chin on July 30, 2010, during the same week that the child had reported having been beaten by her father. Dr. Jeffrey Kline, Diplomat of the American Forensic Psychological Association, decoded Wang's claims record to identify the diagnosis for this dangerous mental illness as below:

Major Depressive Disorder, Recurrent, Moderate Severity
7/30/10 – 12/23/10:  16 sessions
6/18/11 – 12/18/11:  26 sessions
1/22/12 – 12/22/12:  20 sessions
4/6/13 – 12/18/13:   18 sessions
1/11/14 – 4/6/14:     10 sessions

Major Depressive Disorder, Recurrent is defined as the "Presence of two or more Major Depressive Episodes." Major Depressive Episodes are defined as the presence of "five or more of the following symptoms…present during the same 2 week period and represent a change from previous functioning" with "at least one of the symptoms" being "depressed mood or…loss of interest or pleasure":

"depressed mood most of the day, nearly every day"
"marked diminished interest or pleasure in all, or most, activities most of the day, nearly every day"
"significant weight loss when not dieting or weight gain"
"insomnia or hypersomnia"
"psychomotor agitation or retardation nearly every day"
"fatigue or loss of energy nearly every day"
"feelings of worthlessness or excessive guilt or inappropriate guilt…nearly every day"
"diminished ability to think or concentrate, or indecisiveness, nearly every day"
**"recurrent thoughts of death…recurrent suicidal ideation…attempt or a specific plan for committing suicide."**

COMPLAINT

1

2

3

4

5

The symptoms must also "cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." The Severity indicators are "Mild, Moderate, Severe Without Psychotic Features, Severe with Psychotic Features." Severity "is judged to be mild, moderate, or severe based on the number of criteria symptoms, the severity of the symptoms, and the degree of functional disability and distress."

6

7

8

9

10

11

12

(2) WANG talked one of his own treating mental health professionals, Carole Tait-Starnes, to work instead as the minor's mental health professional. Ms. Starnes did not disclose her prior position as Wang's therapist and did not disclose that Wang's mental illness was a potential danger to the child. After February 2014, the minor child told Carole Tait-Starnes that her wishes were to live with SHAO. Carole Tait-Starnes reported this preference to Wang, who punished the child for having voiced a desire to live with her mother. A copy of Dr. Kline's report documenting these facts is attached hereto as **EXHIBIT 6.**

13

14

15

16

17

18

19

20

21

22

23

112. Shortly after such discovery, SHAO filed a motion to change child custody with Santa Clara County Court based on the new evidence that Wang was suffering from a dangerous mental condition that made him suicidal. SHAO offered as evidence of her competent parenting the testimony of the professional supervisor who had been monitoring all SHAO's contact with her daughter for years and the CIGNA subpoenaed records with the affidavit of custodian. Judge Zayner suppressed the evidence, disallowing the professional supervisor to provide her testimony as to SHAO excellent parenting, disregarding the CIGNA records and, in or about November, 2014, denied the motion. A year later, SHAO learned that Judge Zayner blocked such evidence in order to avoid the return to SHAO of her child, as that would place McManis and Reedy without their no causation defense. The judge made this decision in complete disregard for the safety of the minor.

24

25

26

113. SHAO then filed an Application for Emergency Relief with the California Sixth District Court of Appeal in the custody appeal case H040395, but Presiding Justice Conrad Rushing denied it despite Wang offering no opposition. At that time, SHAO was unaware of Justice Rushing's conflicts of interest.

27

28

114. SHAO next filed an Application with the US Supreme Court in 14-7244 (14A677). It was promptly denied by Associate Justice Kennedy, and later, for the second time, denied by

- 59 -

the Court.  This took place during the time when SHAO was still unaware of James McManis's relationship with Associate Justice Kennedy and the Supreme Court.

115. SHAO re-filed the motion in 2015 after Judge Joshua Weinstein took over Judge Zayner's seat in the Family Court when Judge Zayner moved to the civil court.  The court expressly stated in February 2015 that the court did not want to hear any about the mental illness of Wang.

**G. After SHAO discovered the dangerous mental disorder Wang was suffering from, which should have justified an immediate custody switch back to SHAO, there was a sixth Conspiracy to abuse judicial contempt power to attempt to have SHAO arrested based upon a frivolous contempt request by Wang.**

116. On December 2, 2013, Wang filed a frivolous Order to Show Cause re Contempt against SHAO based on her having violated Judge Davila's order issued illegally on August 4, 2010.  The Order to Show Cause is fatally flawed as the basis for contempt, that 8/4/2010's Order had already been set aside by Judge Grilli.  However, despite Wang's Order to Show Cause re contempt being thus fatally flawed, Judge Zayner denied SHAO's motion to dismiss the Order to Show Cause re Contempt.

117. In May 2014, Wang had interfered in SHAO's limited access to the child in the form of her professionally supervised visits, by refusing to produce the minor for any such visits.  The professional supervisor called the police and was able to discover the address of Wang's residence.

118. To counter the frivolous OSC re Contempt, SHAO filed a genuine Order to Show Cause re Contempt.   The court continued both hearings many times.

119. On March 4, 2015, Shao inadvertently did not show up for a status conference for both contempt proceedings.  She was ill and missed the conference.  SHAO's attorney did appear on her behalf, but as a sanction for her having missed the status conference,  Judge Joshua Weinstein took SHAO's Order to Show Cause re Contempt off calendar and issued a bench warrant against SHAO. Judge Weinstein refused to set a hearing to recall the warrant and informed SHAO's attorney that this warrant would never be recalled.  The warrant was later set aside by another judge on April 23, 2015.  With God's intervention, the warrant miraculously disappeared and unable to be enforced, so SHAO was able to appear at the Court for purposes of attempting to set aside the warrant without being

- 60 -

arrested.  Such attempt to arrest took place after SHAO discovered WANG's dangerous mental disorder as discussed above.

120. SHAO had to refiled her OSC re Contempt, in order to keep countering Wang's frivolous contempt to avoid being jailed.

121. After discovery that the prolonged parental deprival was caused by the manipulation of James McManis and Michael Reedy [through the March 14, 2016's illegal dismissal of SHAO's child custody appeal (H040395)], Judge Joshua Weinstein again tried to arrest SHAO and God again delivered SHAO, to cause Wang's Contempt proceeding eventually dismissed "in view of justice" on June 17, 2016.  At that time, Judge Weinstein had illegally dismissed SHAO's contempt on March 7, 2016, leaving only Wang's Contempt alone which had been maintained by the Court for almost three years.

**H.    The judicial officers of the Santa Clara County Court continued to conspire to punish and harass SHAO in retaliation for her continually exposing their misconducts by challenging her bar license, her driver's license, and illegally imputing income to SHAO without any prior notice nor motion**

122. Judge Davila and Judge Zayner delayed SHAO's motion to modify child support for three years then eventually let the Child Support Commissioner decide it on May 3, 2013 in the child support court (in the same hearing to set the May 3, 2013's hearing, child custody trial was also set to take place before Judge Lucas).  At the hearing, the Department of Child Support Services' attorney contacted Wang alone and then presented to the Commissioner a child support guideline with an imputation of income against SHAO, without any preceding notice, such imputation not having been stated in the motion, and in the absence of any evidence in support thereof.

123. SHAO appealed from the 5/3/2013 Child Support Order with California Sixth Court of Appeal (case number H039823).  One year later, SHAO discovered that Wang had committed fraud in his Income and Expense Declaration when he concealed monthly income he was receiving from the rental of real property in the amount of about $4,933.00.  Although he had perjured himself on his Income and Expense Declaration to conceal ownership of the real property and its rental income, the Court and the Department of Child Support Services knowingly ignored the fraud, continued the

- 61 -

hearing of SHAO's motion to set aside its order multiple times, and eventually took the hearing off calendar on September 28, 2015. The court refused to decide the issue of fraud. SHAO refiled her motion on April 27, 2016 but Judge Joshua Weinstein "cancelled" that motion on April 29, 2016 without any notice.  The order cancelling the April 29, 2016's hearing was never even served (no proof of service) on SHAO by the court.

124. From September 28, 2015 for a year, the DCSS as led by Derryl Young, used this 5/3/2013 Order which is known to be based upon perjury and fraud and no due process, to suspend SHAO's driver's license on five separate occasions.  This same order was also used in an attempt to suspend SHAO's bar license without any prior notice.  SHAO's request for administrative hearing was eventually scheduled in July 2016, after DCSS was served with a request for hearing about two years ago.  In that administrative proceeding, SHAO successfully obtained the subpoenaed documents from Chicago Title Insurance to prove the fraud and perjury of Wang on his Income and expense Declaration.  Then the Administrative Law Judge under the DCSS refused to return to SHAO the originally subpoenaed evidence from Chicago Title Insurance, using the same technique as had been used by Judge Patricia Lucas to make the trial evidence unavailable after trial.   When SHAO served the DCSS a subpoena asking for the evidence of any communications it had engaged in with the McManis Faulkner law firm, DCSS's counsel did not deny the existence of such communications, instead it moved for protective order and to dismiss the administrative proceeding.  Lead Attorney Darryl Young personally appeared on behalf of the DCSS, who appeared to have had ex parte communications with McManis Faulkner, LLP and David Sussman, but refused to produce any correspondence/emails between the DCSS and Wang, Sussman or McManis Faulkner, not even the documents that may show how the DCSS did this for Wang, a rich Intel manager who did not need child support at all.  The intent for harassment is proven by the 5th suspension where no financial account was frozen but only driver's license and bar license as the DCSS was unaware how much actually owed but went ahead suspending SHAO's licenses under the disguise of "enforcement" when no enforcement was intended except for harassment.

125. SHAO filed Attorney Meera Fox's declaration in this appeal on April 24, 2017. Unusual hostility of the California Sixth Court of Appeal as led by Presiding Justice Conrad Rushing was demonstrated in the oral argument on April 27, 2017. See **Exhibit 5** for the Second Declaration of Meera Fox that was filed on May 10, 2017 in the related custody appeal case (Case No. H040395) without attachment. Pending motion for disqualification, Presiding Justice Rushing wanted to proceed with oral argument, which violated California Code of Civil Procedure §170.3. California Supreme Court Chief Justice denied application for extension as SHAO mistook the due date for Petition for Review was from the date of denial of rehearing, while in California, it was from the date of denial of original appeal, not from rehearing.

I.    **SHAO sued James McManis, Michael Reedy and McManis Faulkner, LLP in Santa Clara County Superior Court of California (case number 112CV220571) and in US District Court in Northern California in San Jose (case number 14-01137) without knowing the conspiracies James McManis and Michael Reedy had engaged in with the judges Davila, Zayner or Lucas. SHAO also brought another civil rights lawsuit with the US District Court (case number 14-01912)**

126. In March 2012, SHAO sued James McManis, Michael Reedy, Catherine Bechtel and McManis Faulkner, LLC. (Case number 112CV220571, still now interminably pending at Santa Clara County Superior Court of California). The case was irregularly dismissed in February 2014 on the Court's own motion by Judge Carole Overton. More than a year later, SHAO learned that Judge Carole Overton also had had 10+ year's regular social relationship with Michael Reedy through the Ingram Inn and could be one of the judges who had had their judicial seat sponsored by McManis Faulkner.

127. Through investigating the irregular dismissal of her action by Judge Overton, SHAO discovered the attorney-client relationship between McManis Faulkner, LLP and the Santa Clara County Superior Court. McManis Faulkner, LLP was advertising on its own website that the court was one of its "Representative Clients". SHAO then filed a new lawsuit with the U.S. District Court in Northern California in March 2014, asserting the impropriety of a client court deciding a case in which its own attorney was the defendant and seeking a new, impartial tribunal. The case was initially assigned to Judge Edward Davila. Judge Davila did not recuse himself. After this assignment was discovered by SHAO, SHAO requested the Court to disqualify Davila, as he was one of the named

defendants in the case.  The case was reassigned to Judge Lucy H. Koh.  Before such reassignment occurred, SHAO filed a civil rights lawsuit against Four judges, the social workers, Family Court Services, minor's counsel BJ Fadem, Wang, Attorney David Sussman, and the California Attorney General, with the same Court (Case number 14-01912).  Pursuant to Judiciary Policy, Compendium of Selected Opinions §3.6-6[1], the entire Northern California District properly recused itself from handling 14-01912, and had the case decided by a visiting Judge from an Eastern California District (Sacramento). Judge Lucy Koh knew her conflicts of interest and recused herself in case number 14-01912 as well on April 30, 2014.  However, Judge Koh did not recuse herself in case number 14-01137, which was re-assigned to her after Judge Davila had been recused on May 7, 2014.  It had been only 1 week since she had recused herself in the related case 14-01912, and she knew that both cases derived from the same illegal parental deprival orders issued by Judge Davila. Thus, Judge Koh knew her conflicts of interest but knowingly handled the case 14-01137 anyway to help out her buddies.

128. On September 22, 2014, without disclosing her close relationship with both James McManis and Michael Reedy, pending the 28 USC §455(b) motion to disqualify, Judge Lucy Koh ruled on the motion to dismiss, and denied the 28 USC 455(b) motion in Footnote #2 of the order granting dismissal with prejudice of the case of 14-01137.

129. In addition to her relationship with Judge Davila as a colleague, Judge Lucy H. Koh had a close regular social relationship with both James McManis and Michael Reedy through different Chapters of the American Inns of Court.  Judge Koh's questionnaire given to the US Senate Judiciary Committee disclosed that Judge Koh was a Special Master at San Francisco Bay Intellectual Property Rights American Inn of Court in 2016.  James McManis has been a Special Master in that SF IP Inn.  Judge Koh disclosed that she was in the Executive Committee of the William A. Ingram American Inn of Court for two years from about 2010 to 2012, and apparently closely socialized with Michael Reedy. Judge Koh was James McManis's client during the time that she was working for Santa Clara County Superior Court which was the client of James McManis. Judge Koh and James McManis have also been colleagues as James McManis worked for both Santa Clara County Court and the USDC in Northern California in San Jose as a Special Master.

- 64 -

James McManis further had been working closely with Judge Koh on technology equity cases at the US District Court in Northern California. In addition, Judge Koh joined Judge Davila as co-speakers for the Ingram Inn on May 9, 2012 on the topic of "Changing Venue: A Conversation with Judge Lucy H. Koh and Judge Edward J. Davila." Judge Lucy H. Koh, as a speaker on the issue of "changing venue" should be very familiar with the issue of judiciary disqualification, but she failed to recuse herself and further violated F.R.C.P. Rule 58 by denying the motion to disqualify herself by a footnote order that has never been done by any judges in the 225 year history of the US courts.

130. SHAO appealed Judge Lucy Koh's dismissal (based on McManis Faulkner's 12(b) motion), to the Ninth Circuit Court of Appeal (case number14-17063) on 10/21/2014. The Ninth Circuit issued a 2 page Memorandum on Nov. 7, 2016 when Judge Lucy H. Koh was about to become a Ninth Circuit Judge. The Memorandum omitted discussion of **all** material issues on appeal and especially omitted from discussion the newly discovered extrajudicial relationship between Judge Koh and James McManis and Michael Reedy and did not decide the issue of the conflicts of interest of the Ninth Circuit. SHAO appealed this 2-page Memorandum to the US Supreme Court on August 2017, Petition number 17-256.In the same afternoon when this November 7, 2016 2 page Memorandum was issued by the Ninth Circuit, Presiding Justice Conrad Rushing also issued an order to deny a motion to reconsider his Order of April 12, 2016—asking to reverse the vexatious litigant orders and change the place of trial or appeal. That was the basis of Petition 17-82 which had been filed with the US Supreme Court in June of 2017. Both cases 17-256 and 17-82 have the same Respondents: James McManis, Michael Reedy and their law firm, and both orders were issued on November 7, 2016. It is likely that both the California Sixth District Court of Appeal and the Ninth Circuit were manipulated by these defendant attorneys through the influence they wield through their powerful giant social club The American Inns of Court.

J.     **McManis Faulkner, LLC. irregularly procured a vexatious litigant order against SHAO from its client, Santa Clara County Superior Court of California, on June 16, 2015. Also after June 23, 2015, there was another mysterious prefiling vexatious litigant order issued by the same court, which bore a false stamped filing date of June 16, 2015 when such order was not in existence until after June 23, 2015 and was not entered into the docket of 112CV220571.**

131. After Judge Lucy H. Koh dismissed the case of 14-01137, SHAO filed a motion to set aside the dismissal made by Judge Carole Overton in Santa Clara County Superior Court of California.  The motion was granted based on violation of due process pursuant to Moyal v. Lanphear (1989) 208 Cal.App.3d 491. After the case was reactivated, in each Case Management Conference SHAO asked Santa Clara County Court to change venue based on the attorney-client relationship between the Court and Defendant McManis Faulkner, LLP, to no avail. (Pursuant to People v. Ocean Shore R.R., Inc.  (1938) 24 Cal.App.2d 420, the court has a duty to change to an impartial venue sua sponte.)

132. Then, James McManis, Michael Reedy and McManis Faulkner, LLP filed a "Motion to Declare Plaintiff a Vexatious Litigant Under Code of Civil Procedure §391, Require Plaintiff to Furnish A Security Pursuant to code of Civil Proc. §391.1 and §391.3, and Require Plaintiff to Obtain Leave of Court Prior to Filing Any New Litigation Pursuant to Code of Civil Proc. §391.7." This motion was successful even though the statutory requirements for finding someone a vexatious litigant were not satisfied at all.

133. Judge Maureen Folan issued an "Order re: Motion to Declare Linda Shao a Vexatious Litigant", with a 14 page statement of decision in which the judge made new arguments on behalf of the McManis firm's lawyers beyond those offered in their motion, but did not give SHAO any opportunity to rebut these new arguments, in violation of California Government Code §68061. Since there was an inadequate number of civil cases filed and lost by SHAO in existence to meet the clear minimum requirement of the statute, The Court sua sponte decided to include in the civil case count all appeals SHAO had filed which had been summarily denied by the US Supreme Court and the California Supreme Court. However, rather than being distinct unrelated independent civil cases lost by SHAO, as would provide a proper basis for the finding, all such appeals were from orders in one family law case reflecting SHAO's efforts to get back her child custody, the one which had already been counted by the court. The vexatious litigant statute is clear that appeals from orders in a case are not considered independent civil cases.  Thus the court's order was in direct contravention of the law.

134. In the Order, the Court denied the McManis attorneys' request that SHAO be forced to provide a security based on Civil Code Sections 391.1 and 391.3.  The Order did **not**

mention §391.7. It was stamped 11:56 a.m. of June 16, 2015 and received by SHAO on June 18, 2015.

135. On June 23, 2015, in opposing SHAO's motion to re-open discovery in the family law case, Wang attached to his opposition papers a copy of the "Order re: Motion to Declare Linda Shao a Vexatious Litigant", with a 14-page statement of decision. There was no proof of service of the order of June 16, 2015 attached, which indicates that the order could only have been directly obtained from the courts' chambers by McManis Faulkner, LLP. Wang used that order to assert that SHAO was not allowed to file any new motions in any cases, and asked for SHAO's motion to reopen discovery in the existing family court case to be dismissed on these grounds. Yet this order from the court does not serve the purpose of argument that Wang intended as that 14-page order had not included the requirement of seeking and gaining permission from the court before filing any further suits or motions; it was not a prefiling order. It is a natural inference that if there had been a prefiling order in existence at that time, Wang would have attached it to his declaration to support his declaration. Thus, this prefiling order could not be logically in existence on June 23, 2018 when Wang signed his declaration (which was filed on June 24, 2018).

136. The above inference is corroborated by the fact that SHAO received an additional order entitled "Prefiling Order-Vexatious Litigant" at a time one week after having received a copy of the original 14 page order. Such additional order was not entered into the case docket either. Yet, a week after the fact, it was somehow file stamped as though it had been submitted by the court on the same date as the other 14 page original order, and was file stamped June 16, 2015, 3:03 pm (after the time that the Court was closed on that day). This new backdated order miraculously provided for precisely what Wang had unsuccessfully asked the court to impose on SHAO when he tried to argue that the original 14 page order required SHAO to seek permission from the court and gain an order allowing her to file any and all motions or cases prior to filing anything in court. Suddenly, out of the blue, Wang's wishes came true to the latter, and were backdated to look as though the prefiling permission order had been issued by the court at the same time as it issued its original order and 14 page statement of decision. If there had been a prefiling order in existence at that time, Wang would have attached it to his declaration

- 67 -

and would not have had to make the unsuccessful argument he made in court that day on June 23, 2015. The new order was clearly created after that 6/23/15 argument had failed, and then was put into the record and backdated. The new order did not have any statement of decision attached to it.

137. The obviousness of this illegal move having being specifically made to accommodate Wang's and McManis Faulkner's interests and to hamstring SHAO's ability to fight for her rights shows that Judge Maureen Folan Court created and backdated such fake order at the behest and with the cooperation of Wang, his attorney David Sussman, and the parties who had sought the original order that SHAO be deemed a vexatious litigant, specifically James McManis, Michael Reedy, McManis Faulkner, LLP, their attorney Janet Everson.

138. This illegally created and illegally backdated prefiling permission order is void for lack of a statement of decision, pursuant to <u>Morton v. Wagner</u> (2007) 156 Cal.App.4th 963, 968.  It was not entered into the docket of 112CV220571, and it was the product of ex parte communications and a clear conflict of interest--- it is an order issued by the Santa Clara County Court in favor of its own attorney, the McManis Law firm.

139. SHAO filed an appeal from these two vexatious litigant orders with the California Sixth District Court of Appeal on June 25, 2015 (case number H042351). Santa Clara County Superior Court's Appellate Unit delayed the submission of these appeals to the Court of Appeal for three weeks in violation of the Rules of Court which required delivery to the Court of Appeal within 5 days. Then the Sixth District Court of Appeal issued a letter on August 11, 2015, asking SHAO to seek a prefiling order granting her permission to file these appeals—appeals from the illegal orders which required just that. SHAO presented case law to the court that the appeal was about the vexatious litigant prefiling permission requirement order and she thus had the right to appeal that without having to comply with it first. The case of H042351was reactivated at that point.  Then the Santa Clara County Court's Appellate Unit delayed producing the requested records on appeal in that matter for more than 2 years.  Eventually after much criticism from SHAO in an appeal to the US Supreme Court (Petition No. 17-82) regarding this unreasonable delay, the Appellate Unit finally produced the records SHAO needed in order to move forward with her appeal of the vexatious litigant prefiling permission requirement order.

140. SHAO discovered on April 30, 2018 that Santa Clara County Court had altered the docket of 112CV220571 during the period from July 17 to August 28, 2017 by creating a falsified docket entry for the mysterious "Prefiling Order-Vexatious Litigant" order which entry had not existed prior. Such entry did not show in all docket print-outs made from June 2015 through July 17, 2017, but suddenly it showed up in August 28, 2017's docket print-out.

**K. One month after the issuance of these two vexatious litigant orders, SHAO finally discovered the close relationships that James McManis, Michael Reedy, and the McManis Faulkner law firm had going on with the various judges who had been systematically blocking her efforts to recover custody of her child.**

141. On July 20, 2015, SHAO deposed James McManis. Mr. McManis admitted his attorney-client relationship with Santa Clara County Superior Court of California, admitted his attorney-client relationship with unidentified individual judges, courtroom clerks, court reporters, bailiffs and "the Clerk" regarding their law related "personal affairs" he had assisted them with on a "pro bono basis." He admitted that one of his judge clients is a Justice at the California Sixth District Court of Appeal, and another of his clients is a Justice of the California Supreme Court. (See **Exhibit 1**)

**142.** On July 22, 2015, SHAO deposed Michael Reedy. Mr. Reedy admitted to having had an ongoing social relationship over the past decade with about 30 judges, and 10+ years' close social relationship with Judge Theodore Zayner, Judge Patricia Lucas, and Associate Justice Patricia Bamattre-Manoukian, all of whom had had a role in continuing to deprive SHAO of her custodial rights. Michael Reedy testified that there were in total about 100 to 110 members of the William A. Ingram American Inn of Court, including 30 judges and 60 to70 attorneys. He testified that the judge members of this Inn do not pay any membership fee and all expenses of the Inn are paid by its attorney members. Reedy explained that the Inn has pupilage groups where judges mingle with and mentor attorney members both in social groups and also one on one. The Inn membership is confidential, and the attorneys have access to the personal emails and phone numbers of the member judges. After having discovered the extent of influence that James Mc Manis and Michael Reedy had over the specific judicial officers who had stopped SHAO from getting her

- 69 -

child returned to her, SHAO's lack of any progress over so many years and so many earnest attempts started to look like it had been no accident.

143. While on the case, Judge Maureen Folan denied all discovery and blocked all motions from SHAO regarding discovery.  The trial judge, Hon. Derrick Woodhouse, later ordered that experts' depositions could be taken, as a special favor to James McManis, Michael Reedy and McManis Faulkner, who had not disclosed their expert witnesses timely and who now the deposition of their experts will save their experts' being excluded from providing testimony.

**L. March 14, 2016's Incident exposed the conspiracies to use permanent parental deprival of SHAO as McManis and Reedy's sole defense from SHAO's lawsuit.**

144. Since being sued by SHAO for malpractice, it has become important to Michael Reedy, James McManis and their law firm of McManis Faulkner, LLP, to ensure that SHAO not regain custody of her child, since as long as she does not get her child back, Michael Reedy and James McManis can argue that their failure to advocate for her did not cause the damage that she suffered.

145. Not coincidentally, since maintaining their no causation defense to malpractice by ensuring SHAO never get her child back has became an express priority of the McManis firm, the deputy clerk in charge of records for the appellate division has illegally created several forged and baseless notices of noncompliance and has illegally altered the docket of Ms. Shao's underlying cases many times.  Such notices, when received at the appellate court have, within minutes of receipt, resulted in summary dismissals of the appeals despite there being requirements that appeals cannot be dismissed without notice and a motion requesting dismissal. Some of these notices have to this date never been seen by anyone besides Justice Rushing at California Sixth Court of Appeal and Rebecca Delgado, the deputy clerk at the Appellate Unit of Santa Clara County Court who keeps issuing them.  They get noted in the dockets of the various cases and dismissals are issued by Justice Rushing, without the actual notice of non-compliance or dismissal ever being served on the appellant or filed in the case files at either court.

146. At the pretrial hearings in the malpractice case of Shao v. McManis, when Defendants

- 70 -

presented their motions in limine, their defenses for about 14 motions in limine were all based upon applying collateral estoppel of Judge Lucas' 2013 order denying Ms. Shao custody. Over Ms. Shao's objection, Judge Derek Woodhouse at Santa Clara County Court agreed with Janet Everson's oral proposal to stay the case until the appeal of Lucas' order was dismissed or otherwise resolved, such that then collateral estoppel could be argued. He reasoned that the theory is inapplicable while the order is still on appeal. This would have left McManis Faulkner with no defense to the malpractice claim.

147. Ms. Janet Everson, who represents James McManis, Michael Reedy and McManis Faulkner, LLP in the malpractice action stated their substantial interest in applying collateral estoppel of Judge Lucas's mysterious custody order that, as mentioned above, contained five pages of statement of facts not presented at trial and was most likely written by Michael Reedy of the McManis Faulkner law firm. On December 10, 2015, Ms. Everson stated on the record:

> "Then the next issue is how does Judge Lucas' December 1, 2013 [sic: November 4, 2013], order impact our case? It does significantly, because if that order were not up on appeal it would be a final order of this Court, which would have a collateral estoppels effect in terms of causation and that would eliminate this case. But for the alleged negligence of the lawyers, the custody situation would be better than it currently is. But we know that the custody situation, right now, is the same as it was before McManis Faulkner was hired because of Judge Lucas' order. And that's why if we had a final order from Judge Lucas, it would really short-circuit these proceeding significantly and take out much of the complications that we have with regard to how much of the underlying case needs to be brought out during this trial in order for a trier of fact to make a determination."

148. Speaking to Ms. Everson, trial judge Honorable Derek Woodhouse stated:

> "THE COURT: Okay. One of the concepts that we discussed yesterday was in light of the inability to rely on collateral estoppels issue associated with Judge Lucas' decision that there was a discussion of perhaps staying this matter unless I could come up with some other way to get around it, and I tried and I can't." [December 10, 2015 transcript of Shao v.McManis et al.]

149. In trying to find "some other way," Ms. Everson predicted the way by stating that it was likely the SHAO appeal would be dismissed for failure of Ms. Shao to post the required fees for the court reporter. The records show:

THE COURT: Any suggestions as to how long the stay should be?

- 71 -

MS. EVERSON: My suggestion is that we put this on a 90- or 180-day case management conference so that we can check in with you and tell you the status. In reviewing the appellate court docket, it appeared there was a problem with getting the transcript.

I thought that the appeal had been dismissed because Ms. Shao hadn't done her due diligence to get the transcript requested.

[December 10, 2015 transcript of Shao v. McManis et al.]

150. Ms. Everson's statement seemed an odd thing to say at the time since the transcript had already been designated, paid for, and lodged with the appellate division of the Superior Court in October of 2014. (Despite a nine months' delay by R. Delgado, deputy Clerk of the appellate division, in sending those transcripts to the Court of Appeal, the Court of Appeal shows them having been filed 10/3/14 and received by it on 7/21/15.) Nevertheless, the prediction of Janet Everson, counsel for James McManis, Michael Reedy and their firm, as to why the appeal would get dismissed turned out to be the very wording by which the appeals were later dismissed. This could hardly have been a coincidence.

151. On Friday afternoon of March 11, 2016, the Court set the first Case Management Conference in response to SHAO's renewed motion to change place of trial. Ms. Everson's associate attorney repeated the prediction of Ms. Everson, when William Faulkner, the general counsel of McManis Faulkner was present. The court signed the order to stay the jury trial over the objection of SHAO on the proposed order, with the expectation of some action by the Court of Appeal, which cannot mean anything other than "dismissal," as there were no records on appeal available yet (such records have still not been made available as of the time this Complaint is filed in April 2018, almost 4 years of delay). The record for March 11, 2016's hearing reads:

"THE COURT: Yeah. I've granted the stay. We'll see you here June 3rd, at 1:30, for a case management conference or sooner if there's movement at the Court of Appeal." [March 11, 2016 transcript of Shao v. McManis Faulkner et al.]

152. Within 24 hours of that Conference, **on a Saturday,** March 12, 2016, Deputy clerk Rebecca Delgado of the trial court's appellate division somehow gained entry to the otherwise closed courthouse, at the direction of her supervisor, Susan Walker, and therein created two false Notices of Non-compliance in Ms. Shao's two appeals of H040395 and

- 72 -

H040977, did not give notice to any party of such "notices," and sent them somehow to Presiding Justice Conrad Rushing at California Sixth Court of Appeal, despite that court being closed on Saturdays and despite there being no mail delivery on Sunday.

153. These falsified Notices of Non-compliance issued by Delgado asserted that SHAO had failed to deposit the reporter's transcript fee timely. In fact the trial transcripts had already been paid for, produced, and were stored at the court reporter's home waiting for instruction of Santa Clara County Court's Appellate Unit to release the ban from filing them. The other non-trial transcripts were received by Rebecca Delgado on 10/3/14 and she had delayed in sending them to the appellate court until nine months later, on 7/21/2015.

154. On March 12, 2016, when she issued the fake notices of non compliance, Rebecca Delgado had already had full compliance for 17 months. The Appellate court had had full compliance for eight months already (since 7/21/2015), and the only reason it had not had the non-trial transcripts for as long as Ms. Delgado had had them was because of her lengthy delay/refusal to forward them to the court of appeal and the only reason it had not had the trial transcripts paid for was because Susan Walker blocked the court reporter for the July 2013's trial to file her original transcripts. The trial transcripts were also paid for and sitting at the court reporter's home. However, they were already paid for and even on file in the appellate court file when she issued the two false notices of non compliance stating the transcript fee had not been paid.

155. These falsified and groundless notices of Non compliance must have been created as a favor to McManis Faulkner, who needed the appeal dismissed in order to be able to assert their collateral estoppel defense in the malpractice trial of Shao v. McManis Faulkner. Such illegal use of court clerks and supervisors to perjure and create false documents shows how much influence McManis Faulkner, LLP has with the Santa Clara County Court. This kind of illegal collusion is the basis upon which SHAO has been asking for removal of the underlying case from the county where McManis Faulkner is both the attorney for the court, the employee of the court, the colleague of the court officers and the member of the bar with enough pull to somehow get deputy clerk R. Delgado to take a

- 73 -

Saturday and go into the court for the purpose of illegally changing the dockets in two cases and sending out a fake notice of noncompliance to the appellate court.

156. On the Monday immediately following R. Delgado's Saturday creation of perjured documents and alteration of the court dockets in Ms. Shao's two appeals, March 14, 2016, within the first 25 minutes of the court being open, Presiding Justice Conrad Rushing of California Sixth District Court of Appeal issued and sent an electronic notice of a dismissal of the child custody appeal of H040395. Another dismissal of appeal (H040977) was processed within two hours thereafter.

157. On the day she received the electronic notices of dismissal, SHAO went to Santa Clara County Court to inspect the court files, but did not find the March 12, 2016 notice. All volumes of the court files were loose and not bounded by fasteners. The Record Unit clerk explained that "when the case files are on appeal, the files are loose as they were being prepared for appellate records." On March 15, 2016 at 11:17 a.m., SHAO telephoned Rebecca Delgado asking her about this false Saturday notice and how she had gained entry to the closed Courthouse on a weekend. Ms. Delgado stated that she had done so at the direction of her supervisor Susan Walker, and then hung up on SHAO. SHAO then sent her a letter via fax. She failed to respond.

158. That afternoon SHAO telephoned Susan Walker asking her how Rebecca Delgado was able to enter the closed courthouse on Saturday, March 12, 2016. Walker admitted that she had directed Rebecca Delgado to come to the Court to work on March 12, 2016 but stated that she had no idea what notices Ms. Delgado sent out that day. When informed by SHAO which notices had issued that day, Walker acted surprised, stating "Oh, so quick!" when she heard that the appeals in H040395 and in H040977 were dismissed already based on the notices by R. Delgado on that Saturday.

159. On March 16, 2016, SHAO sent a fax to the CEO of Santa Clara County Court, David Yamasaki and Ms. Susan Walker, the Supervisor for both the Records Unit and Appellate Unit of Santa Clara County Court, requesting them to investigate the irregular Saturday false notices and irregular dismissal. SHAO's fax cover stated "Dear Mr. Yamasaki and Ms. Walker: Would you please investigate this matter? The dismissal involves millions

- 74 -

dollars of damages.  Thank you very much for your time and consideration." They failed to respond.

160.  Ironically when the Sixth Court of Appeal gave notice of dismissal, none of those actual paper notices of Non-Compliance created by R. Delgado were ever served on SHAO, nor could she get copies of them from the clerks at either court until a month later.

161. When such notice was not in the court's file on March 14, 2016, somehow Justice Rushing had received R. Delgado's falsified notices of non compliance first thing Monday morning despite her having only created it Saturday. The bailiff stated that no clerk had ever before gone to work at the Santa Clara Court House on any other Saturday for the past 10 years, and there being no postal delivery on Sundays. It was Justice Rushing's first order of business that Monday to process the dismissal, even though no one had officially asked him to do so and no motion to dismiss had been filed.

162. Such dismissals were illegal as entered without any prior notice nor any motion to dismiss pending, as is required by Rule 8.57(a) of the California Rules of Court.  The proximity of time and sequence of the events suggested that such dismissal was not coincidentally made, especially when such dismissal was illegal per se.

163. SHAO's expert witness Ms. Fox declared that such illegal shenanigans behind the scenes indicate a knowing conspiracy by the court and its clerks to hamper SHAO's ability to appeal and to effect the outcome of the malpractice action in favor of the McManis firm being able to assert its proffered defenses. Fox asserted that it could not be a coincidence that the illegal goings on behind the scenes were the exact matters that the McManis Faulkner defendants needed taken care of in order to ensure their defenses in Shao's malpractice claim against them. In Paragraph 31 of her declaration regarding the many illegal notices of non compliance and dismissals of SHAO's appeals, Fox states:

> "There is no other explanation for why R. Delgado would go in to work on a Saturday, especially for the sole purpose of creating false perjured documents to effect the specific relief required by Mcmanis Faulkner to assert their collateral estoppel defense.  There is no other explanation for why Justice Rushing would be expecting the falsified notices to arrive first thing that Monday morning and to explain how he had the appeals dismissed within 25 minutes of their receipt.  There is no other explanation for why a presiding judge would be willing to violate an appellant's due

- 75 -

process rights by summarily dismissing her appeals without anyone filing a motion to dismiss and without providing her any notice, in direct violation of the rules of court."

164. Justice Rushing vacated the dismissal on April 12, 2016 based on SHAO's motion to vacate, but *failed to decide* SHAO's motion to change place of trial and appeal. In that motion, Ms. Shao had reminded the court and provided proof that the Santa Clara County Superior Court had been stalling and attempting to undermine her ability to appeal from Judge Lucas's custody statement of decision and order since she had first filed her notice of appeal, by R. Delgado refusing to prepare records for appeal and also disallowing the court reporter to file the trial transcripts until they sent her a notice of appeal, which they delayed in doing.  In frustration, Ms. Shao had petitioned the appellate court to order deputy clerk Delgado to prepare the records needed for the appeal, but Justice Rushing had denied this motion on December 18, 2015.

165. When Justice Rushing did not decide the issues of the motion to reverse the child custody order of Judge Patricia Lucas and change of venue based on undisclosed conflicts of interest with the interested third parties James McManis, Michael Reedy and McManis Faulkner, LLP, SHAO filed a motion to reconsider the April 12, 2016 order regarding the omitted portion.  Justice Rushing denied the motion five months later on 9/23/2016. SHAO filed a Petition for Review with California Supreme Court (case number S237737), which was denied on December 30, 2016.

166. The California Supreme Court did not serve SHAO with such 9/23/16 order, and as a result SHAO missed the due date and then applied for extension of her time to file a Petition for Writ of Certiorari. This application was promptly denied by Justice Kennedy on the same day, immediately after it was docketed (16A863).  Justice Kennedy was in charge of all filings from the 9th Circuit area, including California.

167. SHAO filed a FRCP Rule 60(b) motion to vacate the denial based on Justice Kennedy's undisclosed conflicts of interest. A reasonable judge would have noticed their conflicts of interests from reading the application where SHAO mentioned in the application that the main issue for the proposed Petition for Writ of Certiorari was regarding the function of the American Inns of Court. Justice Kennedy has undisclosed direct conflicts of interest in that he has significant financial interest with the American Inns of Court, has been

- 76 -

acquainted with James McManis and Michael Reedy and has an American Inn of Court dedicated in his own name (The Anthony M. Kennedy American Inn of Court, an affiliate to the Ingram Inn). The Supreme Court simply returned the received 60(b) motion back to SHAO without even entering this in the case docket.

168. Delgado and Justice Rushing had been placed on notice that the transcript had already paid for before they dismissed the appeal for noncompliance--lack of fees-- to prepare transcripts.

169. McManis and Reedy have exerted their influence and successfully wreaked havoc behind the scenes of SHAO's various appeals, ensuring that the Appellate Records Clerks routinely issue false notices of Non Compliance and dismissals without basis in fact. They have kept SHAO busy for over a year just trying to undo this constant mischief. Any reasonable attorney or member of the public who knew of the sequence of events that occurred from March 12, 2016 through March 14, 2016 would believe that there was a conspiracy to dismiss Ms. Shao's appeals which involved at least Deputy Clerk of Court R. Delgado on behalf of Santa Clara County Superior Court, Justice Rushing of the California Sixth Appellate District Court of Appeal, and the McManis Faulkner firm's attorneys, if not individual attorneys.

**M.     The eighth conspiracy to dismiss SHAO's appeals arose 11 months after the March 14, 2016 dismissals. from February 2017 with multiple "shenanigans" continued to present where apparently Presiding Judge Patricia Lucas of Santa Clara County Court and other Justices at California Sixth District Court of Appeal were involved as well.**

170. Further such attempts to re-issue false notices of non-compliance and to dismiss the appeals have continued to the present date. On February 27, 2017, the docket of H040395 showed an entry of another Default Notice for failure to pay reporter's transcript fees dated February 24, 2017 identical to the March 12, 2016 Notices of Non-compliance. Yet neither Santa Clara County Court nor the Sixth Court of Appeal had such Notices in the file. SHAO discovered that Santa Clara County Court further silently took her underlying family law matter completely off the court's website as a "confidential case" at the same time of such false docket entry and the purported Notice of Default. This caused SHAO having no access to even check that case docket for any further false notices being issued.

- 77 -

171. On March 6, 2017, SHAO filed an "Objection to February 24, 2017's Notice" with Santa Clara County Court in her family court case, and sent a letter to the Presiding Judge of Santa Clara County Court informing her of this false notice shown on the docket of H040395 and of the issue that her family court case of 105FL126882 having been completely removed from the court's website such that she cannot even access the docket to monitor further false entries by deputy clerk Delgado.

172. On March 7, 2017, SHAO further filed a "Motion to Strike the Purported Notice of Non-Compliance of February 24, 2017 (purportedly filed with this Court on February 27, 2017) and Renewed Motion to Reverse, Remand with Instruction to Change Place of Trial/Appeal" in the H040395 appeal case. The clerk at the California Sixth Appellate District Court of Appeal withheld such motion from filing until after March 23, 2017[5].

173. On March 8, 2017, Presiding Judge Patricia Lucas of Santa Clara County Superior Court, the judge who issued the custody statement of decision and order that is the subject of appeal of H040395, responded to Shao's March 6, 2017's letter regarding false Notice of February 24, 2017 and of case docket removal by stating:

> "Dear Ms. Shao:
> I have received and reviewed your letter dated March 6, 2017 concerning your family law case. I will be taking no further action on your letter.
> If you are dissatisfied with the Court's action o your complaint, you have the right to request the commission on judicial Performance to review this matter. The commission's address is
> Commission of Judicial Performance
> 455 Golden Gate Avenue, Suite 14400
> San Francisco, California 94102-3660"

174. Six days after Presiding Judge Lucas's letter, on March 14, 2017, Santa Clara County Superior Court made another identical false Default Notice to the prior one, and filed it with California Sixth Appellate Court of Appeal in both appeals of H040395 and H040977.

---

[5] The docket showed two entries of March 7, 2017 and March 23, 2017 which referred to the same motion to strike. Truefiling, the media for electronic filing, showed March 30, 2017 being the date the Appellate Court approved filing.

COMPLAINT

175. On March 21, 2017, Ms. Shao filed with Santa Clara County Court another "Objection to the 5th False Default Notice Dated March 14, 2017."

176. On March 28, 2017, Presiding Justice Conrad Rushing issued an Order "granting" Shao's first motion to strike (about Feb. 27, 2017's docket entry). However, in minimizing his having summarily dismissed her appeals based upon false defaults, Justice Rushing chose to reframe Shao's motion to strike as a "motion for leave to cure the default", and ordered Shao to cure the default. In fact, there was never any default to cure. Shao had paid the court reporter for the trial transcript in 2014 and deposited the other designated transcripts with the Santa Clara County court in October of 2014.

177. In granting a motion for leave to cure a default that Shao had not pled nor made, Justice Rushing compounded the fraud involved in the fabricated default and faked notice of noncompliance. His order to Shao to cure the default when there was no such default only served to make it appear that she had in fact defaulted. But she never did. This suggested that the false docket of February 27, 2017 was created as a conspiracy with at least Presiding Justice Rushing, McManis Faulkner law firm, and Presiding Judge Patricia Lucas, in violation of Government Code §6002 and §53894, and Penal Code §96.5.

178. On March 29, 2017, in H040395, Shao filed a second motion to strike--- the 5th false Default Notice, which was dated March 14, 2017. She also renewed her request to change venue for both the trial court and court of appeal. The appellate court filing clerk withheld the motion from the docket for weeks until April 28, 2017 when Justice Rushing issued the denial order. The Clerk informed her that the motion was filed but could not be shown on the docket until approval of the court, who she stated to Shao was Presiding Justice Rushing.

179. On March 30, 2017, Shao filed a "Response to the Court's Order of March 28, 2017." Justice Rushing did not approve this filing until April 30, 2017. Justice Rushing's 2 ½ to three week pre-screenings of all Ms. Shao's pleadings and interfering with the clerk's administrative duty to file motions when received are violations of Ms. Shao's fundamental right to have access to the court, to be afforded due process, and they interfere with her right to appeal.

- 79 -

180. On April 4, 2017, Santa Clara County Court again resent the March 14, 2017 Default Notice. So the shenanigans continue. Ms. Shao is having to undo dismissals left and right because of all these false notices of non-compliance.  Moreover, on April 25, 2017, Santa Clara County Court issued a Notice of Non-compliance for H040395.

181. As for H040977, simultaneously with the non-existent false docket entry of Feb. 27, 2017 in H040395, an identical entry also showed on the H040977 appeal.  H040395 was an appeal from Judge Patricia Lucas' child custody decision, and H040977 was an appeal from Judge Theodore Zayner's decision on Remittitur.  On April 18, 2017, SHAO filed a motion to strike the false/non-existent notice of default of Feb. 24, 2017 as shown on Feb. 27, 2017's docket.  Justice Rushing denied this motion on April 24, 2017 by ordering "Appellant's Request to strike the notice of default is denied without prejudice to appellant providing a certified copy of the reporter's transcript to trial court".  While the court had accepted transcripts filing in October 3, 2014, now the court required signatures of the court reporters, in order to justify the non-existent Default notice of Feb. 24, 2017.  This again proves that the false docket entries of Feb. 27, 2017 in both H040395 and H040977 were directed docketing by Presiding Justice Rushing.

182. On April 28, 2017, Presiding Justice Conrad L. Rushing at California Sixth District Court of Appeal ordered that "Appellant's motion to strike Santa Clara County's Superior Court's 5th false appellant's default notice of March 14, 2017, and renewed motion to change place of appeal/trial and remand is denied."

183. On May 10, 2017, SHAO filed the second Declaration of Meera Fox in this case. The entry on this docket of H040395 about this filing was soon altered and removed on May 11, 2017 in violation of Government Code §68051, et seq. and §6200.

184. SHAO appealed this to the California Supreme Court (Case number S242475).  Chief Justice Cantil-Sakauye issued an order July 19, 2017 that "The request for judicial notice is granted.  The petition for review is denied." The judicial notice granted included all evidence of false docket entries, false notices, deterrence of filings and conflicts of interest by the California Sixth District Court of Appeal. These are:

- 80 -

(1) Declaration of Meera Fox filed on May 10, 2017 with California Sixth Court of Appeal in the case of H040395 (including the first Declaration filed with H039823 as Exhibit A to the May 10, 2017's declaration).

(2) Supplement to "MOTION TO STRIKE SANTA CLARA COUNTY SUPERIOR'S 5TH FALSE "Appellant's Default Notice" of March 14, 2017 and Renewed Motion to Change Place of Trial or Appeal and Remand under H040395" filed with California Sixth District Court of Appeal in the case of H040395 on May 10, 2017

(3) Docket of H040395 printed on May 10, 2017

(4) Complete docket of H040395 printed on June 6, 2017, showing removal of docket entry of May 10, 2017 as to filing of Meera Fox's declaration.

(5) Page 4 of Docket of H040395 printed on March 27, 2017

(6) Certified transcript for oral argument of April 27, 2017 for related appeal case of H039823.

(7) Snapshots of truefiling.com supported by docket of H040395 and email showing evidence of California Sixth District Court of Appeal's withholding from filing of pleadings in violation of SHAO's right to access to the court, in interference of the Clerk's Office's administrative duty of filing

(8) Evidence of alteration of the docket of 105FL126882 by Santa Clara Couty Superior Court

(9) Proof of Santa Clara County Superior Court's blocking SHAO from access to the Court by misusing McManis Faulkner's vexatious litigant orders obtained from its client, Santa Clara County Court:

(a) 4/29/2016's Order of Judge Weinstein

(b) 5/27/2016's Order of then Presiding Judge Rise Pichon

(c) 2/1/2016's Minutes order denyng Shao's rquest to reopen discovery

(d) Presiding Judge Patricia Lucas's letter of 3/8/2017 responding to SHAO's letter of 3/6/2017

- 81 -

(10)    Judge Pichon's Order summarily denying SHAO's application to file a Request for Order, filed on November 23, 2016 and the entire package of the Request for order that was received by the Santa Clara County Superior Court

(11)    Some evidence that had been already reviewed by the California Sixth District court of Appeal regarding McManis Faulkner's influence over the Santa Clara County Superior Court:

(a) McManis Faulkner LLP's website listing Santa Clara County Superior Court as its Client (they changed their website in late May 2017 and took it off in the new version of the website)

(b) Page 124 of the December 10, 2015 trial hearing transcript in Shao v. McManis Faulkner, LLP, et al. (112CV220571) with emphasis added

(c) Order of March 11, 2016 in Shao v. McManis Faulkner, LLP, et al. (112CV220571)

(d) Relevant pages of **deposition transcript of James McManis**[6] taken on 7/20/2015 (Shao v. Mcmanis Faulkner, LLP. et al. (112CV220571) with emphasis added

(12)    Motion to Change Place of Appeal to An Impartial Venue; to Disqualify Presiding Justice Conrade [sic: Conrad] Rushing, the Appellate Panel, and this Entire Court, filed with the California Sixth District Court of Appeal in H039823 on April 24, 2017.

185. On October 17, 2017, SHAO filed a Petition for Writ of Certiorari with the US Supreme Court (Case number 17-613). The same irregularities took place for this 17-613. See Exhibit 7 attached for the dockets of 17-613 and two docket printouts showing the entries that were altered, in violation of 18 USC §1512(c) and 18 USC §371.

186. While Justice Rushing reversed this illegal dismissal once on April 12, 2016, it is clear that Justice Rushing will not be able to be impartial or neutral in deciding this matter. Further, no judge serving under Justice Rushing as presiding justice will be able to be assumed

---

[6] Thus, Exhibit 1 to this Complaint, selected pages of deposition transcript of James McManis, was already taken judicial notice of by California Supreme Court. It was also taken judicial notice of before by Presiding Justice Conrad Rushing on 4/12/2016 in vacating the dismissal.

neutral either, after that impropriety. Justice Rushing should forthwith recuse himself from any panel hearing or deciding any of SHAO's appeals.

187. Following the March 14, 2017's false notice of default, Santa Clara County Court continued issuing notices of non-compliance on April 25, 2017 in H040395 (not in H040977; apparently child custody was the key target.).  SHAO filed another motion to strike and a renewed motion to reverse the 11/4/2013 custody order based on undisclosed conflicts of interest Judge Lucas had at the time she had issued the 11/4/2013 child custody order, and a request to change venue to a neutral forum.  Justice Grover, as active Presiding Justice, issued an order on June 8, 2017 to support Justice Rushing's Order of April 28, 2017, including impliedly reaffirming the illegal docket entry of February 27, 2017.  SHAO filed a motion to reconsider the June 8, 2017 Order, which has not yet been decided by the California Sixth District Court of Appeal for about 9 months.  Thus far, Santa Clara County Court has failed to prepare the records on appeal for H040395 for more than 3.5 years, and has disallowed the court reporter to file the July 2013's child custody trial transcript for 4 years.

188. In H040977, where there were two inappropriate attempts to dismiss the appeals, on August 1, 2017, after a delay of preparing records on appeal for 2 years and 9 months, Santa Clara Court finally prepared the records on appeal on August 1, 2017.  However, rather than serving those on Appellant, they mailed them to an old address which had been long vacant. The court refused to serve the records on appeal to Appellant in person or at her current address.  While the Santa Clara County Court used to keep a copy of the records on appeal in the file, Susan Walker stated that for this one case, there was no scanned nor hard copy in the court's records that could be given to SHAO or Xeroxed by SHAO.  When the Records on Appeal were not served on them, the California Court of Appeal denied SHAO's motion to require Santa Clara County Court to serve the records on appeal, and issued a default notice on September 13, 2017 for lack of an Opening Brief. SHAO had to file motion to vacate dismissal.

189. When SHAO finally scanned the records on appeal in October 2017, she discovered that the most important pleadings of SHAO to contest WANG's filings on Remittitur were both missing from the records on appeal:  Her Opposition to WANG's submission and

- 83 -

Objection to WANG's declaration. SHAO then filed an Objection to the Records on Appeal on October 30, 2017, which was classified by the Clerk's Office of California Sixth District Court of Appeal as a motion. The motion was unopposed and given to the Court for decision on November 15, 2017 but has not been decided for 5 months. Based on this main reason of lack of complete records on appeal, SHAO requested an extension of her time to file the Opening Brief, but the Court denied the 3rd extension, requiring such Opening Brief to be filed on May 1, 2018 even though the material records on appeal had not yet been provided by the Santa Clara County Court. SHAO had to file a motion to reconsider on April 23, 2018 based on the court's not yet ruled on her Objections. Then the Court denied both motion to reconsider and eventually denied the Objection as well on May 6, 2018.

190. The deterrence of appeals with false reports of non-compliance continued. Regarding an order entered ex parte in violation of due process after July 27, 2016's hearing at Santa Clara County court by Commissioner Gregory Salvidar in violation of Penal Code §95.6, the Notice of Appeal was filed on October 30, 2017; yet Santa Clara County Court failed to transmit the Notice of Appeal to the California Sixth District Court of Appeal within 5 days, as is required by Rule 8.714 of the California Rules of Court, and instead delayed until February 5, 2017. (Case number H045501).

191. SHAO also appealed from the Santa Clara County Court's denial of her motion to change place of trial in the civil malpractice case, with order issued November 21, 2017. Notice of this Appeal was also delayed by the lower court in being transmitted until Feb. 5, 2018 (Case number H045502). The California Sixth District Court of Appeal concealed the submitted Civil Case Information Statement from filing and issued a false Notice of Non compliance in violation of Government Code §53894 on February 21, 2018 stating that there was no CCIS on file. The Court of Appeal did have the CCIS, yet they issued another false notice on February 21, 2018, which stated that if Appellant would not submit a mediation statement, the Court of Appeal would issue a sanction. On March 16, 2018, the California Sixth District Court of Appeal dismissed both appeals without holding a hearing or issuing a motion, as is required pursuant to Rule 8.57 of the California Rules of

Court.  These dismissals were both appealed to the California Supreme Court (S248449 and S248477).

**N.   The ninth conspiracy was to misuse the vexatious litigant prefiling order illegally procured by James McManis and Michael Reedy to deter SHAO's access to the family court and block SHAO's right to appeal.**

192.  As stated in Paragraphs 134 and 135 of this Complaint, within a week following June 16, 2015 "Order Re: Motion to Declare Linda Shao Vexatious Litigant", this Order appeared as attachment to Wang's Responsive Declaration to stall SHAO's Motion to Reopen Discovery--- to take his deposition in the family law case. The Prefiling Order-Vexatious Litigant was not attached, and no proof of service for the June 16, 2015 Order was attached. Wang requested the court to "dismiss the motion." As discussed above, the "Prefiling Order—Vexatious Litigant" was created after June 23, 2015, but was back-stamped to the date of June 16, 2015 at 3:04 p.m.  It was likely created on or after June 23, 2015 as Wang signed his Responsive Declaration on June 23, 2015. As mentioned above in ¶136, the Prefiling Order was not entered into the docket of the case of 112CV220571 and was not mentioned in the June 16, 2016 Order (At some time between July 17 and August 28, 2017, however, the Santa Clara County Court altered the docket entry to create an entry for the prefiling order, in violation of California Government Code §6200).

193.  On or about July 15, 2015, SHAO filed a Request for Order for Emergency Screening with the Family Court, regarding the child custody issue based on Wang's inability to take care of the minor child. Judge Joshua Weinstein immediately cancelled the filing, with the excuse of the vexatious litigant order in 112CV220571 requiring prefiling permission to be sought.

194.  Santa Clara County Court had assisted Wang in blocking SHAO's depositions of Wang on both child support (Notre Dame Court) and child custody issues (Sunnyvale Family Court). SHAO had filed a Request for Order to Set Aside the May 3, 2013 child support order and had made a request for discovery to be reopened, which Request for Order was continued multiple times until September 28, 2017. On that date the court took the Request for Order off calendar, despite the Department of Child Support Services having objected to taking it off calendar.   On April 27, 2016, SHAO re-filed the identical Request for Order, but Judge Joshua Weinstein cancelled the motion, without any notice, on April 29,

- 85 -

2016, again citing the excuse of the vexatious litigant order in 112CV220571 requiring prefiling permission to be sought.

195. In January 2016, during a case management conference, Judge Weinstein wanted to take off calendar SHAO's Request for Order to Reopen Discovery (filed with the Sunnyvale court for child custody discovery) and telephoned Presiding Judge Rise Pichon, asking Pichon to take the motion of calendar since there is a vexatious litigant prefiling permission order in place. Judge Pichon directed Judge Weinstein to rule on the motion, so Judge Weinstein denied Shao's Request for Order to Reopen discovery (on the child custody issue) on Feb. 1, 2018, which is at odds with Family Code §218, which mandates discovery to be automatically reopened after a judgment.

196. On April 27 and 28, 2016, SHAO filed 4 Requests for Order including to be allowed to re-file two motions that had been taken off calendar.  The re-filed motions were:

(1)Motion to set aside May 3, 2013's (child support) Order based on fraud (Wang's failure to disclose his monthly rental property income of $4,933 and perjury on his Income and Expense Declaration filed on April 25, 2013 which was the sole basis of the court's child support order of May 3, 2013,

(2) SHAO's Order to Show Cause re Contempt against WANG that was dismissed unilaterally by the court without any notice on March 7, 2016.

(3) motion to change place of trial based on C.C.P. 397(b), and

(4) a motion to vacate the Court's child custody order based on fraud by Wang in concealing his dangerous mental disorder.

197. On April 29, 2016, Judge Weinstein, on his own motion, cancelled all 4 Requests for order that were set for hearing on June 2 and June 8, 2016 and took these filings off-calendar.  This happened after SHAO has made allegations of the conspiracies of James McManis and Michael Reedy that caused her parental deprival.

198. The April 29, 2016 Order was a blurred photocopy and appeared to have been drafted outside of the courthouse.  Shao received no notice of this order before it was made and the order was not served on the parties, including SHAO, after it was issued.

199. These motions that were "cancelled" were mostly renewals of prior motions that Judge Weinstein or commissioners under his supervision had taken off calendar, including (1),

- 86 -

(3), and (4) stated in ¶195 above.  The OSC for contempt filed on April 28, 2016, noted the previous filings and the continuances that had together served to deny SHAO the right to have the matters heard:  "I have previously filed a request with the court that the citee be held in contempt 3/25/2014, amended on 4/9/2015; off calendar on 3/11/2016 by the Court in violation of due process pursuant to Moyal v Lanphear (1989) 208 Cal.App.3d 491.")  The only new motion was the one asking to change venue/courts pursuant to C.C.P. §397(b).

200. Judge Weinstein took all Shao's motions off calendar on the grounds that Shao had been determined to be a vexatious litigant for purposes of Code of Civil Procedure Section 391.7, and the clerk should thus not have filed SHAO's motions.  After SHAO objected and sent mails to Presiding Judge Pichon, on May 27, 2016, Presiding Judge Rise Jones Pichon concluded that a judge may not summarily strike or cancel a filing under C.C.P. §391.7, even if erroneously filed, but that the procedure under subdivision (c) of Section 391.7 should be followed.   Nevertheless, because Judge Weinstein's order had already been processed, Presiding Judge Pichon took no further action, but left it open to SHAO to make a request to file these motions under the vexatious litigation statute.  Yet, when SHAO actually made the application, as directed by Judge Pichon in November 2016, where SHAO re-filed her motion to vacate the May 3, 2013 Order and reopen discovery, with solid evidence of fraud based on subpoenaed documents from Chicago Title Company (these proved Wang's undisclosed ownership of a duplex and the undisclosed rental income) Judge Pichon denied the application without stating a reason.  Therefore, the prefiling order was simply misused by the court to deter SHAO's right to access to the court.

201. At some point within a month after Judge Weinstein had taken the motions off calendar, the Court records were changed to show that the motions had been calendared at 1:30 p.m. before Judge Grilli rather than before Judge Weinstein, as the docket initially showed.

202. Santa Clara County Court knowingly misused the vexatious litigant order to stall motions in the family court case and in so doing knowingly causing the absurd result given as an example by the California Supreme Court in Shalanti v. Girardi (2011) 51 Cal.App.4th 1164, 1173-74 as precisely why the statute has specific requirements. The family court had

- 87 -

reason to know that even in the civil case where the vexatious litigant order had been issued, Shao v. McManis, there was no such ban on filing motions and, as a matter of fact, there were about 10 motions filed by SHAO after June 16, 2015. The holding in Shalanti, supra, provides that such an order cannot apply to individual motions within an ongoing case, only to deter the filing of new unrelated cases. California Supreme Court stated in Pages 1173-74 that:

> "If "litigation" as defined in section 391, subdivision (a) included every motion or other procedural step taken during an action or special proceeding, and that definition were applied throughout the vexatious litigant statutes, several provisions would take on absurd, unworkable, or clearly unintended meanings. Under section 391, subdivision (b)(1) a person could be declared a vexatious litigant for losing five *motions*—all of which might have been filed in the same lawsuit—in a seven-year period. Section 391, subdivision (b)(3)'s reference to "motions, pleadings, or other papers" filed in the course of litigation would make little sense if every motion, pleading, or paper filed was itself a new litigation."

203. Regarding Petitioner's motion to set aside the May 3, 2013 Order and reopen discovery, it was twice taken off calendar by Santa Clara County Court and eventually "cancelled" by Judge Joshua Weinstein on April 29, 2016. As mentioned above in Paragraph 122, this was part of the conspiracy to harass SHAO with the illegal child support order. The DCSS did not deny the existence of contacts it had had with James McManis, Michael Reedy and McManis Faulkner. SHAO made the application for this motion to vacate May 3, 2013 in front of Presiding Judge Pichon, who denied it without a reason on November 23, 2016. Judge Pichon's requirement of SHAO's seeking her preapproval was demonstrated to be misused to block SHAO's access to the Court. Such irregularity has been taken judicial notice of in California Supreme Court's Order of September 23, 2017 in S242475, as mentioned above. There is no reason to deny SHAO the right to file this motion as it was based on undisputed evidence of fraud by Wang.

204. On June 29, 2017, Judge Patricia Lucas also denied SHAO's application to file her "motions to change venue based on C.C.P. §§397(b), and to vacate Judge Rise Pichon's Order of May 27, 2016", despite the fact that Judge Lucas has a direct conflict of interests as she was being sued by SHAO in a civil rights suit, and is closely related through the Inn of Court to the interested third party/Defendant Michael Reedy, and that Judge Lucas had

- 88 -

been made aware that the prefiling order did not apply to a motion within an existing case pursuant to <u>Shalanti v. Girardi</u> (2011) 51 Cal.App.4th 1164, 1173-74.

**O.     The 10th conspiracy was to frighten and bully SHAO by trying to have her get arrested again, and trying to get her confidential residence disclosed to her domestic violence perpetrator.**

205. After failing in his attempt to get SHAO arrested in March of 2015, Judge Weinstein attempted it again a year later.  On March 7, 2016, without notice or motion, Judge Weinstein dismissed SHAO's Order to Show Cause re Contempt and set Wang's Order to Show Cause re Contempt that had been filed on December 2, 2013 (See **¶¶114-119**) for trial on June 17, 2016, at the request of Wang's attorney David Sussman.

206. SHAO's renewed civil subpoena to CIGNA Health to reproduce its September 15, 2015 production of Wang's psychological records was successful. When he saw that if the matter proceeded, Wang would have to admit to being mentally ill, providing proof why the child custody should be switched back to SHAO, Judge Weinstein dismissed the contempt charge.  On the same date, Judge Weinstein signed off on an order prepared by David Sussman to allow Wang to take the minor overseas.

207. The address issue was: One day prior to Judge Joshua Weinstein's illegal cancellation of 4 motions filed by SHAO, on April 28, 2016, Wang submitted an *ex parte* application for a temporary emergency order allowing him to take the minor on a visit to Taiwan in July 2016.   As part of this request, Wang asked for an emergency order requiring Shao to exchange current residential addresses.   In support of the request for exchange of addresses, Wang stated:

> Linda has returned to previous behavior in refusing to give me her address. Accordingly, I request the court order both parties to provide the other with their current address and to update the other party within 72 hours in the event of any change.

208. Wang filed his Request for Order with ex parte relief of shortening time on April 28, 2016 at 1:10 p.m.  Wang's request was immediately granted by Judge Weinstein on April 28, 2016, which was sooner than the local rules allow, where notice is given after 10 a.m. of the preceding court day (See Santa Clara County Superior Court Local Family Rule #5.A(2)).  Not knowing Judge Weinstein had already signed the order on Wang's request,

- 89 -

1     the minor's counsel Elise Mitchell filed her Responsive Declaration per the local rule in

2     the morning of April 29, 2016.

3   209. Shao filed a response objecting to the requested order requiring the exchange of addresses

4     as without good cause on the afternoon of April 28, 2016.  As part of her response, Shao

5     asked the court to direct Wang to submit to a mental examination based on the forensic

6     evidence of Dr. Jeffrey Kline regarding Wang's dangerous mental disorder according to

7     CIGNA Health Insurance's production of Wang's voluntary psychological claims records

8     since December of 2009. (**Exhibit 6**)  Shao pointed to evidence of Wang's mental

9     condition that Shao believed affected the safety of their daughter and supported her

10     opposition to Wang's request to travel with the child to Taiwan and for an exchange of

    addresses.

11   210. SHAO also asked the Court to take judicial notice of Judge Johnson's prior order on June

12     21, 2005, sealing her address from the public record when her residential address was

13     disclosed to her domestic violence perpetrator Wang and his attorney in court papers,

14     leading to "numerous suspicious incidents" of stalking.  Judge Weinstein was put on

15     notice that there was "no good cause nor emergency to disclose Petitioner's residence,"

16     noting specifically a prior suicide threat by Wang, coupled with a threat to spill his blood

17     on SHAO, and a history of spousal abuse by Wang of SHAO in 2005.

18   211. SHAO also submitted an affidavit from Ms. Esther Alex-Taylor, the Professional

19     Supervisor of the supervised visitations since 2010.   Ms. Alex-Taylor testified that SHAO

20     had advised her of SHAO's safety concerns, that she had personally observed an incident

21     which concerned her, and based on such safety concerns, there was no need to disclose

22     SHAO's home address.  She also testified that Wang's declaration was untrue in that

23     Wang had not disclosed his address to her, instead she had learned of Wang's address

24     when the police had to be called when Wang refused to bring his and SHAO's Daughter to

    a supervised visitation in 2014.

25   212. Supervisor Ms. Alex-Taylor further stated that "non-disclosure of her [SHAO's] residence

26     does not cause any danger to [Daughter] as I am always present with [Daughter] when she

27     is with her Mother during the visits for the past 6 years."

28

213. On April 28, 2016, without complying with the local rule and without waiting for the minor's counsel's response, and on notice as to Dr. Kline's declaration about the dangerous mental disorders Wang was in treatment for, and aware that there had been domestic violence perpetrated by Wang on SHAO in the past, Judge Weinstein issued a Temporary Emergency Order in response to Wang's request for order.  The order provided:

> Respondent shall be allowed to take the minor child, LYDIA to   Taiwan on vacation from 7/3 through 7/16/16. Parties to exchange current residential address.

214. Judge Weinstein set a hearing on May 28, 2016 on Wang's ex parte request for an order, which got continued to July 21, 2016, after SHAO filed a verified Statement of Disqualification of Judge Joshua Weinstein.  Judge Weinstein illegally struck the legally sufficient disqualification motion in violation of California Code of Civil Procedure §170.3 such that he remained as the trial judge for Wang's contempt proceeding against SHAO.

215. On April 29, 2016, Elise M. Mitchell, SHAO's Daughter's appointed attorney, submitted a declaration per the local rule, responding to Wang's ex parte request for order.  Mitchell declared: "I have no particular position regarding residential addresses other than to say that if Mother has supervised visitation, I am not certain it matters to release the address."

216. On the same day of the dismissal of Wang's Contempt charge on June 17, 2016, Judge Weinstein signed David Sussman's proposed Order to allow Wang to take the minor to travel overseas, in complete disregard of Wang's dangerous mental disorder.

217. Judge Weinstein's sudden dismissal of Wang's fatally flawed Contempt request after the court had illegally maintained it in place for almost three years was done specifically to avoid examination of the CIGNA records so that such records could be "disappeared" like all other trial evidence before had. SHAO sent a fax to Judge Weinstein on June 17, 2016 at 2:54 p.m. requesting that the court keep the CIGNA civil subpoenaed documents for use at the July 21, 2016 hearing on the address disclosure issue.  Yet Judge Weinstein knowingly returned the CIGNA subpoenaed production back to CIGNA on June 29, 2016. CIGNA then re-mailed its production per the civil subpoena back to Judge Weinstein.

218. On July 21, 2016, Judge Weinstein opened the subpoena package of CIGNA during the hearing. but he did not read it, he simply flipped through it within seconds and then announced that the evidence was irrelevant, in disregard of Dr. Jeffrey Kline's declaration decoding Wang's five different DXR-IV mental illnesses and two other mental disorders, including the very dangerous mental disorder mentioned above in ¶109 and **Exhibit 6** attached to this Complaint.  Judge Weinstein disregarded SHAO's plea that the court not assist WANG in his ability to carry out his prior threats of great bodily injury to SHAO.  The foreseeable harm regarding exposure of her address was codified in California Government Code §6208.1.

219. SHAO applied for permission to the California Sixth District Court of Appeal to file a new action as a vexatious litigant, with the stated intention of filing a Petition for Writ of Certiorari to challenge Judge Weinstein's illegal striking of his own disqualification.  Justice Rushing denied the application without giving any reason, thus blocking SHAO's access to the Appellate court.

220. As SHAO was unreasonably blocked in her right to appeal by this illegal prefiling request for permission order, SHAO was left without any choice but to retain counsel to do her appeal from this harassing address disclosure order (case number H043851).  As will be discussed below, SHAO discovered that the entire scheme of conspiracy of James McManis and Michael Reedy included the US Supreme Court when, in Fall and Winter of 2017, eight Justices abdicated their Constitutionally imposed duty to decide SHAO's three Requests for Recusal.  On February 8, 2018, in that appeal, the Sixth District Court of Appeal issued an illegal letter automatically waiving oral argument by SHAO's counsel with a short 10 days' notice.  (People v. Pena (2004) 32 Cal.4th 389)  Then Justice Premo, as the acting Presiding Judge, stated two material misstatements of fact (he alleged 134 pages' records of appeal re: verified statement of disqualification of Joshua Weinstein to be non-existent, and Judge Mary Ann Grilli's Order of September 14, 2011 that Wang be taken mental examination to be non-existent in the records which, however, is in Page 153 of the Records) and raised 5 new issues for the first time in the Opinion, in violation of California Government Code §68081, without inviting a supplemental brief from Appellant to respond to these (California Casualty Ins. Co. v. Appellate Department

- 92 -

(Cal.App. 2d Dist. 1996) 46 Cal.App.4th 1145, 1150) . He then affirmed Judge Weinstein's Order, based on the sole factual ground that there were child visits taking place in SHAO's residence. As usual, WANG did not need to file any answering brief. Justice Premo further arbitrarily denied SHAO's application for one day's delay in filing a Petition for Rehearing, when the delay was caused by the court's e-filing service's own technical error.

221. In the Petition for Rehearing, SHAO stated that Judge Weinstein's Order had become moot, as child visits for the past one year had not taken place at SHAO's home. Visitation at SHAO's home had become impossible since SHAO had moved outside the County. Nevertheless, Justice Premo insisted on not changing his order requiring SHAO's new confidential address being exposed to Wang. SHAO then filed a petition for review with California Supreme Court (Case number S248267).

222. On the same date as Justice Premo issued his Order, March 9, 2018, all intensive stalking and hacking attacks that SHAO was enduring suddenly stopped. SHAO considers all computer hacking incidents and stalking she has endured since February 13, 2018 to be somehow connected to Justice Premo, David Sussman, Wang, and James McManis (See below Section U regarding the hacking incidents in 2018).

**P. Presiding Judge Patricia Lucas, Judge Peter Kirwan, Judge Maureen Folan and the Santa Clara County Court continued conspiring with James McManis and Michael Reedy to obstruct administration of justice to stay the jury trial of Shao v. McManis, et al. indefinitely, refused to change venue with false excuse of a stay of proceeding issued by Judge Woodhouse on March 11, 2016. When an application to lift stay to be made in front of Judge Woodhouse, the court would delegate Judge Peter Kirwan to handle with known direct conflicts of interest, and refused to allow it to be made in front of Judge Woodhouse, when lifting stay is within the jurisdiction of a case management judge.**

223. On April 28, 2017, SHAO made her 7th renewed request to change place of trial pursuant to California Code of Civil Procedure §397(b) in front of the trial judge Derrick Woodhouse who denied 6 times in the past with the excuse that there was no evidence that James McManis represented the court as an institute. SHAO presented new evidence that both parties' expert witnesses had consistently opined that the existence of an attorney-client relationship between McManis Faulkner, LLP and the Santa Clara County Superior Court creates a public view of certain court bias. In response to this undisputed evidence of direct conflict of interests when the court's own attorney appeared in front of that same

- 93 -

court as a defendant in an action for legal malpractice, Judge Derrick Woodhouse refused to decide the matter, and instead required a formal motion to be made in front of Presiding Judge Patricia Lucas.  Judge Woodhouse repeatedly stated that he was not the right court to decide this issue, even though he had previously denied SHAO's written motions, applications and requests to change place of trial pursuant to California Code of Civil Procedure §397(b) six times since December 9, 2015.

224. On April 30, 2017, Judge Woodhouse retreated from handling this case, and the case was ordered to case management in front of Judge Maureen Folan.  SHAO filed a formal C.C.P. §397(b) motion in front of Judge Folan, showing undisputed evidence of Judge Folan having a direct conflict of interest. Judge Folan denied the §397(b) motion on the grounds that Judge Woodhouse had ordered on March 11, 2016 to stay the proceeding pending appeal of H040395, and so no more motions were to be filed.  Thus even to contest the assignment of the case to a new judge, SHAO would have to apply to Judge Woodhouse for a partial lift of the stay. Then Judge Folan left the civil division, and the case was re-assigned to Judge Peter Kirwan.  Judge Kirwan has been closely working with Defendant Michael Reedy for many years through the William A. Ingram American Inn of Court, where Judge Kirwan was President of the Ingram Inn, and Michael Reedy was the President-Elect.

225. On Dec. 4, 2017, with preceding notice to Judge Woodhouse and opposing counsel, SHAO made an ex parte application in front of Judge Woodhouse to partially lift his stay order. Judge Woodhouse refused to hear the ex parte application and the application was then transferred to Judge Peter Kirwan.  SHAO told Judge Kirwan's clerk that Judge Kirwan had a direct conflict of interest as Judge Kirwan was the President of the Ingram Inn and Defendant Michael Reedy was the President Elect of the Ingram Inn.  Despite such information having been passed on to Judge Kirwan, he still ruled on the ex parte application.  He denied the application and required that a formal noticed motion to lift the stay be filed, even though the stay itself was not in writing, it had initially been made only orally by defendants' counsel Ms. Everson in court on December 10, 2015.

226. SHAO then filed a verified statement of disqualification of Judge Kirwan, which Judge Kirwan struck, in violation of California Code of Civil Procedure Section 170.3. However,

- 94 -

Judge Kirwan issued an order recusing himself based upon his "volunteer" membership at the William A. Ingram American Inn of Court where Michael Reedy was the President-Elect and he was the President, it was the very reason for disqualification that was stated in the Verified Statement of Disqualification which Judge Kirwan striked.

227. Judge Kirwan did not let the clerk reassign the case management to another Judge, and maintained himself as Case Management Conference judge for the case of Shao v. McManis, et al., even after he had filed his order of recusal. SHAO asked opposing counsel Janet Everson to stipulate to continue the Case Management Conference. Everson refused to so stipulate. SHAO thus hired contract attorney Gina Kong to appear specially on SHAO's behalf for the CMC. Without knowing all the complications of this case or about the judicial corruption involved, Ms. Kong reported that of her own volition, she had asked Judge Kirwan to change venue of the matter to a neutral forum, as it was inappropriate to have the case heard before the court which has an attorney-client relationship with defendant James McManis.

228. Judge Kirwan transferred the case to another judge within the same court to Judge James Stoelker who Judge Kirwan knew also had conflicts of interest as being another member of the same Ingram Inn. This new judge then ordered that there would not be any more Case Management Conferences, as the case had been temporarily stayed by Judge Woodhouse.

**Q. In absence of all jurisdiction, in July 2016 Judge Theodore Zayner irregularly removed the civil case files of Shao v. McManis, et al from the trial department of Judge Derrick Woodhouse, and then "lost" Volume V of those case files, as well as the original deposition transcripts of James McManis and Michael Reedy, the key documents which contained admissions from Reedy and McManis of their influence over the judges through the Inns of Court and as the court's attorney which contained admissions of an attorney/client relationship between their firm and the court, and their co- membership in the Inns of court with all the judges who had denied SHAO's pleas for return of custody over the years. This demonstrates Santa Clara County Court's stalling SHAO's child custody return is to help establish the defense of James McManis and Michael Reedy against SHAO's malpractice lawsuit.**

229. Not coincidentally, the judges who have denied Ms. Shao the return of her child ever since have been very closely related to Michael Reedy and are top executive members of his social "club," the William A. Ingram American Inn of Court. They are Judge Theodore Zayner and Judge Patricia Lucas at Santa Clara County Court and Justice

- 95 -

Patricia Bamattre-Manoukian at California Sixth District Court of Appeal.

230. On June 29, 2017 SHAO discovered that Judge Theodore Zayner, after having transferred from the family court to the civil court, had become the supervising Civil judge under the administration of Presiding Judge Patricia Lucas, and that Judge Zayner, of his own volition, or at the behest of friends, illegally took the civil case files of Shao v. McManis et al (112CV220571), including the original deposition transcripts of James McManis and Michael Reedy, from the jury trial Judge Derrick Woodhouse's chamber into his chamber for about a year. On July 11, 2017, SHAO was informed that Judge Zayner had "lost" Court file Volume 5, as well as the two original deposition transcripts of James McManis.

231. Such taking of the SHAO v. McManis Faulkner case file volumes by Judge Zayner from the records unit to keep in his chambers and purge was illegal as there was no entry of "Statement on the destination, if removing this file from records," and completely in absence of all subject matter jurisdiction of Judge Zayner. The "lost" Volume 5 and deposition originals were cleansed from the file because they contain Reedy and McManis' admissions that they wield enormous influence over the judges on the court both as the court's attorney and as heads of the local Inns of Court as well as representatives of a firm which sponsors judicial seats.

232. The jury trial of Shao v. McManis Faulkner et al has been suspended indefinitely since December 9, 2015. The matter was not assigned to Judge Zayner in the Civil Court. At the time Judge Zayner took the files, the case was pending Case Management in front of trial judge Judge Woodhouse to be on for jury trial any time pending "resolution" of the custody appeal.

233. Judge Zayner's clerk is the same clerk who served under Judge Davila when Judge Davila originally orchestrated the removal of SHAO's child from her and signed the ex parte orders 8/4/10 and 8/5/10 which were later overturned but are still in effect now, eight years later.

234. Judge Zayner's clerk attested to SHAO that she had delivered all case files available back to the Appellate Unit. See Exhibit 8 for true copies of emails with the court's Record Unit's Supervisor and Judge Zayner regarding the files and the Supervisor's conformation note that "Vol. 5 is missing." Judge Zayner's sua sponte interference in the civil case to

- 96 -

purge the records shows his allegiance to the McManis firm and to maintaining its

defense to Shao's suit. His misdeeds on their behalf corroborate that as the judge on her

family case for years, Judge Zayner's stalling and refusing to return SHAO's child to her

custody was to help Michael Reedy and James McManis maintain their only defense to

malpractice in Shao v. McManis, et al. (112CV220571).

**R.    The same scheme of irregularities of alterations of the docket, the court generating false reports/notices of non-compliance and deterring SHAO's filings also took place in the US Supreme Court, indicating a common pattern of mischief by McManis Faulkner influencing the Supreme Court to its advantage.**

235. From September 2017, the same scheme of illegal notice, alteration of docket and

deterrence done by Presiding Justice Conrad Rushing, Santa Clara County Court as

apparently aided and abetted by James McManis, Michael Reedy and McManis Faulkner,

LLP, started to happen in the US Supreme Court.

236. Not knowing of the significant financial interests eight of the US Supreme Court Justices

have in the American Inns of Court, SHAO filed a Petition for Writ of Certiorari with the

US Supreme Court in July 2017 (Case number 17-82), which is derived from the appeal

case pending with the California Sixth Court of Appeal in H042531 of Justice Rushing's

summary denial of SHAO's "Motion to Reconsider November 7, 2016's Order Denying

Without Prejudice Appellant's "Motion to Reverse the Orders of June 16, 2016 and

Remand With An Instruction to the Lower Court to Change of Place of Trial Court

Pursuant to Code of Civil Procedure Section 397(b); Motion for Factual Determination

Pursuant to Code of Civil Procedure Section 909" and Alternatively, Motion to Change

Place of Court of Appeal, Motion to Order Court Reporter to File Hearing Transcripts and

to Order the Trial Court to Prepare Transcript or Change Designation of Records to be by

Appendix."

237. SHAO's motion to reconsider was filed on November 16, 2016 and Justice Rushing

denied the motion on November 17, 2016 where his Order reads: "Appellant's motion

filed November 16, 2016 is denied."  As usual, without waiting for Wang's response,

Presiding Justice Rushing promptly denied the motion.

238. The November 16, 2016 motion was to reconsider Justice Rushing's Order of November

- 97 -

7, 2016 where he did not state the disqualification issue but only stated "Permission to file a reply by appellant is granted. Appellant's motions are denied without prejudice to raising all appropriate claims and request for relief in her briefs. Respondent's request for judicial notice is granted." The motion involved was "Appellant's Motion to reverse the Order of June 16, 2016 and remand with an instruction to the lower court to change of [sic] place of trial court pursuant to Code of Civil Procedure Section 397(b); Motion for factual determination pursuant to code of civil procedure section 909".

The Questions Presented stated in the Petition for Writ of Certiorari No. 17-82 were:

(1) Does due process require disqualification of the trial court where an attorney representing the trial court in other matters is a party in the case being heard by the trial court?

(2) Should judges who are members of William A. Ingram **American Inns of Court be required as a matter of due process to disclose their social relationship with lawyers** who are members of the Inns of Court and who are appearing before the judges?

(3) Where the Appellate Court has potential conflicts of interests because of attorney-client relationships, long term **regular social relationship** and colleague relationships with a party, must the Appellate Court disclose potential conflicts of interest and apply neutral standards to their resolution?

(4) Does due process require judges to disclose whether they have received legal representation from attorneys appearing on contested cases before the judges?

(5) Can a court stay a jury trial indefinitely pending appeal?

(6) Is Petitioner's fundamental right to access the courts violated by the Court's requiring prefiling approval for new motions in existing case with a vexatious litigant prefiling order?

(7) Does a Presiding Judge have the power to alter dockets?

(8) Does a Presiding Judge have the power to prevent a party from filing with the Clerk's Office by instructing the Clerk's Office not

- 98 -

1        to accept for filing?

2    **(9)**    Is there a requirement for an Appellate Judge to deny recusal with

3        stated reasons? *[emphasis added regarding "American Inns of*

4        *Court".]*

5

6    Questions No. 2 and 3 are related to the American Inns of Court.

7    In the Petition, the Section III caption for the Statement of the Case was:

8        "The Conflicts of Interest Arising from Respondent James McManis's Legal
        Representation of Judges in the Superior and Appellate Courts, **Membership on**

9        **the Executive Board of the Ingram Inn of Court** and Appointment as Special

10        Master." *[emphasis added regarding "American Inns of Court".]*

11    Petition 17-82's "Reasons for Granting Certiorari" included:

12        I. The Conflicts Of Interest Have Impaired Petitioner's Access To Court And To
        Impartial Tribunals

13        II. Judges Who Are Members Of The William A. Ingram **American Inn Of Court**

14        Should Be Required As A Matter Of Due Process To **Disclose Their Social**
        **Relationship With Lawyers Who Are Members Of The Inns Of Court** And Who

15        Are Appearing Before These Judges.

16        III. Disqualification Is Required Because McManis Acts As A Special Master.

17        IV.    The Right To Appeal And The Right To Have Access To The Courts Are
        Fundamental Rights Which Must Be Protected.

18        V.    The State Courts Violated Due Process By Failing To Maintain The Integrity Of
        The Courts' Records And By Altering Dockets.

19        VI.    A Presiding Judge Has No Right To Prevent A Party From Filing

20        VII. Right To Jury Trial V. Court's Power To Extend The Jury Trial

21        VIII. The Courts Should Be Required To State Reasons For Denial Of Recusal

22        *[emphasis added regarding "American Inns of Court".]*

23    239. On October 2, 2017, the Supreme Court denied certiorari.  **No** justices disclosed

24        their conflicts of interest with the American Inns of Court.  At that time SHAO

25        was only aware of the fact that both Justice Anthony Kennedy and Ruth Bader

26        Ginsburg have their names associated with two chapters of the American Inn of

27        Court.

28    240. The second Petition is based on 9th Circuit Court of Appeal's short 2-page

        Memorandum affirming Judge Lucy Koh's dismissal order of Shao v. McManis

- 99 -

case (14-17063). SHAO filed a Petition for Writ of Certiorari on August 14, 2017

with Petition No. 17-256. Its "Questions Presented" enlisted the following issues:

(1). Should **judges who are members** of William A. Ingram **American Inns of Court** and San Francisco Intellectual Property American Inn of Court be **required as a matter of due process to disclose their social relationship with lawyers who are members of the Inns of Court** and who are appearing before the judges?

(2). Where the Appellate Court has potential conflicts of interests because of regular social relationship with a party by way of **American Inn of Court**, **must the Appellate Court disclose potential conflicts of interest** and apply neutral standards to their resolution?

(3). Are there conflicts of interest for the court to rule on a case where its appointed Special Master appears as a party?

(4). Should 28 U.S.C. 1658 be the statute of limitation for 42 USC 1981 claim asserting discrimination in termination of a contract?

(5). Does Rule 58 of F.R.C.P. apply to an order regarding motion to disqualify the judge?

(6). Is the Court of Appeals required to state reasons in deciding an appeal?

(7). Can a judge decide disqualification at the same time of deciding a motion to dismiss? *[emphasis added regarding "American Inns of Court".]*

Petition 17-256's "Reasons for Granting Certiorari" include:

**(1)   THE CONFLICTS OF INTEREST** HAVE IMPAIRED PETITIONER'S ACCESS TO BOTH TRIAL AND APPELLATE COURTS AND TO IMPARTIAL TRIBUNALS.

A.JUDGE LUCY KOH DID NOT DISCLOSE HER CONFLICTS OF INTERESTS AND DID NOT GIVE PETITIONER A DAY IN THE COURT.

B.**THE NINTH CIRCUIT SUPPRESSED EVIDENCE OF JUDGE KOH'S CONFLICTS OF INTEREST AND DID NOT DISCLOSE ITS CONFLICTS OF INTEREST**

C. RESPONDENTS' SPECIAL RELATIONSHIP WITH THE COURTS HAS PREJUDICED PETITIONER'S FUNDAMENTAL RIGHTS TO APPEAL AND RIGHTS TO HAVE ACCESS TO THE COURTS THAT MUST BE PROTECTED BY THIS COURT.

D.Vacatur is the remedy in conformity with Rule 60 of F.R.C.P..

(2). **Judges Who Are Members Of AN American Inn Of Court Should Be Required As A Matter Of Due Process To Disclose Their Social Relationship With Lawyers Who Are Members Of The Inns Of Court** And Who Are Appearing Before These Judges

(3).Disqualification Is Required Because McManis Acts As A Special Master.

- 100 -

(4).JUDGE LUCY KOH'S DISMISSAL ORDER SHOULD BE VACATED AS THE MOTION TO DISQAULIFY WAS NOT RULED IN THE FIRST INSTANCE, WHILE SHE DID NOT DISCLOSE THE SOCIAL RELATIONSHIP AND WORKING RELATIONSHIP WITH RESPONDENTS

(5). 11/7/2016'S MEMORANDUM DID NOT CONTAIN ANY ANALYSIS OF LAW

(6). THE STATUTE OF LIMITATION FOR 42 USC §1981 SHOULD BE 4 YEARS PURSUANT TO 28 USC §1658 INSTEAD OF BORROWING THE STATE'S PERSONAL INJURY STATUTE OF LIMITATION AS DISCRIMINATION IN TERMINATION OF CONTRACT IS INCLUDED IN THE 1991 CIVIL RIGHTS ACT

(7).The panel's decision that "We do not consider arguments or facts that were not presented to the district court" conflicts with the Ninth Circuit's Own Decision

(8).SEPARATE DOCUMENT RULE OF RULE 58 SHOULD APPLY TO AN ORDER DENYING DISQUALIFICATION *[emphasis added regarding "American Inns of Court".]*

241. The third Petition was that filed on October 17, 2017, where the Respondent is Tsan-Kuen Wang (Case No. 17-613). This matter arose out of the contentious child custody appeal of H040395.    Justice Rushing denied reconsideration of the issue of reversing Judge Lucas's November 4, 2013 Order and for a change of court venue to a neutral forum.

17-613's Questions Presented include:

(1) Does due process require disqualification of the Court of Appeal where the interested parties have **extrajudicial relationship** with the Justices of the Court of Appeal who are mostly from the trial court where the interested parties are also attorneys and quasi-employee(s) for the trial court?  How to handle the appeal when there is direct conflicts of interest with the Sixth Appellate District?

(2)  Should judges who are members of the American Inns of Court be required as a matter of due process to disclose their social relationship with lawyers who are members of the Inns of Court and who are appearing before the judges?

(3)  Where the Appellate Court has potential conflicts of interests because of attorney-client relationships, long term **regular social relationship** and colleague relationships with a party, must the Appellate Court disclose

- 101 -

potential conflicts of interest and apply neutral standards to their resolution?

(4) Does due process require judges to disclose whether they have received legal representation from attorneys appearing on contested cases before the judges?

(5) Has the California Sixth Appellate Court violated Petitioner's fundamental right to appeal in tolerating the trial court's deterrence of appeal for more than three years?

(6) Is Petitioner's fundamental right to access the courts violated by the Court's requiring prefiling approval for new motions in existing case with a vexatious litigant prefiling orde

(7) Does a Presiding Judge have the power to alter dockets?

(8) Does a Presiding Judge have the power to prevent a party from filing with the Clerk's Office by instructing the Clerk's Office not to accept for filing?

(9)  Is there a requirement for an Appellate Judge to deny recusal with stated reasons?

(10) Does Prefiling Vexatious Litigant Order apply to stall motion filings in the existing cases?

(11) Should the trial court decision be reversed when the judge failed to disclose conflicts of interest? [emphasis added regarding "American Inns of Court".]

242. 17-613's Grounds for Certiorari include:

A.    The **Conflicts Of Interest** Have Impaired Petitioner's Fundamental Right To Access To Court And To Impartial Tribunals That Require Certiorari To Change Courts

B.    Judges Who Are Members Of The American Inns Of Court Should Be Required As A Matter Of Due Process To Disclose Their Social Relationship With Lawyers Who Are Members Of The Inns Of Court And Who Are Appearing Before These Judges...

C.    Disqualification Is Required Because McManis Acts As A Special Master.

D.  The Right To Appeal And The Right To Have Access To The Courts Are Fundamental Rights Which Must Be Protected.

E.  The State Courts Violated Due Process By Failing To Maintain The Integrity Of The Courts' Records And By Altering Dockets.

F.  A Presiding Judge Has No Right To Prevent A Party From Filing

G.  The Prefiling Vexatious Litigant Order Should Be Void For Lack Of Statement Of

- 102 -

Decision.

    H.    The Prefiling Vexatious Litigant Order Cannot Be Applied To Existing Case

     I.  The Courts Should Be Required To State Reasons For Denial Of Recusal
*[emphasis added regarding "American Inns of Court".]*

243.  On September 8, 2017 Supreme Court's Clerk's Office received motions of Amicus Curiae of Mothers of Lost Children for 17-82, and 17-256 respectively (mail receipt date was Sept. 6, 2017).

244.  For years, all amicus curiae matters have been exclusively handled by two designated lady clerks at the US Supreme Court. This time, the Clerk's Office of the US Supreme Court withheld the motions for 6 days, then on September 14, 2017, Mr. Jordan Bickell, a supervising clerk at the US Supreme Court who had never before handled pre-certiorari proceedings, stepped into the authority of another supervising Clerk, Jeff Atkins, and brought in a clerk named Donald Baker to return both amicus curiae motions for 17-82 and 17-256 to the amicus's attorney, Attorney Christopher W. Katzenbach, in California. At that time both were acting beyond the scope of their job duties. Such purposeful delay caused the re-submission, despite using super speed, to have only 2 days left prior to the conference date of September 25, 2017 for 17-82. With such little time left, the real supervisor in charge, Jeff Atkins, did not agree to postpone the conference date for 17-82.

245.  On September 17, 2017, Mr. Katzenbach received the returned amicus curiae motions and immediately processed their re-printing within a day. Mr. Baker tried to find as many faults with them as possible. Mr. Baker returned the motions pursuant to the instruction of Mr. Bickell, with the reasons that the printed cover did not state the wordings of "for leave" and "out of time" and there was no table, even though the small booklet had only 10 pages in all.

246.  On September 20, 2017, The US Supreme Court received the re-printed motions. Mr. Baker did not answer the calls of Mr. Katzenbach until Mr. Katzenbach concealed his phone number while calling Mr. Baker. Mr. Baker said he would call Mr. Katzenbach back, but he never did.

247.  SHAO telephoned Mr. Baker. Mr. Baker said Mr. Bickell and he were reviewing the

- 103 -

amicus curiae motions.  SHAO asked who was Mr. Bickell, and Mr. Baker responded---"a bailiff."  Later, Mr. Baker said that he would see to it that the motions be filed.  Yet, Mr. Jordan Bickell disallowed filing of the motion in 17-82, and only allowed filing in 17-256.  The Clerk's office failed to docket receipt of the amicus curiae motion of Mothers of Lost Children in 17-82.  They did not issue any notice to Mr. Katzenbach as to how they handled the re-submitted motion in 17-82, nor did they return the motions (41 printed copies) for 17-82 to Mr. Katzenbach either.

248.  The Petition in 17-82 for a Writ of Certiorari was denied on October 2, 2017, including the voting by Justice Kennedy and Justice Ginsburg, who each have American Inns of Court dedicated in their names and such facts were stated in the Petition. Such facts were referenced in the Petition.  They did not recuse themselves pursuant to Canon 3 of The Code of Conducts for United States Judges.

249.  On October 23, 2017, SHAO called Mr. Baker regarding the status of filing of the Amicus Curiae motion for 17-82 as the docket did now show and asked why there was no filing of the Amicus Curiae motion in 17-82, and why the un-filed motion copies (41 copies) had not been returned.  Mr. Baker had filed the identical motion in 17-256, and the motion was granted on October 30, 2017. Mr. Baker could not answer the question, and transferred SHAO's call to Mr. Bickell – by way of the phone number of Mr. Jeff Atkins (202-479-3263), when apparently Mr. Brickell was in the office of Mr. Atkins. Mr. Bickell said that there were too many deficiencies of the motion such that he did not authorize filing of the reprinted motion, but he was unable to identify what deficiencies those were.  The identical reprinted motion that he alleged to be defective had been filed and granted by the court on October 30, 2017 in 17-256.

250.  On October 25, 2017, Petitioner filed a Request for Rehearing in 17-82, citing that in the process of the "whirlwind" change of personnel at the Clerk's office, Mr. Donald Baker officially substituted in for one of the prior amicus curiae clerks at some time after September 20, 2017, and that since that time the Amicus Curiae motions had been being interfered with unreasonably by the new clerks.

251.  On October 24, 2017 late afternoon, Deputy Clerk Michael Duggan docketed and filed Petition 17-613, a case arising from the issues of reversal Judge Lucas's custody order of

- 104 -

1    2013 and motion to change venue for lack of impartial court.

252. First thing in the morning on October 25, 2017, Jeff Atkins approached Deputy Clerk Michael Duggan and directed him to change the "Decision Date" in the newly created docket sheet of 17-613 from "April 28, 2017" to "June 8, 2017". Mr. Atkins also instructed Mr. Duggan to return the filings of the Petition for Writ of Certiorari to Plaintiff because of apparent typos on the captions of the orders of California courts shown on App.13 and App.14. Mr. Atkins also told the Deputy Clerk that the Respondent should be "McManis Faulkner, LLP" only and "not to include the individual names of James McManis and Michael Reedy." There was apparently a disagreement such that Mr. Duggans relayed the above to SHAO in an excited utterance as the meeting happened to be just finishing when SHAO telephoned. Mr. Duggans directed SHAO to argue with Mr. Atkins regarding the fact that April 28, 2017 instead of June 8, 2017 should be the correct decision date. Mr. Duggans agreed the typos on App.13 and 14 could be fixed by way of filing a Supplemental Appendix. The typos of the orders are that the case caption of Shao v. McManis Faulkner, LLP, James McManis, Michael Reedy, Catherine Bechtel was used as a template in typing the orders to appeal from, when in fact, they should bear the caption of the divorce case.

253. Mr. Atkins's spontaneously directing the docketing deputy clerk to alter the docket on the ensuing morning following the docketing in violation of 18 US §1512(c), suggests that some interested party was pressuring Mr. Atkins to alter the docket and that person must have been closely watching Plaintiff's filings with the US Supreme Court and was familiar with the State case's proceedings. Based on the special reference to the names of James McManis and Michael Reedy, it appeared that James McManis and Michael Reedy had contacted Mr. Atkins regarding 17-613. SHAO filed a Supplemental Appendix on October 26, 2018 and stated there that the "Decision Date" is not June 8, 2017 but should be corrected back to April 28, 2017.

254. On October 30, 2017, the Court granted the amicus curiae motion but denied the Petition for Writ of Certiorari in 17-256, including the voting by Justice Kennedy and Justice Ginsburg, who each have American Inns of Court dedicated in their names and such facts were stated in the Petition. They did not recuse themselves pursuant to Canon 3.

255. On November 25, 2017, SHAO obtained evidence of conflicts of interest that eight Justices of the US Supreme Court have regarding their financial interests in the American Inns of Court via the Inn's Temple Bar Scholarship.

256. Jeff Atkins was immediately advised of the new discovery of the conflicts of interest based on the financial interest of the eight justices and 38 clerks, and SHAO requested a continuance of the conference date of 17-82's rehearing to allow her to file a Request for Recusal. Jeff Atkins did not respond.

257. On November 27, 2017, the US Supreme Court denied the Petition of Rehearing in 17-82. Again, no Justices recused themselves.

258. One month following the filing of the Supplemental Appendix in 17-613, and on or about November 27, 2017, the docket of 17-613 regarding "decision date" was altered back to "April 28, 2017." This indicates that someone who had a strong interest in the Petition read the Supplemental Appendix of 17-613 and informed Jeff Atkins to correct the inappropriate alteration of the docket that took place on October 25, 2017.

259. On December 8, 2017, Mr. Jeff Atkins filed the Request for Recusal in 17-256, which was already in the rehearing stage. Yet, he posted **only 43 pages** on the court's website, leaving out about 167 pages of Appendix unfiled and not posted on the Court's website, in violation of 18 USC §1512(c). Despite SHAO's requests to fix this error, Mr. Atkins persisted on not posting any more pages of the Appendix, conveniently leaving out the pages which contained the evidence in support of the Request for Recusal, even though he admitted that there was neither regulation nor rule that authorized him to do a partial posting on the Court's website. Mr. Atkins alleged that there were too many pages, yet SHAO sent him the complete set with the size reduced to be only 10,024mb.

260. The recusal request discussed the financial interests of the eight justices with the American Inns of Court in that they sponsored 38 clerks (who worked for them and had the job function of making recommended order) to receive a substantial amount of gifts from the American Inns of Court under the guise of the Inn's "Temple Bar Scholarship" to provide the clerks with unknown dollar amount of stipend, plus 4 weeks' air tickets and guided tour in England, which is estimated to be valued at least $7,000 per person, with a total amount of $266,000. The fact that Mr. Atkins refused to post the evidence

shows that the court is aware of the impropriety of its justice's and clerks' improper acceptance of financial gifts from the Inns of Court.

261.  The Temple Bar Scholarship is classified as a gift, the type which judges cannot accept according to the Guide to Judiciary Policy §620.25.  The Supreme Court clerks' and Justices' solicitation of such gifts violate §620.30.  These gifts were given to the clerks solely because of their adjudicatory position at the US Supreme Court.  Such gifts should not have been received (§1020.30(b)(1)).  Scholarships such as the Temple Bar are not exempted from the definition of gifts pursuant to §620.35(b)(7).  Application for them and acceptance of them violated §620.45, §620.50 and §1020.30 of the Guide to Judiciary Policy.  The gifts were directly or indirectly provided by lawyer members of the American Inns of Court, including James McManis, who had active Supreme Court cases and was appearing on such cases in front of the US Supreme Court during the time such gifts were being made.

262.  The American Inns of Court lost their status as professional bars when the members' directory became confidential in 2009.  Its function violates Rule 5-300 of the California Rules of Professional Conduct in allowing the judge members to accept free gifts directly or indirectly from the attorney members and allowing ex parte contacts between judges and attorneys.  As publicized by the American Inns of Court through its video called "American Inns of Court Members Services," Attorney Emmanuel Sanchez stated in the Video, which was posted on YouTube:

> "This is the only organization that I know that the lawyers and judges belong to the trial bar have a chance to meet outside of the courtroom in a social setting and really able to establish the rapport."

This evidence was taken as a screenshot which was marked as Bates Stamped page A.012 to the Appendix.  Attorney Manuel Sanchez's statement about The American Inns of Court's function is in contravention of Rule 5-300 of the California Rules of Professional Conduct and Canon 4(c) of the Code of Judicial Conduct for US Judges.

263.  On November 17, 2017, 40 sets of the Amicus Curiae motion were mailed overnight to the US Supreme Court for case 17-613.  Deputy Clerk Mr. Baker delayed more than two weeks in filing this amicus curiae motion, excluding holidays, until December 9, 2017,

after he received several phone calls from SHAO inquiring as to the filing status of the Amicus Curiae motion. Mr. Baker did not docket its filing date correctly as November 17, 2017, but docketed it as filed on December 9, 2017.

264. On December 15, 2017, SHAO noticed that there was a docket entry of dispatching the Amicus Curiae motion but not a docket entry of dispatching the Request for Recusal. Thus, she called and left voice mail messages with the clerk three times after December 15, 2017. SHAO also sent an email to Mr. Atkins on December 20, 2017, inquiring if he had dispatched the complete set of Requests for Recusal to all Justices. SHAO asked that Mr. Atkins send a "complete" set since Mr. Atkins had previously refused to e-post the entire Request for Recusal. Mr. Atkins did not respond.

265. On December 18, 2017 at about noon, apparently under the direction of Mr. Bickell, Mr. Baker "de-filed" the amicus curiae motion and altered the docket of December 9, 2017 to be "not accepted for filing." Mr. Baker cancelled the filing of the Amicus Curiae Motion of Mothers of Lost Children with a false excuse that the format did not comply with the Rule since the motion and Brief must be in two files. This is in fact not a real requirement and is not supported by any rule. SHAO sent an email to remind Mr. Baker a case law that the clerk was not covered by quasi-judicial immunity. Then, Mr. Baker responded and put the motion back on the court's docket on December 20, 2017, with a corrected filing date of November 17, 2017. The re-posted Amicus Curiae Motion of Mothers of Lost Children was actually identical to the motion granted in 17-256, except for the signature date. Mr. Baker's report of non-compliance in violation of 18 USC §1512(c), which appeared to have been directed by Jordan Bickell, is false. The exact same motion had been accepted and granted in 17-256 on October 30, 2017.

266. On December 19, 2017, Jeff Atkins filed the Request for Recusal in 17-613, but only posted 76 pages of it on the court's website, leaving out 189 pages of Appendix that contained the evidence in support of the Justices' recusals, despite protests by SHAO.

267. On January 8, 2018, the Court denied the Petition for Writ of Certiorari in 17-613

- 108 -

and the Petition for Rehearing in 17-256. The US Supreme Court has always let the disqualified justices decide their own recusal, however none of the eight Justices whom SHAO has asked to recuse themselves made a ruling in either Petition on January 8, 2018.

268. SHAO telephoned Mr. Atkins 5 times afterwards, asking if the two Requests for Recusal had been dispatched and what were his requirements for the cover for a 60(b) motion to vacate the order denying rehearing in 17-256 on January 8, 2018 as there was a violation of due process for the eight Justices not to decide at all on the Request for their Recusal. Mr. Atkins did not respond. Thus, SHAO sent an email on January 17, 2018, to Mr. Atkins. Then, Mr. Atkins answered SHAO's phone call, telling SHAO that he had dispatched the Requests for Recusal to all Justices upon receipt from SHAO for the two Requests for Recusal, and the Court had no more jurisdiction over 17-256 after the rehearing stage. If SHAO should file a 60(b) motion, it would be returned and rejected from filing.

269. If that is true, then there is no law to alleviate this unjust situation and these people could make illegal orders to be affirmed as final orders as long as they can deny rehearing of a Petition. This is a travesty of justice.

270. On January 23, 2018, SHAO filed a Petition for Rehearing in 17-613 and a Renewed request for recusal. It was set for conference on February 23, 2018.

271. Just days later, on January 30, 2018, SHAO discovered that material evidence supporting her complaints of conflicts of interest had been purged from the internet by the American Inns of Court and McManis Faulkner, LLP. It was the video of "American Inns of Court Members Services" which contain Attorney Emmanuel Sanchez's statement as shown above and Bates stamped as A.012, and A.022, a news release posted on McManis Faulkner LLP's website dated "08/13/2012" regarding the relationship between James McManis and Chief Justice John G. Roberts, and James McManis's status as a leading attorney at the American Inns of court.

272. In her Petition for Rehearing and Renewed Request for Recusal for 17-613 that were filed with the Court on February 2, 2018, SHAO criticized this purging of

evidence by the American Inns of Court and James McManis. SHAO pointed out that such purging took place in reaction to her publicizing the existence of such inappropriate relationships in her pleadings to the court, indicating that the American Inns of Court through James McManis had been manipulating Mr. Atkins to not e-post or e-file the complete Requests for Recusal so that they could purge the available evidence on line. No court had ever done this in the 225 year history of the US courts.

273. While both Petitions for Rehearing and Renewed Requests for Recusal had been filed at the same time, Mr. Atkins persisted on postponing the filing date of the Renewed Request for Recusal to be February 6, instead of February 2, 2018, in disregard of SHAO's inquiries about why there were different dates. Again, Jeff Atkins omitted all evidence contained in the Appendix from being posted on the Court's website and cut one document short to post only 94 pages and knowingly left out its attached Appendix, which was used to support the Renewed Request for Recusal. Atkins left out a total of 218 pages of evidence, including the Pages A.012 and A.022 that were found on January 30, 2018 to have been purged by McManis Faulkner and the Inns of Court from the internet.

274. On the morning of February 11, 2018, the American Inns of Court put back their video on YouTube. Apparently they did not like looking guilty of having purged it in reaction to Shao's exposure of it to the court and the public. McManis Faulkner LLP did not put back the news release of August 13, 2012 that it had purged in reaction to SHAO's publicizing it.

**S.     EIGHT US SUPREME COURT JUSTICES OBSTRUCTED JUSTICE BY CONSPIRING TO ABDICATE THEIR CONSTITUTIONALLY IMPOSED JUDICIAL DUTY REPEATEDLY IN REFUSING TO DECIDE THREE REQUESTS FOR RECUSAL ON JANUARY 8, 2018, AND FEBRUARY 23, 2018 IN VIOLATION OF 18 USCS 371, 42 USCS 1985 AND 18 USCS 1512(C)(2)**

275. Even though the US Supreme Court has a traditional practice to leave recusal decisions to the individual justices, the US Supreme court appears always to have retained jurisdiction over recusal motions and maintained the authority to guarantee a fully qualified panel of justices. See <u>State v. Allen</u> (2010) 322 Wis. 372, 395. There is always a docket entry of the decision of the motion to recuse the

- 110 -

Justice, with or without a memorandum of statement of decision.  See, i.d., at P.394. For the first time in 225 year history of the US Supreme Court, however, the eight Justices whom SHAO asked to recuse themselves failed to decide on the three Requests for Recusal, two were set for the conference of January 8, 2018 and one renewed Request for Recusal was set for the conference of February 23, 2018.

276. As shown in Paragraph 210 above, Jeff Atkins informed SHAO that he did send each of the Request for Recusal to all Justices.  Yet, all eight conspired in one accord not to perform their Constitutionally imposed duty to decide on the three Requests for Recusal as guaranteed by the First Amendment of the Constitution.

**T.     Judge J. Craig Wallace at the Ninth Circuit of U.S. Court of Appeal knowingly violated Rule 60(b) of FRCP where he willfully decided appeal within three days of submission when he knew that he has had direct conflicts of interest and thus he knowingly omitted almost all issues and wrote a 34 lines' Memorandum to suppress all discussion of conspiracies of James McManis and Michael Reedy with the state court judges/justices when 28 USC §455(b) motion to disqualify Ninth Circuit was pending, undecided where his name was referenced three time in that motion.**

277. During the rehearing stage of SHAO's first Request for Recusal filed with the US Supreme Court (Petition Number 17-256) on December 5, 2017, SHAO wrote from Pages 24 through 26 the following:

> G. THE AMERICAN INNS OF COURT ARE UNLIKE TRADITIONAL BAR ASSOCIATIONS BUT ARE SOCIAL CLUBS THAT PROVIDE FOR SECRET EX PARTE COMMUNICATIONS BETWEEN FINANCIALLY STRONG ATTORNEYS AND JUDGES
>
> **1.   As A Social Club, Common Membership Of Judges And Attorneys Representing Parties Create The Appearance Of Bias.**
>
> The American Inns of Court have changed their character as bar associations as they made the membership directory confidential from disclosure for all Inns of Court after sometime in 2008. Their practice of Temple Bar Scholarship and pupilage groups also violated Rule 5-300 of California Rules of Professional Conduct (allowing ex parte contacts and gifts).  The Petition for Writ of Certiorari has been reviewed based on the opinion of the clerks of the Justices, except Justice Gorsuch.  Therefore, contacting the clerks and making gifts to the clerks violate Rule 5-300 as they have the power of making recommendations to the Justices.
>
> The American Inns of Court lost all tributes as a bar association further because of the secret membership.  The last publication of a directory for all

- 111 -

chapters of the Inns is an archive of the membership of San Francisco Bay Intellectual Property American Inn of Court. A.072-74.

The Handbook for the William A. Ingram American Inn of Court states:

"The schedule for the monthly meetings (not the dinner meetings) is to gather at 5:30 for **socializing** and hors d'oeuvres. After administrative announcements, the formal program by a Pupillage Group commences at 6:00 p.m. and ends at 7:00 p.m. After the program ends, there is further **socializing**." [A.146, emphasis added]

Its current meeting schedule states clearly the social function of its Inn meetings:

*"Inn meeting, except as noted below, are scheduled on the second Wednesday of each month, with socializing at 5:30 p.m., and the program beginning at 6:00 p.m." (A.050)*

These confidential social functions are the characteristic of **a social private club**. While the American Inns of Court might once have been equivalent or similar to a bar association, they are now more like an exclusive private club. Membership or association in such a private social club with regular private contacts with the judges/justices creates an appearance of bias where attorneys who are members of the Inns appear before judges who are also members or associated with the Inns.

2.    **The Ninth Circuit And Eight Justices of This Court Both Sponsored The Private Clubs Without Reservation**

Ninth Circuit's published in its News Release of September 19, 2016 that:

"Justice Wallace will receive the prestigious A. Sherman Christensen Award... The award will be presented at the 2016 American Inns of Court Celebration of Excellence to be held at the U.S. Supreme Court on November 5, 2016. .....

Justice Wallace was influential in developing the idea of the American Inns of Court and advocated enthusiastically for its establishment. He accompanied Chief Justice Warren Burger on the 1977 Anglo-American Legal Exchange and served as keynote speaker at the organizational dinner of the first Inn of Court in Provo, Utah. Judge Wallace served as a regular adviser to Judge A. Sherman Christensen, for whom the award is name. Judge Wallace urged attendees to form the Inn to help address trial inadequacy by attorneys. He wrote an article on the topic that was published March 1982 in the ABA Journal.....

The American Inns of Court, a national organization with 360 chapters and more than 130,000 active and alumni members.... An inn is an amalgam of judges, lawyers.... More information is available at http.//home.innsofcourt.org." (A.058)

- 112 -

The American Inns of Court used this Court to hold meetings up to present. (A.059-60)

278. About the same time of this filing, the American Inns of Court published a video on it's website homepage to memorialize its 35th anniversary, with a timeline of the history of the American Inns of Court. Judge J. Craig Wallace was listed on the first page of this timeline as having been the founding member in 1977. The page shows: **"Welcome to the American Inns of Court!"** then in smaller print it continues: "Founded and dedicated to promoting the highest levels of professionalism in the practice of law, the American Inns of Court recently celebrated its 35th anniversary. Watch below a timeline of important milestones of the Inn movement."

Then, Judge Wallace's picture was shown on the right side of the page, with the left side containing the following wording:

> "American Inns of Court 35th Anniversary Timeline
> "Inns of Court-A Proposal"
> At the request of Chief Justice Burger, Judge J. Clifford Wallace researches and develops a rough, broad and very general proposal to adopt the English Inn concept to American practice."

279. SHAO included such information regarding Judge Wallace being a founding member of the American Inns of Court in SHAO's "Appellant's Motion to Change Place of Appeal to Another Circuit Where it Does Not Promote the American Inns of Court and Has No Connection with McManis Faulkner, LLP Pursuant to 28 USC §455" that she filed on Nov. 7, 2017, with the Ninth Circuit in Case Number 15-16817. Judge J. Clifford Wallace's name was referenced 3 times in that motion.

280. The link to the YouTube video described above celebrating the 35th anniversary of the Inns of Court was removed from the home page of the American Inns of Court website within a week or two after SHAO's Request for Recusal was filed in Case number 17-256, on or about December 19, 2017 as discussed above in ¶292.

281. Prior to November 7, 2017, SHAO had filed an Opening Brief, a Reply Brief, Rule 1006(b) Declarations, and 4 Motions for Judicial Notice pending appeal in Case

- 113 -

number 15-16817, to summarize facts newly discovered since December 2015 regarding the existence of conspiracies among the judge defendants (Judge Edward Davila, Judge Theodore Zayner, Judge Patricia Lucas, Judge Mary Ann Grilli) and the attorney Defendants of the McManis Faulkner firm. Based upon these newly discovered facts, SHAO asked that the case to be remanded for leave to file an amended complaint. The Ninth Circuit determined December 18, 2018 to be the date of "submission" of this appeal, without any oral argument.

282. Then, three days later, with super speed, on December 21, 2017, Judge J. Clifford Wallace led an appellate panel at the 9th Circuit in considering the 28 USC §455 motion where his name was referenced several times, and issued a short 4-page-Memorandum to affirm the trial court's decision of dismissal with prejudice of SHAO's case against Judge Theodore Zayner, Judge Patricia Lucas, Judge Edward Davila and Judge Mary Ann Grilli, without offering any legal analysis. All issues raised in the Opening Brief were left undecided. Nowhere in his decision was there any reference to James McManis, Michael Reedy, the McManis Faulkner firm or the American Inns of Court.

283. SHAO filed a 60(b) Motion for Reconsideration, a true copy of which is attached hereto as **Exhibit 8,** and a Request for Rehearing with Suggestion Rehearing En Banc. On April 25, 2018, Judge J. Clifford Wallace once again issued a denial of Rehearing, disregarding his own direct conflicts of interest and left the great majority of issues on appeal undecided.

**U.  Google, Inc, YouTube, Inc., JAMES MCMANIS, MICHAEL REEDY AND CHIEF JUSTICE JOHN ROBERTS APPEARED TO ALL CONSPIRE TO HARASS SHAO**

284. After the eight Justices of the U.S. Supreme Court failed to decide on SHAO's Requests for their Recusal, SHAO started posting on YouTube several radio show videos (starting about February 17, 2018) about the judicial corruption going on in her cases. SHAO publicly pled with the US Supreme Court to perform their Constitutionally imposed duty to decide on the Requests for Recusal.

285. YouTube is a Google owned Product. The comments on YouTube for these videos and other videos regarding judicial corruption posted by SHAO on February 22, 2018 and

- 114 -

1    thereafter were all systematically deleted by YouTube, Inc. within a day of SHAO having

2    posted them.

3    286. All of SHAO's gmail addresses, the one posted on her profile on the State Bar, the one

4    used for her www.shaochronology.blogspot.com blog, whether related to those YouTube

5    postings or not, got suspended by Google, Inc. from about March 1, 2018 and continued

6    to be suspended without prior notice for a couple of weeks. These suspension emails from

7    Google stated that the ground of suspension was based on YouTube postings

8    287. SHAO began being stalked and followed by suspicious cars throughout the month from

9    Feb. 13 until March 8, 2018, after which the Sixth District Court of Appeal issued an

10   Order on March 9, 2018 to affirm Judge Joshua Weinstein's Order to require SHAO to

11   disclose her residential address to Wang and his attorney David Sussman (the order

12   drafted by David Sussman) despite the issue having become moot.

13   288. David Sussman has the history of sending virus email to hack SHAO's emails. The State

14   Bar has been placed on notice of David Sussman's admission to having participated in ex

15   parte communications with Judge Davila, but took no action.

16   289. SHAO sent an email to Janet Everson, the attorney for James McManis, Michael Reedy

17   and McManis Faulkner, insisting that all her defendants cease and desist this computer

18   hacking.  Ms. Everson did not respond.

19   290. SHAO's cell phone and office phone were also hacked as SHAO discovered on March 4,

20   2018.

21   291. SHAO sent an email on March 8, 2018, to Mr. Boris Feldman at Google, asking Google

22   to cease and desist hacking SHAO's GMAIL accounts.  Mr. Feldman failed to respond.

23   292. On April 2, 2018, SHAO discovered that electronic surveillance was being done of her.

24   **293.** SHAO then discovered that Google, Inc.  had obtained a special favorfrom Chief Justice

25   John Roberts at the U.S. Supreme Court in its recent case of 17-357. Google, Inc. had

26   made an application for extension of its time to file a Petition for Writ of Certiorari and

27   had specifically designated Chief John G. Roberts to decide and their application was

28   indeed granted promptly.  Then its docket shows a special conference on January 5, 2018,

     a conference which does not show on the court's conference schedule.  Then, without any

     order, on January 10, 2018, Google was able to file a Supplemental Petition.  That might

1    explain why YouTube and Google might, without any notice, have been suspending all of

2    SHAO's emails and YouTube services, and deleting all comments to SHAO's YouTube

3    postings.

4

5    **V. ON APRIL 5, 2018 SHAO discovered that her gmail accounts and many files stored on three of her computers had been hacked into and read, and that the focus of the hackers' attentions had been on all pleadings relevant to the appeal from the order requiring SHAO to reveal her confidential address to Wang and Sussman.**

6

7

8    294. On April 5, 2018, SHAO discovered that about 3,000 files on three laptops of hers

9    had been severely hacked by three specific individuals. These individuals are

10   named "Kevin L. Warnock," "Esther Chung," and "Channing Turner." Almost all

11   the files stored in the case file on SHAO's computer of case 15-16817 and its

12   appeals were hacked. The "Quick Access" of two laptops showed clearly the

13   authors' names for these files were altered from SHAO's names to these

14   individuals. The cyber attacks continue to the present.

15   295. Esther Chung appears to have only reviewed complaint-related files while hacking

16   SHAO's gmails and documents stored on SHAO's computers as shown on the "Quick

17   Access". SHAO ran a search and determined that there is only one Esther Chung in

18   Northern California and that this Esther Chung is an attorney licensed in California.

19   SHAO ran a further search and determined that There is only one Kevin L.Warnock in

20   Northern California, and that that individual works closely with Intel Corp., and

21   specializes in networking. Intel Corp. is closely connected with James McManis, Michael

22   Reedy and William Faulkner, general counsel for McManis Faulkner, Inc.

23   296. On or about April 12, 2018, SHAO sent email to Attorney Chung asking why she hacked

24   her computer. Chung said that the "author" could technically be changed. After she said

25   that all "authors" from each case file altered back to SHAO's name, but still retained in

26   "Quick Access."

27   297. SHAO changed internet service twice, then Warnock started purging files. One of the on-

28   going client's case court papers were purged by at least 80% which was discovered on

     May 11, 2018. They appeared to be angered by SHAO's turning off internet and started

     purging files, disabled keyboard and would like to force SHAO to use wireless internet to

allow them to continue monitoring SHAO's activities.  As such severe hacking came up after SHAO decided to appeal from the address order of Justice Premo, it is likely that this group of Warnock and Chung are associated with Google and YouTube group.

• ### COUNT I

### VIOLATION OF THE FIRST AMENDMENT OF THE CONSTITUTION
(against eight Justices at the US Supreme Court, Jordan Bickell, Jeff Atkins, US Supreme Court, The US House Judiciary Committee, The US Senate Judiciary Committee, Senator Diane Feinstein, Representative Eric Swalwell )

298. SHAO incorporates herein by this reference Sections 4 through 297, supra, as if fully set forth herein.

### A.   Conspiracy of obstruction or destruction of the function of the Clerk's Office of the US Supreme Court in violation of 18 USC §371 and 18 USC §2071

299. The Judicial Council has determined the "[d]ay-to-day responsibility for judicial administration of the individual court[s]" shall fall to the presiding judge of each court (See F.R.C.P Rule 79(a)(1), (d); F.R.A.P. Rule 45(a)(2); 18 USC §2071). "The chief judge of each court oversees day-to-day court administration" (Supra). Court clerks lack the authority, and are not allowed to tamper with court records. Clerks also lack the authority to refuse to accept filings or to refuse to record filings.

300. The Clerk's Office's fundamental duty is to file pleadings submitted by parties and to maintain docket entries. F.R.C.P. Rule 5(d)(4) requires that a filing clerk "must not refuse to file a paper solely because it is not in the form prescribed by these rules."  Failure by the clerk to file a pleading submitted to the clerk violates Constitutional due process of the First Amendment.  The clerk is required by F.R.A.P. Rule 45(B)(1) to maintain clear docket entries recording all filings.  It is a violation of 18 USC §1512(c) for anyone, including the clerk her or himself, to willfully alter, purge, or otherwise conceal court records submitted to the clerk for filing.

301. F.R.C.P. Rule 79(a) requires the clerk to maintain the civil docket and to enter chronologically all papers filed with the clerk in each case. F.R.A.P. Rule 45 (b)(1) and (3) require the circuit clerk to "maintain a docket and an index of all docketed cases in a manner prescribed by the Director of the Administrative Office of the United States Courts. The clerk **must record all papers filed with the clerk and all process,** orders and judgments." [emphasis added] 18 USC §2071 states, in relevant part, that:

> "(a) Whoever willfully and unlawfully **conceals**, **removes, obliterates, or destroys or attempts to do so,** or with intent to do so takes and carries away any record, proceeding, map, book, paper, document or other things, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years or both.
> (b) Whoever, **having the custody of any such record**, proceeding, map, book, document, paper, or other thing, willfully and unlawfully **conceals, removes, mutilates, obliterates, falsifies, or destroys** the same, shall be fined under this title or imprisoned not more than three years..." [emphasis added]

302. The US Supreme Court's Clerk's Office and their supervisors Jordan Bickell and Jeff Atkins repeatedly violated SHAO's rights in 2017 and 2018 in that:

(a) In September 2017, Jordan Bickell who has been the supervisor handling only after Certiorari proceeding suddenly appeared at pre-Certiorari proceeding along with another clerk named Donald Baker, for the sole purpose to wilfully deter the filing of the Amicus Curiae motion of Mothers of Lost Children in SHAO's both pending appeals, 17-82 and 17-256. To cover such irregularities that were soon criticized by SHAO, Mr. Bickell even replaced one of the two lady clerks who had always handled all clerk's office filing matters on Amicus Curiae for years at that court. Bickell and Baker together purposefully deterred and delayed the filing of the Amicus Curiae motion of Mothers of Lost Children in both of SHAO's appeals, in both 17-82 and 17-256 by holding the motions for one week, and then returned to the Amicus Curiae both motions; after promptly reprinting by the Amicus Curiae, they further refused to file that re-printed Amicus Curiae motion at all in one case (17-82), despite its being identical to

- 118 -

the Amicus Curiae motion they finally allowed to be filed in the first case (17-256).

   In delaying, deterring, and refusing to file these motions, both Mr. Bickell and Mr. Baker acted beyond the scope of their job duties, as they had never handled amicus curiae motions before. Mr. Bickell even stepped over the jurisdiction of another supervisor, Mr. Jeff Atkins.  When they blocked the Amicus Curiae motion from being filed in 17-82 they knowingly failed to return it to Amicus Curiae Mothers of Lost Children, even after two times' reminder of this by SHAO. The Amicus Curiae was not notified of the fact that its motion had been refused for filing in 17-82, and the Amicus Curiae motion for filing was not entered into the docket of 17-82.  This is a typical violation of 18 USC §2071.

(b)   After SHAO criticized such illegal activities, the Clerk's Office had a "whirlwind" change of staff and replaced one of the amicus curiae clerks with Donald Baker full time. Baker was directed by Mr. Bickell to deter SHAO's filings, following the same exact pattern of shenanigans as malpractice defendants James McManis and Michael Reedy and their judge pals had encouraged local court clerk R. Delgado to do in the state courts SHAO proceedings. (See supra, ¶¶164-174)

(c)   Jordan Bickell and Donald Baker delayed the filing of the Amicus Curiae motion in 17-613 by about 2.5 to 3 weeks, and knowingly recorded a wrong date of filing (December 9, 2017) when November 17, 2017, the date it was mailed for filing, should have been the date entered.

(d)   9 days after having finally filed it, Jordan Bickell and Donald Baker sua sponte de-filed the Amicus Curiae Motion on December 18, 2017, and further altered the docket entry retroactively to say "not accepted for filing." Bickell and Baker then altered the incorrect docket entry which had stated December 9, 2017, and on February 26, 2018, the entire December 9 de-filing entry for the Amicus Curiae motion was deleted, in violation of 18 U.S.C. §1512 (c).

(e)   Jeff Atkins was fully aware of the plot and aided or abetted Jordan Bickell to step into his jurisdiction to perform the above irregularities in September 2017.

(f)   In December 2017 and February 2018, Jeff Atkins repeatedly and knowingly deterred filing of SHAO's Requests for Recusal by refusing to post the Appendix, when the size of the first Request for Recusal in 17-256 including its Appendix was merely 10,024kb. All three Appendices for the three Requests for Recusal were cut short by Mr. Atkins.  Conveniently, in so doing, Mr. Atkins concealed SHAO's highly relevant and inflammatory evidence of judicial corruption and conflicts of interest from the public by omitting it from these Appendices, in violation of 18 U.S.C. §1512(c). No court has ever done that in the past 225 years. Jeff Atkins knew there was no legal authority for him to cut SHAO's pleadings short from e-filing or e-posting, but he still did so.

The part of the Appendix Mr. Atkins refused to post included important evidence of the US Supreme Court Justices' financial interests with the American Inns of Court, the judges' ex parte communications with the attorneys through the American Inns of Court, McManis Faulner, James McManis and Michael Reedy's leadership positions within the Inn of Court and influence over the Justices via the American Inns of Court and the judges who had served on SHAO's case, as well as McManis' admission that he had represented the court itself as its attorney, so SHAO's malpractice case against him as a defendant was being heard by and decided by one of his own clients. The evidence Atkins omitted were at pages A.012 and A.022 of the submitted Appendices.

Atkins' editing off of the evidence presented in SHAO's three Appendices coincided with a purging of the same evidence from the internet by those who had originally placed it on line.  This indicates that upon receipt of SHAO's Requests for Recusals, someone reading them including the attached Appendix and alerted James McManis and the American Inns of Court that their admissions were being used as evidence, and they purged the same pieces of

- 120 -

evidence about the same time in latter January 2018. By the end of January 2018, SHAO noticed that in addition to Mr. Atkins not having posted her evidence online, both McManis and the Inns of Court had specifically deleted the referenced evidence such as to be dissipated from the internet.

(f) While the docket showed that the Amicus Curiae motions were dispatched, there was no showing that the Requests for Recusal were ever dispatched.  Mr. Atkins eventually confirmed that he had dispatched them to the Justices.

(g) Jeff Atkins, apparently at the behest of an interested party, went to the deputy clerk to seek to de-file the Petition in 17-613, as his first order of business on the morning of October 25, 2017, after the docket had been created in the late afternoon of October 24, 2017.  He directed the deputy clerk specifically not to write in the names of James McManis and Michael Reedy as Respondents but only to list the law firm McManis Faulkner, which suggested that his coming to the deputy clerk to try to un-file the Petition was done at the direct request of James McManis and Michael Reedy.

(h)    Mr. Atkins further directed the deputy clerk to alter the decision date from April 28, 2017 to June 8, 2017.  There is no logical explanation as to why Mr. Atkins would direct the deputy clerk to make these illegal changes to the docket unless someone familiar with SHAO's state appeal proceedings had contacted Mr. Atkins.  These dates were referring to the dates of the decision at California Sixth District Court of Appeal.  Someone closely familiar with the SHAO state court proceedings has clearly been directing his actions.

(i) On or about November 26, 2017, Jeff Atkins again altered the decision date, changing it back from June 8, 2017 to April 28, 2017.  Apparently someone instructed him to fix his illegal changing of the docket, or he fixed it back out of concern of reprisals.

(j) Jeff Atkins received the Petition for Rehearing and Renewed Request for Recusal in 17-613 from SHAO on the same date, but he knowingly docketed a later date for the Renewed Request for Recusal for unknown reason. The Request for Recusal in 17-256 was filed on December 8, 2017, 17-613 was

- 121 -

filed on December 19, 2017 and the Renewed Request for Recusal in 17-613 was filed on February 2, 2018 but docketed to be February 6, 2018.

(k)  Jeff Atkins returned submission for filing of 60(b) motion and failed to make docket entry on receipt of 60(b) motion in 16A863 in March 2017.  Regarding the Justices failed to decide the Request for Recusal regarding Petition for Rehearing in 17-256, Jeff Atkins deterred filing of a 60(b) motion by stating to SHAO on or about January 15, 2018 that he would return the motion if SHAO should file a 60(b) motion as the Supreme Court's jurisdiction is over at the denial of rehearing.

303.    Jordan Bickell and Jeff Atkins disrupted the basic function of filing of the clerk's office in rejecting filings, delaying filing, denying filing of the Amicus Curiae motion without any notice in 17-82, in failing to return the unfiled booklets to Amicus Curiae's attorney, and in editing the Appendices to conveniently leave out the most relevant evidence.  No courts throughout the US throughout the history of the court has ever refused to e-file or has e-posted only partial documents.

304.    The Appendices attached to the three Requests for Recusal were all three not e-filed or e-posted in full on the court's docket. The Request for Recusal in 17-256 was filed on December 8, 2017, 17-613 was filed on December 19, 2017 and the Renewed Request for Recusal in 17-613 was filed on February 2, 2018.

**B.  All of the Eight Named Justices for Recusal Refused to Decide the Requests for Recusal that involve the central issue of their  significant financial interest with the American Inns of Court, that disrupted the basic function of the US Supreme Court to decide in violation of 18 USC §371**

305. SHAO's Appendices to her requests for recusal contained evidence that eight Justices of the Supreme Court had financial interests in the American Inns of Court and had "sponsored" 38 of their clerks to receive large gifts from the Inns with an estimated value of at least $7,000 per clerk.  Sponsored clerks were granted a "scholarship" by the Inns, which included free international airfare, a 4 week long guided travel tour, meals and lodging, and an undisclosed amount of "stipend."  The SHAO Appendices also included evidence that Justice Kennedy and Justice

- 122 -

Ginsburg each have an American Inn of Court dedicated in their name and that Chief Justice's name is associated with the American Inns of Court by receiving the "honors" of two Honorary Benchers. The Appendices included information regarding Justice Kennedy and the Chief Justice's relationships with James McManis, Justice Kegan's relationship with Michael Reedy in October 2017, in addition to the justices sponsoring their clerks for lucrative "scholarships" made available to them from the Inns of Court. As SHAO uncovered more and more incidents of misconducts, the page number of the Appendices increased proportionally.

306. The large gifts from the Inns of Court are designated to be given specifically to the clerks who hold positions in which they advise Supreme Court Justices and recommend orders. All of these eight Justices who sponsored their 38 clerks for the Inns' scholarships also received direct gifts and awards from the American Inns of Court. Such gifts and awards are made to judge and justice members of the Inn and Honoree guest judges from funds donated by attorney members to the Inns, and are given to judges and justices who those attorney members appear in front of.

307. As discussed above, the Judges' and Clerks' conduct in sponsoring clerks to receive these Temple Bar scholarships and in receiving these monetary awards from the American Inns of Court is prohibited "solicitation of gifts," an activity specifically disallowed under the Guide to Judiciary Policy §620.30. Gifts that may be accepted must not be "offered or enhanced because of the judicial officer's or employee's official position." See §620.35 (b)(7). §620.45 further disallows such gifts "if a reasonable person would believe it was offered in return for being influenced in the performance of an official act or in violation of any statute or regulation, nor may a judicial officer or employee accept gifts from the same or different sources on a basis so frequent that a reasonable person would believe that the public office is being used for private gain." §620.50 requires judges to disclose all gifts received.

308. The Temple Bar Scholarship is classified as a gift, the type which judges cannot

- 123 -

accept according to the Guide to Judiciary Policy §620.25.  The Supreme Court clerks' and Justices' solicitation of such gifts from the Inns of Court violates Guide to Judiciary Policy §620.30.  These gifts were given to the clerks solely because of their position as recommenders of orders to the justices at the US Supreme Court.  Such gifts should not have been received (§1020.30(b)(1)).  Scholarships such as the Temple Bar are not exempted from the definition of gifts pursuant to §620.35(b)(7).  Application for them and acceptance of them violated §620.45, §620.50 and §1020.30 of the Guide to Judiciary Policy.  The gifts were directly or indirectly provided by lawyer members of the American Inns of Court, including James McManis as a "leading attorney" at the American Inns of Court, who had active Supreme Court cases and was appearing on such cases in front of the US Supreme Court during the time such gifts were being made.

309.  §620.35(b)(8) limits the dollar amount of gifts a judge can accept to be no more than $50 for each occasion and no more than $100 total per calendar year.  §1020.30 limits any honoraria to not exceed $2,000 as compensation for writing an article.  18 USC §666 makes it a bribery crime to receive value of $5,000 or more, and such value can be intangible in form.  Here a $7,000 value for each Clerk recipient of the Temple Bar scholarship is a conservative estimate, as there was no disclosure by either the Clerks or the Justices.  There are 38 Clerks of the US Supreme Court who have received such large gifts from 1996 through 2007, which totals at least $266,000.

310.  The American Inns of Court's function clearly violates Rule 5-300 of California Rules of Professional Conduct which states in relevant part that:

"(A) A member shall not directly or indirectly give or lend anything of value to a judge, official, or employee of a tribunal …
(B) A member shall not directly or indirectly communicate with or argue to a judge or judicial officer upon the merits of a contested matter pending before such judge or judicial officer, except:
(1) In open court; or
(2) With the consent of all other counsel in such manner; or
(3) In the presence of all other counsel in such matter; or
(4) In writing with a copy thereof furnished to such other counsel; or
(5) In ex parte matters.

- 124 -

COMPLAINT

(C) As used in this rule, "judge" and "judicial officer" shall include law clerks, research attorneys, or other court personnel who participate in the decision-making process."
As stated above Infra, in Paragraphs 30 and 258 of the Complaint, the function of the American Inns of Court as they advertised on YouTube was to forge friendships between attorneys and the judges they appear before. As the YouTube video explained:

> This is the only organization that I know that the lawyers and judges belong to the trial bar have a chance to meet outside of the courtroom in a social setting and really able to establish the rapport.

311. This function clearly violates Rule 5-300 of California Rules of Professional Conduct and creates incentives and an arena for ex parte communication and judicial corruption.

312. Failure to decide is material judiciary misconduct which violates the First Amendment. To decide assigned cases is the fundamental function of a judge. When the highest guardian of the courts fail to decide, all judges in the future will have the excuse not to decide on the very important issue of judicial disqualification. Even though the US Supreme Court has a traditional practice to leave recusal decisions to the individual justices, the US Supreme court appears always to have retained jurisdiction over recusal motions and maintained the authority to guarantee a fully qualified panel of justices. See State v. Allen (2010) 322 Wis.2d 372, 395. There is always a docket entry of the decision on the motion to recuse any Justice, with or without a memorandum of statement of decision. See, State v. Allen, Supra., at P.394. For the first time in the 225 year history of the US Supreme Court, however, the eight Justices whom SHAO asked to recuse themselves failed to decide on the three Requests for Recusal repeatedly in concert. Two such requests were set for the conference date of January 8, 2018, and one renewed Request for Recusal was set for the conference of February 23, 2018.

313. The major issue for which recusal was sought in all three Petitions filed by SHAO was that the Justices have substantial and inappropriate financial interests in the American Inns of Court. Some Justices and judges have Inns of Court dedicated in their names, one of them (Judge J. Clifford Wallace) was the original founder and

designer of the American Inns of Court and designed its structure.  Others have been deeply involved in the activities of the American Inns of Court, a membership-secret attorney and judge legal society in which McManis and Reedy hold leadership roles.

314. SHAO's main request of the Supreme Court in all three Petitions of 17-82, 17-256 and 17-613 was asking it to decide the propriety or lack thereof of the stated function of the American Inns of Court, and to decide whether participating judges and/or attorneys should be required to disclose their regular social relationship with each other through the American Inns of Court.

315. SHAO alleged that it was impossible to have a fair review of her case at the US Supreme Court about these issues when the persons hearing the case are leaders and founders of the organization whose improprieties she is attacking.

316. The US Supreme Court Justices have always decided their own Requests for Recusal. That is how it has been done for the past 225 years.  Yet, once James McManis got involved, The California Sixth District Court of Appeal, California Supreme Court and the Ninth Circuit all failed to decide the disqualification issues which arose from their undisputed relationships with James McManis and Michael Reedy.  The same happened in the US Supreme Court.

317. Contrary to the advertised socializing and rapport building purpose of the American Inns of Court, proper jurisprudence should involve refraining from socializing with the attorneys who appear before the court in order to maintain public confidence in the judiciary and its neutrality. Patricia M. Wald, chief judge of the United States Court of Appeals for the District of Columbia Circuit, in a speech at Yale Law School in 1988, provided these insights into the working lives of appellate judges:

> Appeals court judges are a bit like monks or conjugal partners locked into a compulsory and often uneasy collegiality, destined to spend their working lives dissecting each other's logic and syntax, constrained from many of the social and political diversions that make life tolerable for the rest of society, with only one chance to explain ourselves on paper and no defense after that, required in good conscience to decide hard questions we would     just as soon not, unable to pick

the cases we want to hear or think are worthy of us."    The Law; The Circuit Bench: A Lonely Job Full of Hard Questions, New York Times 1988.

316.  The influence of the American Inns of Court on the Courts' integrity has been insidious and crippling since its inception in 1985 and continuing into the present. The public has lost confidence in the neutrality of the current US Supreme Court. "Roberts' Court" has achieved the reputation of being "pro-business," and is jokingly called the "Chamber of Commerce." The New York Times has reported that "Forty percent of the cases the court heard last term involved business interests, up from around 30 percent in recent years." The US Supreme Court was called "Supreme Court Inc." and the Roberts Court a friend of American business. See, e.g., New York Times Magazine, "Supreme Court Inc." by Jeffrey Rozen, March 16, 2008; "Justices Offer Receptive Ear to Business Interest", New York Times, by Adam Liptak, Dec. 18, 2010; "Business, the Roberts Court, and dthe Solicitor General: why the Supreme Court's Recent Business Decisions May Not Reveal Very Much", Sri Srinivasan and Bradley W. Joondeph, Santa Clara Law Review, Vol. 49, No. 4 (1.1.2009)

317.    Roberts' Court's Justices have been widely criticized for openly favoring to the attorneys who formerly worked for them as clerks.  It is general knowledge that the most likely way to have one's case heard by the Court is to hire one of the Courts' former clerks as Appellate counsel. The selective review system gives the Justices the power to grant the favor of review to their small group of former clerk attorneys.  When only 1% of submitted cases are chosen for review, nearly all litigants are denied access to this Court. This system should be changed to allow every litigant equal access to the Supreme Court, like litigants have in the great majority of other civil law countries.

318.    Google, Inc. clearly received some special favor from Chief Justice John Roberts.  No Supreme Court Case before has ever involved the Court accepting a "Supplemental Brief" without a court order. See Docket of 17-357. See ¶76, ¶304 of this Complaint.  How could Google Inc. have a special conference that is not shown on the calendar of the US Supreme Court?

319. US Constitution Article 1, Section 2, Clause 5 states that the House of Representatives shall have the sole power of impeachment.  Yet, each of its Judiciary Committee members and Representative Eric Swalwell and Senator Diane Feinstein were all made aware of the crimes committed by the Supreme Court's Clerk's Office but they did not take any corrective action.

- 127 -

320.  WHEREFOR, Plaintiff SHAO prays for the following declaratory relief:

(1) Chief Justice John Roberts should be impeached for

(a) abdicating his Constitutionally imposed duty to decide three Requests for Recusal in violation of the First Amendment of the Constitution,

(b) for conspiring with the other seven Associate Justices three times to not decide on three Requests for Recusal which disrupt the normal function of the US Supreme Court in violation of 18 USC §371,

(c) violating the Guide to Judiciary Policies §620.35, §620.45, §620.50 and §1020.30, as the chief guardian of the courts,

(d) knowingly allowing the clerks of his clerk's office to fail to perform the functions and duties of the Clerk's Office after being so informed by SHAO 4 times,

(e) ignoring the crimes committed by his Court's Clerk's Office, thus aiding and abetting these crimes in contravention with 18 USC §2071,

(e) violating 18 USC §666 and 18 USC §1215, by being involved with the financial interests of a private organization without making any disclosure.

(f) violating 18 USC §371 by conspiring with Jeff Atkins, and Jordan Bickell, and James McManis to disrupt the normal function of the Clerk's Office,

(g) failing to disclose his relationship with the American Inns of Court and with James McManis and the conflicts of interest such relationships create, in violation of Canon 1 (failure to uphold the integrity and independence of the judiciary), 2 (a judge should not allow social, financial relationship to influence judicial conduct or judgment), 2A (erosion of the public's confidence in the judiciary), 2B(A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others) and 3 (A judge should adhere to adjudicative responsibilities, should hear and decide cases, should disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned.).

(2) Associate Justice Clarence Thomas, Associate Justice Anthony M. Kennedy, Associate Justice Ruth Bader Ginsburg, Associate Justice Thomas Alito, Associate Justice Beyer, Associate Justice Elena Kegan, and Justice Sotomeyer  should be impeached for:

- 128 -

(a) abdicating the Constitutionally-imposed duty to decide three Requests for Recusal repeatedly, in violation of the First Amendment of the Constitution,

(b) conspiring with the other seven Justices three times not to decide three Requests for Recusal in disrupting the normal function of the US Supreme Court in violation of 18 U.S.C. §371,

(c) knowingly failing to disclose their conflicts of interests in handling Petitions 17-82, 17-256 and 17-613 regarding their financial and social interests associated with the American Inns of Court,  their relationships with and within the American Inns of Court and with James McManis, and the conflicts of interest those present, in violation of Canon 1 (failure to uphold the integrity and independence of the judiciary), 2 (a judge should not allow social, financial relationship to influence judicial conduct or judgment), 2A (erosion of the public's confidence in the judiciary), 2B(A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others) and 3 (A judge should adhere to adjudicative responsibilities, should hear and decide cases, should disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned.).

(d) violating the Guide to Judiciary Policies §620.35, §620.45, §620.50 and §1020.30,

(e) ignoring the crimes committed by their Court's Clerk's Office,  thus aiding and abetting the crime of 18 USC §2071,

(f) violating 18 USC §666, 18 USC §1215, by soliciting gifts and accepting gifts more than $5000 in value, in violation of the Guide to Judiciary Policy, §620.35, §620.45, §620.50 and §1020.30.

(g) In addition, Justice Kennedy has an additional ground for impeachment in violation of Rule 60(b) of F.R.C.P. in promptly denying SHAO's Application 16A863 on March 7, 2017 when any reasonable judge in reading the Application will know there is a conflict of interest but failed to disclose the conflicts of interest he had regarding his financial interests at the American Inns of Court and his relationship with James McManis and/or Michael Reedy.  Likewise, Justice Kennedy promptly denied SHAO's Application for Emergency Relief about the imminent risk of danger to the minor after discovery of WANG's dangerous mental disorder, without disclosing his relationship

- 129 -

and conflicts of interest with James McManis who locked in permanent parental deprival of SHAO at the courts for his defense against SHAO's malpractice lawsuit.

(3)    Jordan Bickell shall be impeached for:

(a) violating 18 USC §2071 in deterring filing, cancelling filing, altering docket entries in 17-613, deterring filing, destroying, and/or concealing and failing to docketing receipt of the Amicus Curiae Motion of Mothers of Lost Children for 17-82,

(b)    conspiring to disrupt or obstruct the normal function of a government unit, the Clerk's Office of the US Supreme Court, under 18 USC §371 through his  failure to maintain the dockets of 17-82 and 17-613, mischievous and illegal alteration of the dockets of 17-613, and attempts to un-file motions after having docketed them in 17-613 and retroactively change the dockets, and for backdating filed documents in 17-613.

(4)    Jeff Atkins should be impeached for violating 18 USC §2071 in deterring filings of Requests for Recusal, altering the docket of 17-613 and violating §18 USC 371 by conspiring with other interested parties to disrupt or obstruct the US Supreme Court's Clerk's Office's normal function.

(5)    The denial of Petitions 17-82, 17-256 and 17-613 should be reversed as a result of the Justices' failure to disclose their conflicts of interest and for their willful refusing to decide the Requests for Recusal.

(6)    The system of discretionary review at the US Supreme Court should be changed to mandatory review for all cases or at least in cases where substantive due process rights are alleged to have been infringed, to cause equal and fair treatment to all litigants and to avoid the injustice of a Supreme Court that protects only the interests of businesses and corporations rather than the civil rights of its people.

(7)    The American Inns of Court should be declared by this court to be an improper society/club for judges to participate in, and its social rapport building function between judges and attorneys who have cases before them should be declared to violate the ethics rules that judges and attorneys must at all times seek to avoid ex parte communications so as to not erode the public's confidence in the neutrality of the judiciary.

- 130 -

(8) The House Judiciary Committee should be declared to have a duty to conduct a thorough investigation into crimes committed by Supreme Court Justices and Clerks and Court staff when they are presented with evidence of crimes having been committed by the Justices or employees of the Supreme Court.

(9) Rule 60(b) of F.R.C.P. should be declared to be applicable to the US Supreme Court at any time even after the proceeding of Petition for Rehearing.

(10) The "Rule of Four" should be declared to not be required when a case involves an issue of conflicts of interest. The Judicial Council should be ordered to develop a rule regarding the proper forum for hearing and deciding a Petition involving conflicts of interest with the majority of the Supreme Court Panel.

(11) The Justices have a duty to decide a request for recusal and should state reasons for denial of disqualification. See State v. Allen (2010) 322 Wis.2d 372. The disqualification decision of the US Supreme Court Justices may be reviewed by a good faith 60(b) motion.

321. Plaintiff SHAO prays for the following injunctive relief:

(1) The American Inns of Court, including the William A. Ingram American Inn of Court and the San Francisco Bay Area American Inn of Court should be ordered to cease operations or to immediately and retroactively exclude membership to all judges and should be ordered to provide full disclosure of the identity of all its judge and attorney members from 1985 until present to the public on the news in order to allow any aggrieved parties who received injustice judgments where there were undisclosed conflicts of interest derived from the attorney-judge's social relationship by way of the American Inns of Court, to seek the setting aside of judgments that were affected by the non-disclosed relationships between its attorneys and judges.

(2) All funds donated to or held by the American Inns of Court should be ordered forfeited to the US Department of Revenue or dispersed to non profit legal aids that assist clients whose civil rights are being violated.

(3) The American Inns of Court should not be allowed to use the courts as venues in which to conduct their meetings, especially not the US Supreme Court's courthouse.

(4) The American Inns of Court should be ordered to fully disclose all its membership in all its chapters in the future in order to avoid future conflicts of interest.

(5) The American Inns of Court should be ordered to disclose the value provided to each Clerk who receives "Temple Bar Scholarship."

(6) All persons injured by judicial corruption made possible by the activities of the American Inns of court since 1985 should be declared eligible to seek extraordinary relief on this basis to set aside their judgments.

(7) The US Supreme Court Justices should all be required to disclose all their known and potential conflicts of interests on the Supreme Court's website in order to maintain public confidence in the judiciary.

(8) The eight Justices of the Supreme court who received gifts from the American Inns of Court and who sponsored clerks for the Temple Bar Scholarship should be required to disclose any and all gifts, scholarships, honoraria, favors or money received by them or their clerks or employees from the American Inns of Court or any of its members, volunteers, representatives or employees.

(9) Justice Anthony M. Kennedy should be ordered to disclose all gifts, favors and honoraria he has received at any time since its inception from the Anthony M. Kennedy American Inn of Court.

(10) Ruth Bader Ginsburg should be ordered to disclose all gifts, favors, and honoraria she has received at any time from The Ruth Bader Ginsburg American Inn of Court.

(11) Chief Justice and the other 7 Associate Justices are enjoyed from deciding on SHAO's Petition for Writ of Certiorari the 9th Circuit's 4-page memorandum of Judge J. Clifford Wallace, Appeal No. 15-18617 and three appeals pending with California Supreme Court which are all related the federal claims in Count 1 through VII. .SHAO has the standing to sue Chief Justice Roberts and the other 7 Associate Justices for injunctive relief, as it is ripe for her to file another Petition for Writ of Certiorari from Case D's appeal (15-16817 at the Ninth Circuit) where almost all issues on SHAO's appeal were intentionally omitted from the discussion. That coming Petition was ironically decided by Inn of Court founder Judge J. Clifford Wallace, in conscious disregard of his direct conflict of interests with the American Inns of Court and with James McManis and Michael Reedy when Judge Wallace is the designer of the American Inns of Court, holds a Chapter of the Inns in his name "The Honorable J. Clifford Wallace

- 132 -

American Inn of Court" and has a social relationship with James McManis (a leading attorney of the American Inns of Court) and Michael Reedy through the American Inns of Court. Judge Wallace's short 34 line memorandum failed to decide all issues raised in the Appellant's Opening Brief, failed to mention SHAO's 28 USC §455 "Motion to Disqualify the Ninth Circuit and Request to Change Venue to a District that does not sponsor American Inns of Court and has no relationship with James McManis, Michael Reedy and McManis Faulkner, LLP", and also Judge Wallace's order denying rehearing failed to mention SHAO's Rule 60(b) motion. He cited United States v. Elias, 921 F.2d 870, 874 (9th Circuit 1990) to exclude any new facts on appeal yet that case is not applicable to Rule 12 (b) motion dismissals and in direct conflict with the long-lasting public policy of the Ninth Circuit to consider new facts on appeal as stated in Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc., 268 F.3d 1133(9th Circuit 1990). In knowingly disregarding the Ninth's Circuit's long-lasting policy to consider new facts on appeal for 12(b) dismissals, Judge Wallace knowingly avoided any discussion of the conspiracies of James McManis, Michael Reedy with the sued defendants judges, Judge Edward Davila, Judge Theodore Zayner, and Judge Patricia Lucas that were discovered after the appeal was filed.


## COUNT II

### AIDING AND ABETTING (THE CRIMES AND IRREGULARITIES IN COURT I)

### (Against James McManis, Michael Reedy, McManis Faulkner, American Inn of Court, William A. Ingram American Inn of Court, San Francisco Bay Area Intellectual Property American Inn of Court)

322. SHAO incorporates herein by this reference ¶¶ 4 through 321, supra, as if fully set forth herein.

323. As stated in ¶302 and ¶303 above, Jordan Bickell's irregular acts in September 2017 and Jeff Atkins's interfering with docketing in the morning of October 25, 2017 are natural results of conspiracies with interested persons. As Jeff Atkins referenced James McManis and Michael Reedy's names to the deputy clerk, with the intent to

- 133 -

conceal their names from the docket, it is a natural inference that James McManis and Michael Reedy and/or their law firm McManis Faulkner were intentionally aiding and abetting the same style of disruption of Clerk's Office's function as how they influenced Rebecca Delgado in the state court.

324.  In addition, James McManis's law firm and American Inns of Court purged material evidence of judiciary corruption about the same time in late January 2018 supported the reason why Jeff Atkins's refusing to e-post or e-file the Appendix to the Requests for Recusal as Mr. Atkins's act was never done by any courts throughout the history of the US.  And, James McManis is closely associated with the Justices of the United Stated and the Court, through being a leading attorney at the American Inns of Court, it is a natural inference that the irregularities of the Clerk's Office and/or the Justices' abdicating their Constitutionally imposed duty to decide on Requests for Recusal in concert, are aided and abetted by James McManis and American Inns of Court.

325.  SHAO suffered monetary damages in drafting, paying attorneys' fees, and printing the six Petitions and 3 Requests for Recusals plus delay in her efforts to get back her child custody as a direct result of James McManis, Michael Reedy, their firm McManis Faulkner LLP and American Inns of Court's conspiracies with Jeff Atkins, Jordan Bickell and the Justices that should be held responsible for all resulting damages, to be proven at trial.

## COUNT III.

## FIRST AMENDMENT VIOLATION

### (Against Judge Lucy H. Koh)

326.   SHAO incorporates herein by this reference ¶¶4 through 297, supra, as if fully
set forth herein.

327.   As discussed in ¶¶ 64, 137-140 above, Judge Lucy H. Koh violated SHAO's due
process rights guaranteed by the First Amendment of the Constitution by knowingly
failing to disclose her conflicts of interest with James McManis and Michael Reedy,

the defendants in the case number of 14-01137. This constitutes structural error.

328.    Judge Koh's non-disclosure of her conflicts of interest in the SHAO case was willful since she knew or should have known her conflicts of interest when she recused herself from 14-01912, a week prior to her receiving assignment of the case of 14-01137, where both cases were arosen out of the same judicial misconduct and violation of SHAO's civil rights done by Judge Edward Davila. Judge Koh has had a relationship with Judge Edward Davila for many years both through working together as colleagues and socializing together through the activities of the Inns of Court. Judge Koh and Judge Davila co-taught a class together entitled "Changing Venue: A Conversation with Judge Lucy H. Koh and Judge Edward J. Davila" on May 9, 2012, at a luncheon sponsored by the William A. Ingram American Inn of Court, which imputed Judge Koh knowledge of the due process on judiciary disqualification.

329.    Judge Koh knowingly did not recuse herself in case number #14-01137 even though she had recused herself already in the other case arising from the exact same fact pattern. Koh held onto that case #14- 01137, in order to ensure its dismissal, in the interest of her Inn of Court buddies, most importantly James McManis who has worked closely with her for years, and was also her employers' attorney when she was employed by Santa Clara County Court (James McManis was Santa Clara County Court's attorney).

330.    Judge Koh knowingly and improperly ruled on the 12b motion filed by James McManis and Michael Reedy, pending the disqualification motion made by SHAO.

331.    Judge Koh knew that by dismissing SHAO's action without disclosing Koh's conflicts of interest she was violating SHAO's due process rights and blocking SHAO's access to the Court.

332.    Any reasonable judge in Judge Koh's situation reading the Complaint in 14-01173 would have known that concealing her conflicts of interest from disclosure in order to assist her friends and colleague to dismiss the action constitutes obstruction of justice in violation of California Penal Code §96.5 and 18 U.S.C. §371, in violation of Canon 1 (failure to uphold the integrity and independence of the

judiciary), 2 (a judge should not allow social, financial relationship to influence judicial conduct or judgment), 2A (erosion of the public's confidence in the judiciary), 2B(A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others) and 3 (A judge should adhere to adjudicative responsibilities, should hear and decide cases, should disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned.). Sarcastically, Judge Koh reported to the US Senate Judiciary Committee that SHAO's disqualification motion was denied by her as being without merits.

333.    In addition, Judge Koh knew or should have known that she should issue a separate order on denial of the disqualification but knowingly violated Rule 58 of F.R.C.P. by inserting the order into a footnote.

334.    WHEREFOR, SHAO seeks declarative relief that Judge Lucy H. Koh should be Impeachment under Constitution Article II.

## COUNT IV.

## FIRST AMENDMENT VIOLATION

### (Against Judge J. Clifford Wallace)

335.    SHAO incorporates herein by this reference ¶¶4 through 297, supra, as if fully set forth herein.

336.    As discussed in ¶¶ 52, 277-283 above, Judge J. Clifford Wallace violated SHAO's due process rights guaranteed by the First Amendment of the Constitution by not only knowingly failing to disclose her conflicts of interest with James McManis and Michael Reedy, but proactively confronted SHAO's 28 USC §455(b) motion by quickly denying the appeal within 3 days of submission with mere 34 lines where he only repeated the conclusions regarding defendant judges' judicial immunity and attorney general, leaving out almost all, if not all, issues raised by SHAO on the Opening Brief and knowingly refused to consider the new discoveries of James McManis and Michael Reedy's conspiracies with these judges pals. In his 34 lines of Memorandum, he did not mention the names of James McManis nor the

- 136 -

word of disqualification at all. Therefore, his confronting act of denial of appeal in blind disregard of his direct conflicts of interest but helped out his buddy, the leading attorney of the American Inns of Court which he designed. This constitutes structural error with malice, in knowing obstruction of justice in violation of California Penal Code §96.5 and 18 U.S.C. §371, in violation of Canon 1 (failure to uphold the integrity and independence of the judiciary), 2 (a judge should not allow social, financial relationship to influence judicial conduct or judgment), 2A (erosion of the public's confidence in the judiciary), 2B(A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others) and 3 (A judge should adhere to adjudicative responsibilities, should hear and decide cases, should disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned.). Sarcastically, Judge Koh reported to the US Senate Judiciary Committee that SHAO's disqualification motion was denied by her as being without merits.

337.    WHEREFOR, SHAO seeks declarative relief that Judge J. Clifford Wallace should be  Impeachment under Constitution Article II.

## COUNT V.

## FIRST AMENDMENT VIOLATION

### (Against Judge Edward Davila)

338.    SHAO incorporates herein by this reference ¶¶4 through 297, supra, as if fully set forth herein.

339.    As discussed in above, Judge Edward Davila was the judge who started the chains of conspiracies before he was appointed to be a judge at the U.S. District Court of Northern California.  When WANG relinquished "voluntarily" his full custody to SHAO when the sexual exploitation issue came up in March 2010, WANG, David Sussman, Sarah Scofield and Judge Edward Davila plotted permanent parental deprival of SHAO when she stood up to protect her 5 year old's little girl.

340.    He plotted with David Sussman, Sarah Scofield well ahead of April 7, 2010 ex

- 137 -

parte, plotted how to ambush SHAO and the minor to take the minor away at a surprise at the Case Management Conference, in retaliation of the minor's complaining that she was abused--- she was taken away from her Mom and big Brother on the eve Mother was to take a vacation to New York for a family reunion. Then the minor screamed for help in front of the court's bailiffs; one bailiff ran into the court to report to Jill Sardesen, as testified by Jill Sardesen later during her deposition, but the bailiff was unaware that the judicial kidnapper was this Judge Davila. It is undisputed that he conducted ex parate communications with David Sussman at the night of August 4, 2010. Then he made a finding without any hearing that SHAO needed supervised visit because of "emotional abuse". It is impossible for Judge Davila to have done this without getting paid by Sussman or Wang. What Davila did was completely absent of any jurisdiction.

341. He further conspired with Michael Reedy and David Sussman not to do any work for SHAO to cause permanent parental deprival during the in-chamber meeting in the afternoon of August 23, 2010, when Reedy appeared for SHAO on the first day. This coaching attorney not to represent the interest and to sell the interest of his client is without any doubt to have moral turpitude, in severe obstruction of justice in violation of California Penal Code Section 96.5 and 278.5, in severe violation of SHAO's First Amendment Right. He continued influencing Judge Zayner who succeeded him to continue parental deprival. With the last overt act continues to the present date since about 8 years.

342. This constitutes structural error with malice, in knowing obstruction of justice in violation of California Penal Code §96.5 and 18 U.S.C. §371, in violation of Canon 1 (failure to uphold the integrity and independence of the judiciary), 2 (a judge should not allow social, financial relationship to influence judicial conduct or judgment), 2A (erosion of the public's confidence in the judiciary), 2B(A judge should avoid lending the prestige of judicial office to advance the private interests of the judge or others) and 3 (A judge should adhere to adjudicative responsibilities, should hear and decide cases, should disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned.).

343.   WHEREFOR, SHAO seeks declarative relief that Judge Edward Davila should be impeached under Constitution Article II.   Regarding Edward Davila's coaching Reedy not to defend SHAO and not to file a motion to set aside his orders of August 4 and 5 of 2010, such act is in absence of all subject matter jurisdiction that is not covered by judicial immunity, SHAO seeks monetary damages of $10,000,000 for emotional harm, loss of consortium plus actual damages of all legal fees, and costs to be proven at trial.

## COUNT VI

### 42 USC §1983 violation

(against Santa Clara County Superior Court of California, Rebecca Dalgado, Susan Walker, David Yamasagi, Lisa Herrick, California Sixth District Court of Appeal or "The Clerk's Office of California Sixth District Court of Appeal" or California Sixth District Court of Appeal, Justice Conrad Rushing, Justice Eugene Premo, Justice Franklin Elia, Justice Patricia Bamattre-Manoukian, Judge J. Clifford Wallace, Judge Edward Davila, Judge Patricia Lucas, Judge Rise Pichon, Judge Theodore Zayner, Judge Joshua Weinstein, Judge Mary Ann Grilli, Judge Maureen Folan, Judge Lucy H. Koh, Judge Peter Kirwan, Commissioner Gregory Saldivar, Darryl Young, Mary L. MurphySanta Clara County Superior Court of California, Rebecca Dalgado, Susan Walker, David Yamasagi, Lisa Herrick, California Sixth District Court of Appeal or "The Clerk's Office of California Sixth District Court of Appeal" or California Sixth District Court of Appeal, Justice Conrad Rushing, Justice Eugene Premo, Justice Franklin Elia, Justice Patricia Bamattre-Manoukian, Judge J. Clifford Wallace, Judge Edward Davila, Judge Patricia Lucas, Judge Rise Pichon, Judge Theodore Zayner, Judge Joshua Weinstein, Judge Mary Ann Grilli, Judge Maureen Folan, Judge Lucy H. Koh, Judge Peter Kirwan, Commissioner Gregory Saldivar, Darryl Young, Mary L. Murphy, Sarah Scofield, Jill Sardeson)

344.   SHAO incorporates herein by this reference ¶¶4 through 321, supra, as if fully set forth herein.

345.   As shown in the Table of Contents, there were many conspiracies under the common scheme, which is permanent parental deprival of SHAO, and retaliation against SHAO for her trying to get back her child custody, using vexatious litigant orders to block SHAO's access to the family court and to the appellate court, with stalking, suspicious vehicles, and internet hackings.  These hackers only hacked the legal documents and appeared to have hired attorney Esther Chung to review only

- 139 -

those records related to complaint.  In countering the hackers, SHAO had to kept changing internet service, clear up computer and discovered that these hackers maliciously interfered with her client's cases by even deleting about 80% of computer stored files on May 11, 2018.

346.    These government employees were infringing SHAO's First and Fourteenth Amendment with numerous crimes committed in absence of any of their jurisdictions as judges, as social worker , family court service's screener.  The following is a table of the state employees' crimes stated above:

| | actions | perpetrators | Crimes/Codes violated |
|---|---|---|---|
| 1 | Plotted parental deprival by false accusation SHAO of alienating parent | Sarah Scofield, Judge Edward Davila, Tsan-Kuen Wang, David Sussman | Ca. Penal Code §278.5 Ca. Penal Code §182 Violation of Rule 5-300 of California Rules of Professional Conduct CA Code of Judicial Conduct |
| 2 | 8/3  Wang called Misook Oh and Misook Oh telephoned Jill Sardesen to relay Wang's "bottom line" | Wang, Sussman, Sarah Scofield, Jill Sardeson, Misook Oh | Ca. Penal Code §278.5 Ca. Penal Code §182 |
| 3 | 8/4/2010 CMC; induced child to court and locked her 3 hours; transferred child custody against the express wishes of the child. | Judge Edward Davila, Wang, Sussman, Misook Oh, Jill Sardesen, Sarah Scofield | Ca. Penal Code §278.5 Ca. Penal Code §182 Ca. Government Code §53894 Ca. Rules of Professional conduct, Rule 5-300: ex parte communication Constitutional due process n |
| 4 | 8/4/2010 Order to Show Cause re Contempt issued against SHAO | Judge Davila, Sussman, | Ca. Penal Code §278.5 Ca. Penal Code §182 Ca. Penal Code §96.5 Constitutional due process |

- 140 -

| | | | |
|---|---|---|---|
| 5. | 8/23/2010 conspiracy in Judge Davila's chamber that Reedy woud not defend SHAO | Judge Davila, Sussman, Reedy | Ca. Penal Code §182 Ca. Penal Code §96.5 |
| 6 | Feb through March in 2011: conspiracy to deter disclosure of SHAO's psychological evaluation report | Judge Davila, Sarah Scofield, Jill Sardesen | Ca. Penal Code §182 |
| 7 | 10/31/2011, the court cancelled child custody evidentiary hearing but did not return child custody | Theodore Zayner, McManis, Reedy BJ Fadem, Sussman, Wang | Constitutional due process violation Ca. Penal Code §278.5 Ca. Penal Code §182 Ca. Penal Code §96.5 |
| 8 | 9/5/2012-9/12/2012: conspiracy to harass SHAO requiring SHAO to disclose her families' address and phone number Performed on 9/12/2018 in retaliation to SHAO for her continuous wanted child custody back | Judge Theodore Zayner, Sussman and Wang | Ca. Penal Code §182 Ca. Penal Code §96.5 |
| 7 | July through November 2013: custody trial, conceal child abuse evidence, causing permanent parental deprival | Patricia Lucas, Michael Reedy. Fadem, Sussman, Wang Theodore Zayner, Jill sardeson, Sarah Scofield | Constitutional due process violation Ca. Penal Code §278.5 Ca. Penal Code §182 Ca. Penal Code §96.5 Ca. Penal Code §278.5 Ca. Penal Code §182 Ca. Government Code §53894 |
| 8 | 5/3/2013 – irregular child support order, imputing income without any notice nor motion.  Conspiracy to use this order to harass SHAO's driving license and bar license | Commissioner McCarthy, Darryl Young, James McManis, Michael Reedy, Wang, Sussman | Ca. Penal Code §182 Ca. Penal Code §96.5 |
| 9 | March 2014:  arrest warrant against SHAO | Judge Joshua Weinstein, David Sussman, Tsan-Kuen Wang | Ca. Penal Code §182 Ca. Penal Code §96.5 |
| 10 | May 22, 2014: Presiding Justice Rushing dismissed child custody | Presiding Judge Conrad Rushing, | violated California Government Code |

| | | | |
|---|---|---|---|
| | appeal by raising a new issue only in the judgment. | Franklin Elia and Eugene Premo Michael Reedy, James McManis | §68061. Right to Appeal Ca. Penal Code §182 Ca. Penal Code §96.5 |
| 11 | Backdated a Prefiling Order Vexatious litigant to June 16, 2016 | Judge Joshua Weinstein, James McManis, Michael Reedy, McManis Faulkner, Tsan-Kuen Wang | Ca. Penal Code §182 Ca. Government Code §53894 Ca. Penal Code §96.5 |
| 12 | June 16, 2016: used vexatious litigant order to block SHAO's access to the family court | Judge Joshua Weinstein, James McManis, Michael Reedy, McManis Faulkner, Tsan-Kuen Wang | <u>Shalanti v. Girardi</u> : Vexatious litigant prefiling order should not be used for motions within a case. Ca. Penal Code §182 Ca. Penal Code §96.5 |
| 13 | Dismissal of H040395 appeal by way of a forged Notice of Non-compliance issued by Rebecca Delgado on a Saturday, March 12, 2016. | Presiding Judge Rushing, McManis Faulkner, Rebecca Delgado, Susan Walker, David Yamasagi, Lisa Herrick, Presiding Judge Rise Pichon | Ca. Penal Code §182 Ca. Government Code §53894 Ca. Government Code §6200 Ca. Penal Code §96.5 |
| 14 | Repeated attempts to dismiss appeals with false notices and even the non-existent default notice purportedly issued on February 27, 2017 | Presiding Judge Rushing, McManis Faulkner, Rebecca Delgado, Susan Walker, David Yamasagi, Lisa Herrick, Presiding Judge Lucas | Ca. Penal Code §182 Ca. Government Code §53894 Ca. Government Code §6200 |
| 15 | Removed SHAO's family case docket from Santa Clara County Court's website | Presiding Judge Patricia Lucas, James McManis, | Ca. Government Code §53894 Ca. Government Code |

| | | | | |
|---|---|---|---|---|
| | | | Michael Reedy, McManis Faulkner | §6200 Ca. Penal Code §182 Ca. Penal Code §96. |
| | 15 | Suspending SHAO's licenses by way of the fraudulent order of May 3, 2013 | Darryl Young, Tsan-Kuen Wang, David Sussman, James McManis, McManis Faulkner | Ca. Penal Code §182 Ca. Penal Code §96.5 |
| | 16 | Administrative Judge of the Department of Child Support Services refused to return subpoenaed evidence of Chicago Title that proved Wang's Income and Expense Declaration, that the May 3, 2013's Order was based on, was fraudulent and perjured. | Darryl Young, Tsan-Kuen Wang, David Sussman, James McManis, McManis Faulkner | Ca. Penal Code §182 Ca. Penal Code §96.5 |
| | 17 | California Sixth District Court of Appeal altered docket entries in H040395 multiple times | Presiding Judge Conrad Rushing, Clerk's Office of California Sixth District Court of Appeal | Ca. Penal Code §182 Ca. Government Code §53894 Ca. Government Code §6200 |
| | 18 | No records on appeal in H040395 for already about four years | Presiding Justice Conrad Rushing, Rebecca Delgado, Susan Walker, James McManis, Michael Reedy, McManis | Ca. Penal Code §182 Ca. Government Code §53894 Ca. Government Code §6200 |
| | 19 | The records on appeal for H040977, when eventually filed, the records failed to contain the crucial documents for this appeal, and the Sixth District Court of Appeal denied the Objection (pending for about 6 months then denied on May 4, further denied SHAO's motion to augment the records which constitutes violation of due process. | Presiding Justice Rushing, Justice Franklin Elia, Judge Theodore Zayner, James McManis, Michael Reedy, m | Ca. Penal Code §182 Ca. Penal Code §96.5 This is another obstruction of appeal in violation of due process. See, e.g, People v. Rogers (2006) 39 Cal.4th 826, 857-858 |
| | 20 | To frighten and bully SHAO by trying to have her get arrested again, and trying to get her confidential | Judge Joshua Weinstein; Judge Zayner, David | Ca. Penal Code §182 Ca. Penal Code §96.5 |

- 143 -

COMPLAINT

| | | | |
|---|---|---|---|
| | | residence disclosed to her domestic violence perpetrator | Sussman, Wang | |
| | 21 | In July 2016 Judge Theodore Zayner irregularly removed the civil case files of Shao v. McManis, et al from the trial department of Judge Derrick Woodhouse, and then "lost" Volume V of those case files, as well as the original deposition transcripts of James McManis and Michael Reedy, the key documents which contained admissions from Reedy and McManis of their influence over the judges through the Inns of Court and | Judge Theodore Zayner, James McManis, Michael Reedy | Ca. Penal Code §182 Ca. Government Code §53894 Ca. Government Code §6200 |
| | 22 | On July 27, 2017 in the Department of Child Support Services' motion to modify support, Commissioner Sardivar read to became the order a printout from the computer in front of the bench which was handed by Mary L. Murphy. | Commissioner Sardivar, Mary L. Murphy, Darryl Young, Tsan-Kuen Wang, David Sussman, Presiding Judge Patricia Lucas | Ca. Penal Code §182 Ca. Penal Code §96.5 |
| | 23 | The same scheme of irregularities at the US Supreme Court's Clerk Office in September 2017 until February 2018, i.e., deterring filing, | Jordan Bickell, Jeff Atkins, Michael Reedy, James McManis, McManis Faulkner, American Inns of Court | 18 USC §1512 18 USC §371 |

347.    In infringing her due process rights of child custody, as well as right to access the court, and right to appeal, in violation of the First and Fourteenth Amendment, SHAO prays for the following declarative relief:

(1) Her family court case of In re Marriage of Shao and Wang (105FL126882) and civil malpractice lawsuit of Shao v. McManis, et al. (112CV220571) should be moved away from Santa Clara County Superior Court of California as it is impossible for SHAO to have a fair hearing at that court.

(2) All of Plaintiff's cases should be removed from California Sixth District Court of Appeal.

(3) Family Code §3042 that required the Court to consider the child's wishes for the child of over age 14 violates the equal protection clause of the First Amendment and should be declared void as for the parental deprival situation, California Welfare and Institutions Code §317(e)(2) required the child's counsel to interview the child to determine the child's wishes for the child of four years old or older and the court shall follow the child's wishes unless the child's wishes conflicts with the protection and safety of the child.

(4) All of the named individual defendants in this Count VI should be following individuals be declared impeachment pursuant to California Penal Code §98 for severe obstruction of justice in violation of California Penal Code §96.5 and §182.

348.    SHAO prays that the following individuals pay her monetary damages for their acts completely in absence of all subject matter jurisdictions:

(1) Judge Edward Davila, regarding his in-chamber secret meeting on August 23, 2010 where he instructed permanent parental deprival of SHAO and instructed Mr. Michael Reedy not to file a motion to vacate the Orders of August 4 and 5 of 2010, not to get the child custody back for SHAO and not to file an opposition to David Sussman's motion to declare SHAO a vexatious litigant. Such conspiracies were made in absence of all jurisdictions, in violation of Penal Code §278.6, §182 and §95.6.  Judge Davila should be jointly responsible for all resulting damages from Reedy's complying with such instruction, i.e., $10,000,000.

(2) Judge Theodore Zayner, regarding his removal of case files of SHAO v. McManis (112CV220571) which he had no jurisdiction to do so.  He should be responsible for the damages of losing the two critical evidence for this trial--- original deposition transcripts of James McManis and Michael Reedy that were taken in July 2015. Volume 5 is about the motion of vexatious litigant and its related documents.  As this exposed Judge Zayner's conspiracies that caused injustice custody trial and years of parental deprival.  SHAO should have obtained her child custody return n 2011 when

- 145 -

the August 2010's orders were wet aside.  Judge Zayner should be  jointly responsible
for the monetary damages of $10,000,000.

(3) Judge Patricia Lucas, as stated in Paragraph 41 above, should be responsible for
SHAO's monetary damages under Government Code §815.6 for her failure to discharge
her statutory duty as a Presiding Judge under Rule 10.603(a)(1) of California Rules of
Court and further violated California Government Code §§137, 6200, 53894, 68050,
et.seq., and California Penal Code  §95.6 and §182 which is regarding the
administration of justice and not in judiciary capacity, including

(1) the misconducts of the Santa Clara County Superior Court stated above in
Paragraph 36 of this Complaint, which all took place while she was in charge of all
civil matters of the court as the Assistant Presiding Judge or as the Presiding Judge,

(2) her knowingly caused evidence of child abuse that was admitted into evidence in
July 2013's child custody trial that was conducted in front of her to be disappeared for
a year, (3) her knowingly caused court reporter's transcript for the child custody trial
to be altered and purged regarding her statements made on the record on July 11,
2013,

(4) knowingly allowed removal of SHAO's family case docket information away from
her access in February for many months in 2017 when there was a second round of
conspiracy to dismiss SHAO's child custody appeal,

(5) knowingly allowed the Appellate Unit to keep issuing false notices for the sole
purpose of dismissing appeals, with clear knowledge that such actions would deter
SHAO's child custody return and has caused disruption of the function of the
Appellate Unit and Clerk's Office,

(6) knowingly allowed the Appellate Unit to deter the court reporter for the child
custody trial to file the hearing/trial transcripts of July 2013, and thus deterred and
delayed SHAO's child custody appeal.

(7) knowingly allowed the Appellate Unit to delay preparing records on appeal for the
child custody appeal for already about 4 years, and thus deterred and delayed SHAO's
child custody appeal.

- 146 -

(8) knowing participating the common plan to dismiss the child custody appeal and to avoid evidence of these conspiracies to be exposed in front of the jury and so she refused to allow the trial court to change venue away from Santa Clara County Court regarding both the family case (105FL126882) and the civil case (112CV220571), has caused the jury trial of the civil case to stay indefinitely beyond 5 years of commencement of the action in conspiracy to obstruct justice with knowledge that there is direct conflict of interests, and knowingly disregarded SHAO's repeated reminder of the Court's sua sponte duty to change venue without need of a motion under <u>People v. Ocean Shore</u> (1938) 24 Cal.App.2d 420, 423.

(4) Presiding Justice Conrad Rushing for his creation of a false docket entry of February 27, 2017 when the purported notice stated in that docket entry was non-existent, which caused SHAO to file multiple motions in order to avoid her appeal in H040395 and H040977 to be dismissed.  These motions took SHAO at least $20,000's attorneys' fees and costs.

## COUNT VII

### Aiding and abetting

(Against American Inns of Court, William A. Ingram American Inn of Court, San Francisco Bay Area American Inn of Court, James McManis, Michael Reedy, McManis Faulkner, LLP, Janet Everson, BJ Fadem, Elise Mitchell, John Orlando, David Sussman, Tsan-Kuen Wang, Carole Tait-Starnes)

349.   SHAO incorporates herein by this reference ¶¶4 through 348, supra, as if fully set forth herein.

350.   James McManis knew the events stated in COUNT VI were unlawful, yet he actively influenced the judges, county employees to direct the common scheme of permanent parental deprival of SHAO and retaliated against SHAO for reporting him to the State Bar of California by causing Darryl Young to suspend SHAO's driver's license and bar license under the disguise of "enforcement of the child support order" when he knew or should have known that the May 3, 2013's child support order is illegal.  The May 3, 2013's Order is illegal not only because imputation of income was made "promptu" like the "ambush" taken place on August

- 147 -

4, 2010, but also because May 3, 2013's Order is entirely based on Wang's Income and Expense Declaration of April 26, 2013, yet that declaration was perjured in that he failed to disclose his ownership of a rental duplex. On May 3, 2013, he received $4,933 monthly rental income but he failed to disclose in his April 26, 2013's Income Information at all.

351.    James McManis aided and abetted the Santa Clara County Court and the Department of Child Support Services by way of his being attorney for the court, and his leading role in the American Inns of Court. Likewise, Michael Reedy aided and abetted Judge Patricia Lucas, Judge Theodore Zayner, and Justice Patricia Bamattre-Manoukian to commit the court crimes as stated in Court VI. Michael Reedy may have abetted and aided Judge Carol Overton's dismissal of the complaint based on the court's own motion in February 2014. Such dismissal violated Constitutional due process and was vacated in or about October 2014 for the exact reason of violation of due process.

352.    As mentioned above, American Inns of Court aided and abetted Jeff Atkins in not to efile or e-post the entire Requests for Recusal to allow them to purge evidence. American Inns of Court further aided and abetted the illegal relationship between James McManis, Michael Reedy and the judges sued herein because they provided ex parte communication platforms and allowed the judges to accept gifts directly or indirectly from James McManis, Michael Reedy and/or McManis Faulkner. McManis Faulkner's past sponsoring many judicial seat is likely used the function of the American Inns of Court.

353.    San Francisco Bay Area American Inn of Court knew or should have known that its function violates Rule 5-300 of California Rules of Professional Conduct but did not take an action to make correction. SF IP Inn aided and abetted the "rapports" between James McManis and the judges sued herein by providing 9 regular meetings a year, not including the meetings for its Executive Committee. Judge Lucy Koh and James McManis were both Masters at this Inn.

354.    William A. Ingram American Inn of Court knew or should have known that its function violates Rule 5-300 of California Rules of Professional Conduct but did not

- 148 -

take an action to make correction. This Ingram Inn aided and abetted the "rapports" between Michael Reedy and the judges sued herein by providing 7 to 8 regular meetings a year, plus about 7 times additional meetings for its Executive Committee. Judge Lucy Koh, Judge Patricia Lucas, Judge Patricia Bamattre-Manoukian, Judge Theodore Zayner, were all long term members of the Ingram Inn's Executive Committee.   By way of the function of the Ingram Inn, the court crimes stated in Count VI took place.

355.   McManis Faulkner, LLP, made strong financial supports for many judicial seats through the two Inns which facilitate James McManis and Michael Reedy's manipulation of the courts.

356.   Janet Everson knew the common scheme led by James McManis, Michael Reedy and McManis Faulkner, which is to maintain SHAO permanent parental deprival and participated into such a plot.  Janet Everson actively participated ex parte communications with the judges on Shao v. McManis, et al by manipulating Judge Woodhouse to stay the jury trial proceeding and by conspiring with Judge Peter Kirwan to keep being the Case Management Judge after he had filed an order to recuse himself, until February 8, 2018.  She knew before hand that on February 8, 2018, Judge Lucas and Judge Kirwan plotted to take the case off from any case management and thus she declined to stipulate with SHAO to continue the CMC hearing by stating that something important would be discussed.  She were aware such ex parte communications were illegal but actively participated in this common scheme.  Thus, Ms. Everson was able to "predict" the dismissal in H040395, and to "predict" something significant would be discussed at the CMC for February 8, 2018.

357.   David Sussman aided and abetted the common scheme of permanent parental deprival.  He talked about that in the end of August 2010 at the Court that the child custody change on August 4, 2010 would be "permanent."  The August 4, 2010's parental deprival was orchestrated by Sarah Scofield, who joined this common scheme entered.  That was how Sarah Scofield would contact the social worker Anita Hu as early as on April 7, 2010 to present her being the screening when at that

time there was no screener assigned but Wang's motion for emergency screening was pending. Based on his history of aiding and abetting such common scheme of permanent parental deprival of SHAO and retaliation against SHAO, Sussman filed with the Court a list of Respondent Wang's witness with the numbered one witness for the screener to contact was "Sarah Scofield." Sussman joined the conspiracy to influence Michael Reedy on August 23, 2010 through Judge Edward Davila. A reasonable person would believe without a special benefit given to Judge Davila, Judge Davila would not have done such illegal favor for Wang without getting some return or benefit from Mr. Sussman. On December 9, 2015 when Mr. Sussman appeared for the pretrial argument in front of the jury trial judge Honorable Derrick Woodhouse, he pointed his finger at Judge Woodhouse commenting that Judge Socrate Manoukian's Order of Recusal of December 2, 2015 was unwise and that a tsunami would come if Judge Woodhouse did not know how to control the proceeding. As criticized by Sussman, the Santa Clara County Court did not enter nor keep in the file Judge Manoukian' s  12/2/2015's Order. As threatened by Sussman, Judge Woodhouse deny SHAO's motion to change venue on 12/9/2015. Sussman actively led this conspiracy by disallowing his client Wang to be taken psychological exam, with knowledge that his client has severe psychological issues and would conceal this material evidence from the court.

358. Tsan-Kuen Wang actively aided and abetted the court crimes that violated 42 USC 1983 as stated in Count VI. He was used and would not give up the plot to harass SHAO, to annoy SHAO and to harm SHAO and the children by the common scheme of permanent parental deprival.

359. Carole Tait-Starnes actively aided and abetted the common scheme of permanent parental deprival by failing to disclose to the court and John Orlando about WANG's mental illness, which, she was already aware of since June of 2010 by being paid as WANG's mental health provider. In helping this conspiracy, she telephoned John Orlando, the then custody evaluator that the minor was much better after Richard left her father's house and concealed from disclosing the minor's wishes to stay with her mother, SHAO. Carole knew she had conflicts of interest

COMPLAINT

but failed to disclose such conflicts to SHAO but actively help WANG to get full child custody when she knew or have reason to know WANG's dangerous mental condition will prejudice the daughter. The last overt act of this common scheme lasts until present.

360.    John Orlando actively participated in the common scheme of permanent parental deprival of SHAO by falsifying a diagnosis of schizophrenia report and illegally practice forensic psychology when he knew that his report was false and that a diagnosis of schizophrenia required mental examination and he was unable to conduct such examination. The last overt act of this common scheme lasts until present.

361.    BJ Fadem actively participated in this common scheme of permanent parental deprival of SHAO when she had done so also for many mothers--- to separate the mothers from daughters. There is no law in California to require the minor's counsel to pass through psychological evaluation. Fadem is believed by many mothers to have severe psychological issues. She should not be qualified to be a minor's counsel. Fadem was put on notice many times of Wang's dangerous mental disorder that may harm the minor but Fadem not only took no action regarding this safety issue, but joined Judge Zayner and David Sussman in the hearing of November 12, 2014 that CIGNA subpoenaed records were hearsay, in contravention with the standard in the prevailing law. Fadem has conflicts of interest as the minor's counsel but failed to recuse herself until July of 2016.

362.    Elise Mitchell has been appointed as the minor's counsel after Fadem withdrew. Mitchell received many emails from SHAO about the minor's exposure to danger by Wang's dangerous mental disorder, but she took no action to protect the minor from such psychological harm or significant risk of physical harm.

363.    SHAO prays that each of the aiders and abetters should be jointly and severally liable for all damages resulted from this illegal common scheme.

## COUNT VIII

### PRELIMINARY AND PERMANENT INJUNCTION AND MONETARY DAMAGES

### (against YouTube, Inc. and Google, Inc.)

364.   SHAO incorporates herein by this reference ¶¶4 through 297, supra, as if fully set forth herein.

365.   As discussed above in ¶¶64 and 65, without any prior notice, Youtube deleted many postings of SHAO and removed all discussions for SHAO's radio shows that are posted on YouTube in February 2018.

366.   On March 1, 2018, without receiving any prior notice, almost all of SHAO's gmail accounts and Youtube accounts, whether used to create the YouTube account or not, were all suspended including the gmails that from the face language, a reasonable person would anticipate that attorney-client privilege would be involved. SHAO's Constitutional right of privacy was severely prejudiced by such hackings. SHAO paid about $150 for the security meansure of the gmails were both hacked and thus not functional in early March 2018.  While Youtube has many published videos criticizing individual judge, but SHAO was suspended.  SHAO then discovered the special relationship between Google and Chief Justice John Roberts in the pending case where Google is the petititioner.

367.   SHAO suffered lost of her professional hours of at least 10 in dealing with the issues.  SHAO believe James McManis is also involved as she sent an email to Janet Everson about this but Ms. Everson did not deny nor respond when she usually would respond.

368.   As such act severely infringed SHAO's attorney-client privilege and privacy rights, SHAO prays the Court to grant permanent injunctive relieve, plus monetary damages to be proven at trial.

## COUNT IX

### PRELIMINARY AND PERMANENT INJUNCTION AND MONETARY DAMAGES

### (against Kevin L. Warnock and Esther Chung)

- 152 -

369.    SHAO incorporates herein by this reference ¶¶4 through 297, supra, as if fully set
forth herein.

370.    As discussed above in ¶¶62 and 63, such severe hacking on SHAO's internet and
her legal files caused substantial monetary damages to SHAO.  The hacking is
especially interested into the

371.    As such act severely infringed SHAO's attorney-client privilege and privacy
rights, SHAO prays the Court to grant permanent injunctive relieve, plus monetary
damages to be proven at trial.

## COUNT X

### California Government Code §815.6

(against Department of Family and Children Services in Santa Clara County, California)

372.    SHAO incorporates herein by this reference ¶¶4 through 297, supra, as if fully set
forth herein.

373.    Department of Family and Children Services has the statutory duty to protect
thee safety of the minors from any abuses.  DFCS has failed to perform its statutory
function but traumatized the minor.

374.    Especially after WANG's severe mental disorder was discovered, DFCS in Santa
Clara County persisted on not taking any action with at least two times of notices
from President's Office.

375.    WHEREFOR according to Government Code §815.6, SHAO prays the DFCS pay
$10,000,000.

## COUNT XI

### California Government Code §815.6

### (against Santa Clara County Superior Court of California)

376.    SHAO incorporates herein by this reference ¶¶4 through 297, supra, as if fully set
forth herein.

377.    Santa Clara County Court has statutory duty to perform the duty of filing,

- 153 -

recording and assisting appeal.  As stated above in ¶36, supra, however, it failed to perform its statutory duty and knowingly refused to do so after SHAO sent a=many emails to the Court's CEO.

378.    WHEREFOR according to Government Code §815.6, SHAO prays the Santa Clara Court to pay all resulting damages of such deficiency, including the emotional harm caused by nearly 4 years' stalling on appeal in H040395 in the amount to be proven at trial.

**COUNT XII**

**California Government Code §815.6**

**(against California Sixth District Court of Appeal or its Clerk's Office)**

379.    SHAO incorporates herein by this reference ¶¶4 through 297, supra, as if fully set forth herein.

380.    California Sixth District Court of Appeal or its Clerk's Office has statutory duty to perform the duty of filing, recording and assisting appeal.  As stated above, however, it failed to perform its statutory duty and knowingly refused to do so after SHAO filed many motions with the Presiding Justice.

381.    WHEREFOR according to Government Code §815.6, SHAO prays the Santa Clara Court to pay all resulting damages of such deficiency, including the emotional harm caused by nearly 4 years' stalling on appeal in H040395 in the amount to be proven at trial.

Dated:  May 12, 2018

Respectfully submitted,
Law Offices of Linda Shao,
A PROFESSIONAL LAW CORPORATION

By:_____
Linda Shao, Attorney for Plaintiff
Also in Pro Per

COMPLAINT

VERIFICATION

I, Linda Shao, the Plaintiff of this case, declare that the above factual statements are true and accurate to the best of my knowledge or information, under the penalty of perjury under the laws of the State of California.  Executed in Pleasanton, California on May 12, 2018.


Linda Shao

- 155 -

COMPLAINT