# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| YI TAI SHAO, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-1233 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 31, 45, 58, 65, 75, |
| | : | | 80, 81, 84, 117, |
| | : | | 142 |
| JOHN G. ROBERTS, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

### DENYING PLAINTIFF'S MOTION TO DISQUALIFY AND FOR CHANGE OF VENUE, GRANTING MOTIONS TO DISMISS, *SUA SPONTE* DISMISSING ALL CLAIMS AGAINST ALL REMAINING DEFENDANTS, AND DENYING ALL OTHER PENDING MOTIONS AS MOOT

## I. INTRODUCTION

Plaintiff Yi Tai Shao, a California resident, has brought this suit against a wide variety of defendants in connection with a California child custody case that has been ongoing since 2005. In her amended complaint, Shao includes fourteen claims against sixty-seven named and forty-six unnamed defendants, including parties, attorneys, court clerks, judges, and third parties, all linked in some way to the child custody case or to the multiple legal proceedings Shao has instituted in connection with it over the past eight years. After the Court denied a motion to disqualify, Shao has now filed a renewed motion to disqualify and for change of venue. Many of the defendants have also moved to dismiss for lack of personal or subject matter jurisdiction and for failure to state a claim. For the same reasons it denied the initial motion to disqualify, the Court denies Shao's renewed motion to disqualify and for change of venue. And because it finds that it lacks personal jurisdiction or subject matter jurisdiction over all of Shao's claims, the Court dismisses this case.

## II.  FACTUAL BACKGROUND

### 1.  The Underlying Custody Case and Initial Custody Determination

In 2005, Shao filed for divorce from her now ex-husband, Tsan-Kuen Wang, in the

Superior Court of California, Santa Clara County.  *See* Am. Compl. ¶¶ 5, 8, ECF No. 16; *In re*

*the Marriage of: Linda Shao and Tsan-Kuen Wang*, No. 1-05-FL126882 (Cal. Sup. Ct.).[1]  Shao

and Wang initially agreed to split custody of their daughter 50/50.  *Id.* ¶ 87.  However, Shao's

daughter began complaining about sexual abuse while in Wang's care in early 2010, *id.*, and the

County of Santa Clara investigated the claims, *see id.* ¶¶  57–58.  B.J. Fadem, a California

attorney, was appointed as guardian *ad litem* for Shao's daughter in May 2010.  *See id.* ¶ 58.

After county workers allegedly conspired to keep Shao's child away from her with Superior

Court employees; Wang's attorney, David Sussman; and the judge assigned to her case, Judge

Edward Davila,[2] *see id.* ¶¶ 43, 54–57, 71, Judge Davila issued an expedited custody order

depriving Shao of custody of her daughter on August 5, 2010, *see id.* ¶¶ 88–92.

On August 20, 2010, Shao hired attorneys James McManis, Michael Reedy, and

McManis Faulkner, LLP ("the McManis Defendants") to challenge the expedited custody order.

*See id.* ¶¶ 98.  However, Shao fired the McManis Defendants within a year after allegedly

realizing that they were engaged in a conspiracy with Sussman and Judge Davila to deprive her

of custody.  *See id.* ¶ 99–104.  According to Shao, the conspiracy was facilitated by Judge Davila

and the McManis Defendants' common membership in a chapter of the American Inns of Court,

---

[1] The Court takes judicial notice of the dockets and published opinions for Shao's related state and federal lawsuits.  *See, e.g.*, *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014) ("A court may take judicial notice of facts contained in public records of other proceedings." (citing *Covad Commc'ns Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005))).

[2] Judge Davila now sits on the U.S. District Court for the Northern District of California, following his appointment to the position in 2011.

*id.* ¶ 98, an organization that she alleges provides a nationwide platform to facilitate private *ex parte* communications and judicial corruption, *see id.* ¶¶ 23, 335–36.  Over the next three years, several other Superior Court judges issued a variety of decisions in Shao's custody case.  *See, e.g.*, *id.* ¶¶ 103–105.  Shao alleges that these judges, too, were involved in conspiracies to deprive her of custody with Sussman or with some or all of the McManis Defendants.  *See, e.g., id.* ¶¶ 102–103, 105.  Shao alleges that a final custody order depriving her of the custody of her daughter was eventually entered in November 2013.  *See id.* ¶¶ 122.

At various points during the litigation, Shao appealed orders of the Superior Court.  *E.g. id.* ¶¶ 109–13, 128–29, 138.  Shao's appeals went first to the California Sixth District Court of Appeal, then to the California Supreme Court, and for some to the United States Supreme Court.  *E.g. id.* ¶¶ 128–29.  Shao attributes the denial of her appeals at all appellate levels to a conspiracy between the McManis Defendants and the judges and justices involved, again facilitated by the platform for corruption offered by the American Inns of Court.  *E.g. id.* ¶ 109–13.

**2.  Malpractice Suit Against the McManis Defendants and Prefiling Injunction**

After Shao fired the McManis Defendants, she brought suit against them for malpractice in 2012.  *Id.* ¶ 141.  The case was dismissed, and Shao refiled a malpractice suit against the McManis Defendants in federal court in 2014.  *Id.* ¶ 142.  Judge Lucy Koh dismissed the federal suit and the dismissal was affirmed on appeal.  *Id.* ¶ 145.  As with previous judicial decisions going against her, Shao alleges that the judges involved all conspired with the McManis Defendants to ensure she would not succeed, "through the influence [the McManis Defendants] wield through their powerful giant social club The American Inns of Court."  *Id.*  Following the dismissal of her federal case, Shao moved to set aside the dismissal of her state malpractice suit.

*Id.* ¶ 146.  The McManis Defendants responded by moving to declare Shao a vexatious litigant under California law, and by asking for a prefiling injunction to issue against her.  *See id.* ¶ 147. The Superior Court granted the motion and issued a pre-filing injunction against Shao.  *See id.*

### 3. Continued Litigation in the Custody Case and Alleged Hacking

In the past five years, Shao has extensively litigated her custody case.  *See generally id.* ¶¶ 156–256.  Shao alleges that the McManis Defendants have continued to conspire to deprive her of the custody of her daughter, in a scheme involving the judges issuing decisions in her cases, third parties connected to the litigation, and Wang and his attorney.  *See id.*  Shao places the McManis Defendants at the center of the conspiracy, allegedly using their various relationships and the connections they made through the American Inns of Court to "ensure that SHAO not regain custody of her child . . . [and] maintain[] their no causation defense to malpractice."  *Id.* ¶¶ 159–160.  She alleges that various California judicial defendants "knowingly misused the vexatious litigant order" fraudulently obtained by the McManis Defendants to block motions in her custody case.  *E.g. id.* ¶ 219.  She believes that the many judges involved in her case have engaged in a wide range of improprieties, including issuing secret *ex parte* communications and court orders, illegally altering case dockets, and failing to docket or maliciously dismissing her motions without review.  *See, e.g.*, *id.* ¶¶ 159–208.  And she alleges that the McManis Defendants organized "the same scheme of illegal notice, alteration of docket and deterrence" in the United States Supreme Court, again through secret, corrupt connections they made there through the American Inns of Court.  *See id.* ¶¶ 257–58.

At some point in 2018, Shao "started posting on Youtube several radio show videos . . . about the judicial corruption going on in her cases."  *Id.* ¶ 305.  In response, Shao alleges that Google and Youtube conspired with the McManis Defendants and Chief Justice Roberts to

harass her, *see id.* ¶¶ 305–14, including by deleting comments on her Youtube videos, *id.* ¶ 306, suspending her Google e-mail accounts, *id.* ¶ 307, having vehicles follow her, *id.* ¶ 308, putting her under electronic surveillance, *id.* ¶ 313, and hacking her computer, cell phone, and office phone, *id.* ¶¶ 310–12. Shao attributes Google's decision to conspire with Chief Justice Roberts to a favorable decision he purportedly issued in a pending case Google had before the Supreme Court. *See id.* ¶ 314. Aside from their conspiracy with Google, Youtube, and Chief Justice Roberts, Shao also alleges that the McManis Defendants arranged for hackers to infiltrate her computer and alter or destroy files relating to her pending cases. *See id.* ¶¶ 315–19.

### 4. Procedural History of This Case

Shao brought the instant case on May 21, 2018. *See* Compl. at ¶ 1, ECF No. 1. In her amended complaint, filed on June 29, 2018, Shao brings claims against sixty-seven named defendants: the McManis Defendants; the American Inns of Court, the Honorable William A. Ingram American Inn of Court, and the San Francisco Bay Area American Inn of Court (the "American Inn Defendants"); the McManis Defendants' attorney in the malpractice action, Janet Everson; United States Supreme Court Justices and clerks (the "Supreme Court Defendants");[3] judges and employees of the United States Judiciary (the "Federal Judicial Defendants");[4] members of Congress and several Congressional entities (the "Congressional Defendants");[5]

---

[3] The Supreme Court Defendants include the United States Supreme Court; Chief Justice John G. Roberts; Justice Clarence Thomas; Justice Ruth Bader Ginsburg; Justice Stephen Breyer; Justice Samuel Alito; Justice Sonia Sotomayor; Justice Elena Kagan; and Supreme Court clerks Jordan Bickell and Jeff Atkins.

[4] The Federal Judiciary Defendants include Judge Koh; Judge Clifford J. Wallace; Judge Rudolph Contreras; and Jackie Francis, a clerk at the U.S. District Court for the District of Columbia.

[5] The Congressional Defendants include the U.S. House Judiciary Committee; the U.S. Senate Judiciary Committee; Representative Eric Swalwell; and Senator Diane Feinstein.

former California Superior Court Judge Edward Davila and a large number of other judges and employees of the California judicial system (together, the "California Judicial Defendants");[6] retired Justice of the California Sixth District Court of Appeal Conrad Rushing; the County of Santa Clara and several of its employees (the "Santa Clara Defendants");[7] Google and Youtube (the "Google Defendants"); and Wang, Sussman, Fadem, and several third parties who were at some point or another involved in the custody action.[8]

Most of the defendants have now moved to dismiss, including the McManis Defendants; Everson; the American Inn Defendants; the California Judicial Defendants; the Santa Clara Defendants; the Google Defendants; custody evaluator John Orlando; psychologist Carol Tait-Starnes; alleged hacker Esther Chung; Fadem; and Fadem's replacement as guardian *ad litem* for Shao's daughter, Elise Mitchell. *See* Docket, *Shao v. Roberts*, No. 18-cv-1233-RC (D.D.C.). Shao has separately moved to strike a large number of motions and for judicial notice of a wide variety of facts. *See id.*

---

[6] The California Judiciary Defendants include the Supreme Court of California and its Chief Justice Tani G. Cantil-Sakauye; the California Sixth District Court of Appeal and several of its justices, Justice Mary J. Greenwood, Justice Patricia Bamattre-Maoukian, Justice Franklin Elia, Justice Adrienne M. Grover, Justice Eugene Premo; the Clerk's Office of the California Sixth District Court of Appeal; the Superior Court of California, Santa Clara County and several of its judges, Judge Maureen Folan, Judge Mary Ann Grilli, Judge Peter Kirwan, Judge Patricia Lucas, Judge Beth McGowen, Judge Rise Pichon, Judge Joshua Weinstein, Judge Theodore Zayner, and former Judge Edward Davila; Gregory Salvidar, Commissioner of the Superior Court of California, Santa Clara County; and several employees of the Superior Court of California, Santa Clara County, Rebecca Delgado, Lisa Herrick, Jill Sardeson, Sarah Scofield, Susan Walker, and David Yamasaki.

[7] The Santa Clara Defendants include the County of Santa Clara (named in the Complaint through its Department of Family and Children's Services and Department of Child Support Services) and employees Misook Oh, Darryl Leong, and Mary L. Murphy.

[8] Additional defendants include John Orlando, a custody evaluator appointed by the Superior Court after the 2010 expedited custody order; Carole Tait-Starnes, Wang and Shao's minor daughter's psychologist; Elise Mary Mitchell, the guardian *ad litem* for Shao's daughter after Fadem withdrew; and two alleged hackers, Kevin L. Warnock and Esther Chung.

Shao also moved to disqualify this Court and for a change of venue on July 6, 2018, followed by a motion to stay these proceedings on August 5, 2018. *See* Pl.'s First Mot. Disqualify at 1, ECF No. 19; Pl.'s Mot. Stay at 1, ECF No. 42. The Court denied both motions on August 8, 2018. *See Shao v. Roberts*, No. 18-cv-1233-RC, ECF No. 48, slip op. at 1 (D.D.C. Aug. 8, 2018). On December 4, 2018, Shao filed a renewed motion to disqualify this Court and for change of venue. *See* Pl.'s Second Mot. Disqualify at 1, ECF No. 142.

All motions to dismiss and the renewed motion for disqualification are now ripe for review.

### III. ANALYSIS

The Court first reviews Shao's renewed motion to disqualify and to change venue, before addressing the pending motions to dismiss and the remaining claims against the non-moving defendants. Because it restates much of the same arguments as her first motion, the Court denies the renewed motion to disqualify and to change venue. And because the Court finds that all of Shao's claims should be dismissed on the basis of either personal jurisdiction or subject matter jurisdiction, the Court grants the motions to dismiss, *sua sponte* dismisses all remaining claims, and denies all other pending motions as moot.

### A. Motion to Disqualify and for Change of Venue

Before reviewing the pending motions to dismiss, the Court briefly addresses Shao's renewed motion to disqualify and for change of venue. Shao brings her renewed motion pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455. *See* Pl.'s Mem. Supp. Second Mot. Disqualify at 20, ECF No. 142-1. Because Shao's motion reasserts much of the same arguments brought in her first motion, the Court denies the renewed motion.

First, Shao's motion to disqualify this court pursuant to 28 U.S.C. § 144 fails to comply with the requirements of § 144, and thus must be denied. Section 144 provides that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144. As the Court explained in its opinion denying Shao's motion to stay, "submitting an affidavit to the Court under this provision does not yield automatic recusal of the judge on the matter," *Williams v. New York City Housing Auth.*, 287 F. Supp. 2d 247, 248 (S.D.N.Y 2003). Rather, the Court may deny the motion if the affidavit or the motion itself are procedurally deficient. *See Shao*, No. 18-cv-1233-RC, slip op. at 11.

Shao's § 144 motion is deficient in a number of ways. As an initial matter, this is Shao's second such motion, when 28 U.S.C. § 144 clearly indicates that "[a] party may file only one such affidavit in any case." *Id.* Shao's § 144 motion should be denied on this basis alone. In addition, as with her motion to stay, Shao's affidavit is not "accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144. The Court explained in its August 5, 2018 opinion that *pro se* parties are not excused from filing an attorney certification in support of a § 144 motion and affidavit. *See Shao*, No. 18-cv-1233-RC, slip op. at 12. In this renewed motion, Shao argues that several courts have considered § 144 motions made by *pro se* plaintiffs despite the lack of a certification of good faith by counsel of record, *see* Pl.'s Mem. Supp. Second Mot. Disqualify ("Pl.'s Second Mem. Supp."), ECF No. 142-1, at 21 (citing *Williams*, 287 F. Supp. 2d at 249; *Melvin v. Social Sec. Admin.*, No. 5:09-cv-235-FL, 2010 WL 3743543, at *2 (E.D.N.C. Sept. 14, 2010)), or with certification only by "any member of the

bar," when she is a member of the California Bar, *see id.* (citing *United States v. Rankin*, 1 F.

Supp. 2d 445, 450 (E.D. Pa. 1998)). Shao's arguments are unavailing. First, these decisions are

from outside this circuit and not binding on this Court, and most courts to have addressed the

issue have required the certification by counsel of record for *pro se* § 144 motions. *See Shao*,

No. 18-cv-1233-RC, slip op. at 12. Second, *Rankin* is inapplicable to Shao's situation because

the court there accepted the certification of "any member of the bar *of the court.*" *Rankin*, 1 F.

Supp. 2d at 450 (emphasis added). Shao is not a member of the bar of this Court. And finally,

the *Williams* court emphasized that the plaintiff's affidavit, "submitted pro se and without a

certificate of counsel of record, fail[ed] on this threshold matter." *Williams*, 287 F. Supp. 2d at

249.[9]

      Shao's renewed motion for disqualification under 28 U.S.C. § 455 fares no better. To the

extent Shao's § 144 affidavit sets forth the factual allegations forming the basis for that motion,

it alleges much of the same type of behavior the Court already determined not to warrant recusal

---

[9] The court in *Melvin* proceeded to review the arguments made in a deficient affidavit "in
the spirit of the liberality afforded to pro se litigants." *Melvin*, 2010 WL 3743543, at *2. Even
were this Court to do so here, Shao's affidavit would still be procedurally deficient as untimely
and inadequately supported by facts. "Courts 'have required the affidavit to be filed at the
earliest moment,'" and the D.C. Circuit has explained that "the timeliness requirement is
'[c]rucial to the integrity of the judicial process,' as it 'ensures that a party may not wait and
decide whether to file based on whether he likes subsequent treatment that he receives.'"
*Klayman v. Judicial Watch, Inc.*, 278 F. Supp. 3d 252, 256 (D.D.C. 2017) (quoting *S.E.C. v.
Loving Spirit Found., Inc.*, 392 F.3d 486, 492 (D.C. Cir. 2004)). Shao's re-filing of a motion and
affidavit almost four months after this Court found the first motion to be deficient is thus
untimely. And while the Court must accept the factual allegations in a § 144 affidavit as true,
"the affidavit 'must state facts as opposed to conclusions, and while the information and belief of
the affiant as to the truth of the allegations are sufficient, mere rumors and gossip are not
enough.'" *Id.* at 257 (quoting *United States v. Hanrahan*, 248 F. Supp. 471, 475 (D.C. Cir.
1965)). Because Shao's allegations of corruption are all based on speculation and legal
conclusions derived from regularly conducted administration of this case's docket, *see* Pl.'s
Second Mem. Supp. at 22–29, her affidavit does not set forth a legally sufficient basis for
disqualification.

in its August 5, 2018 opinion.  As discussed in that opinion, a judge is required to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  In reviewing a § 455(a) challenge, the Court must objectively analyze whether a "reasonable and informed observer would question the judge's impartiality."  *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001).  "[T]he mere appearance of bias is sufficient to mandate recusal—whether there is actual bias is irrelevant."  *Philip Morris USA, Inc. v. United States FDA*, 156 F. Supp. 3d 36, 49 (D.D.C. 2016).  In addition, pursuant to § 455(b)(1), a judge must also recuse himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C.S. § 455(b)(1).  Unlike § 455(a), recusal under § 455(b)(1) requires the movant to "demonstrate actual bias or prejudice based upon an extrajudicial source."  *Cobell v. Norton*, 237 F. Supp. 2d 71, 98 (D.D.C. 2003).  And finally under § 455(b)(5)(i), a judge can be disqualified for being a party to the proceeding.  28 U.S.C. § 455(b)(5)(i).

Neither § 455(a) nor § 455(b)(1) warrant recusal based on the allegations Shao brings in this renewed motion because, as this Court noted in its August 8, 2018 opinion, Shao only offers "bald allegations of a conspiracy," Shao, No. 18-cv-1233-RC, slip op. at 8, that neither create the appearance of partiality nor provide evidence of actual bias.  Shao reasserts many of the allegations in her initial motion, including that the Court purposefully interfered with filing, docketing, and the issuance of summonses and default judgment, *see* Pl.'s Second Mem. Supp. at 27–29, engaged in improper *ex parte* communications with some of the parties, *id.* at 25, and improperly named the case *Shao v. Kennedy* instead of *Shao v. Roberts*, purportedly to shield Justice Roberts from public exposure, *see id.* at 28.  Shao also makes additional allegations of interference with filing, docketing, and the general administration of her case since the Court's

August 8, 2018 opinion.  *See generally id.* at 25–29.  As the Court explained in that opinion, Shao provides "no factual matter to form a basis for those allegations," and instead "bases her allegations on purely speculative conspiracy."  *Shao*, No. 18-cv-1233-RC, slip op. at 8.  Shao reads the clerical discrepancies between court documents and her communications with the Court, and supposedly irregular timing of the issuance of summonses and clerk's defaults, to imply a broader conspiracy this Court is a part of to deny her justice.  These allegations do not create an appearance of impropriety under § 455(a) because they offer "no facts that would fairly convince a sane and reasonable mind to question this Court's impartiality."  *Walsh v. Comey*, 110 F. Supp. 3d 73, 77 (D.D.C. 2015).  Because they offer no evidence of bias, the allegations also do not require recusal under § 455(b)(1).

Similarly, § 455(b)(5)(i) does not warrant this Court's recusal.  As the Court noted in its August 5, 2018 opinion, multiple courts have "made clear that disqualification is patently unwarranted" in the circumstances where a plaintiff amends a complaint to add the assigned judge as a defendant in an attempt at judge-shopping.  *See Shao*, No. 18-cv-1233-RC, slip op. at 9–10 (citing cases).  And the Court also noted that Shao's amendment adding claims against this judge were "very clearly an attempt at judge-shopping."  *Id.* at 9.  In this renewed motion, Shao again argues that her claims against this judge, and the threat of default they pose, warrant recusal.  *See* Pl.'s Second Mem. at 22–25.  For reasons already elaborated on in the August 5, 2018 opinion, the Court rejects that argument.

Finally, Shao renews her request to disqualify the D.C. Circuit, the Third Circuit, and the U.S. District Courts in Delaware, Pennsylvania, Virginia, and New Jersey because this judge has professional and personal ties to those jurisdictions, and to transfer her case to New York.  *See id.* at 25; *Shao*, No. 18-cv-1233-RC, slip op. at 10.  The Court denies that request for the same

reasons it denied the request in Shao's first motion to change venue. "Shao's conspiratorial allegations are . . . an attempt to judge-shop and a vehicle to express her dissatisfaction with the timeliness of this action," and are "insufficient . . . to transfer her case to New York." *Shao*, No. 18-cv-1233-RC, slip op. at 10.

## B. Personal Jurisdiction

Next, several defendants have moved to dismiss Shao's claims against them for lack of personal jurisdiction. After briefly going over the legal standards on a motion to dismiss for lack of personal jurisdiction, the Court analyzes in turn motions to dismiss by the California Judicial Defendants, the McManis Defendants, the Santa Clara Defendants, Janet Everson, Esther Chung, and Carole Tait-Starnes.

## 1. Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure directs a court to dismiss an action when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing that a court has personal jurisdiction. *See FC Inv. Grp. LC v. IFX Mkts., Ltd.,* 529 F.3d 1087, 1091 (D.C. Cir. 2008). Factual discrepancies must be resolved in favor of the plaintiff, but the court is not required to accept a plaintiff's "conclusory statements" or "bare allegations" regarding the defendant's actions in a selected forum. *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000).

There are two types of personal jurisdiction: general (sometimes called "all-purpose") jurisdiction and specific (sometimes called "action-linked") jurisdiction. Both types are independently sufficient for a court to exercise personal jurisdiction over a party. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a

corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."
*Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). A court with general jurisdiction over a defendant "may hear *any* claim against that defendant, even if all the incidents occurred in a different State." *Id.* (quoting *Goodyear*, 564 U.S. at 919).

By contrast, specific jurisdiction requires that the suit "arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers*, 137 S. Ct. at 1780 (internal citations omitted). To exercise specific personal jurisdiction over a non-resident, the court must engage in a two-step analysis to determine (1) whether jurisdiction is appropriate under the state's long-arm statute and (2) whether notions of due process are satisfied by exercising jurisdiction over the non-resident. *GTE New Media Servs.*, 199 F.3d at 1347. The D.C. long-arm statute, in pertinent part, provides that the District of Columbia may exercise personal jurisdiction over a person for claims for relief for "causing tortious injury in the District of Columbia," including "causing tortious injury . . . by an act or omission outside the District Columbia if [the person] regularly does or solicits business, [or] engages in any other persistent course of conduct" in the District of Columbia. D.C. Code § 13-423(a).

Due process requires a plaintiff to demonstrate "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). These contacts must be grounded in "some act by which the defendant purposefully avail[ed] itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). That is, "the defendant's conduct and connection with the forum State [must be] such

that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Creighton Ltd. v. Gov. of the State of Qatar*, 181 F.3d 118, 127 (D.C. Cir. 1999) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

## 2. Application to Shao's Complaint

In response to motions to dismiss by the moving defendants, Shao argues that the Court has specific jurisdiction over each because all of the California-based defendants engaged in a common conspiracy with D.C.-based defendants. As detailed below for each moving defendant, the Court disagrees. Conspiracy jurisdiction is "a form of long-arm jurisdiction in which the defendant's 'contact' with the forum consists of the acts of the defendant's co-conspirators within the forum." *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 78 (D.D.C. 2004). However, the minimum requirements of due process cannot be "sidestepped under the guise of conspiracy jurisdiction." *Id.* at 80 n.5. Accordingly, "'[b]ald speculation' or a 'conclusory statement' that individuals are co-conspirators is insufficient to establish jurisdiction under a conspiracy theory." *Jungquist v. Shelkh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (quoting *Naatex Consulting Corp. v. Watt*, 722 F.2d 799, 787 (D.C. Cir. 1983)). Even when personal jurisdiction is based on a conspiracy theory, purposeful availment is still required. *Youming Jin*, 335 F. Supp. 2d at 80. To meet this requirement, the plaintiff must assert with particularity "the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Jungquist*, 115 F.3d at 1031 (quoting *Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 78 (D.D.C. 1992)). Here, Shao has failed to allege specific facts beyond "bare

assertions" to meet her burden of establishing that each of the moving defendants purposefully availed themselves of the District of Columbia by conspiring with D.C.-based defendants, and the Court thus cannot properly exercise personal jurisdiction over the moving defendants.

### a. The California Judicial Defendants

Shao's claims against the California Judicial Defendants are barred for lack of personal jurisdiction. In their motion, the California Judicial Defendants argue that they are all residents of California alleged to have acted wrongfully through California state court decisions, and that Shao has not pointed to any act committed within the District of Columbia that would warrant the exercise of personal jurisdiction. *See* California Judicial Defs.' Mem. Supp. Mot. Dismiss at 4–5, ECF No. 31. Shao does not contest that the California Judicial Defendants are residents of California. *See generally* Am. Compl. ¶¶ 5–85. She likewise does not contest that all the alleged actions relating to them were acts in California courts by California judicial officers or judicial employees of the state of California. *See generally id.* ¶¶ 86–320 . Shao argues that personal jurisdiction should nonetheless be extended to the California Judicial Defendants because of their alleged conspiracy with defendants who are subject to personal jurisdiction in the District of Columbia. *See* Pl.'s Opp'n California Judicial Defs.' Mot. Dismiss ("Pl.'s California Judicial Defs. Opp'n) at 14–20, ECF No. 43. Because Shao offers no more than bare assertions that the California Judicial Defendants are engaged in a conspiracy, the Court dismisses her claims against those defendants.

Shao argues for jurisdiction over the California Judicial Defendants because the injuries she suffered were "anticipated by the California defendants to be within the jurisdiction as part of the common scheme of conspiracies." Pl.'s California Judicial Defs. Opp'n at 14. She argues that the California Judicial Defendants had minimum contacts through a "common scheme" of conspiracies with, *inter alia*, the McManis Defendants and the Supreme Court Defendants, and

thus that they are subject to personal jurisdiction in the District of Columbia because "many defendants worked in D.C." *Id.* at 14–15. And she contends that the California Judicial Defendants were on notice of a potential suit because they received mailed notice that the United States Supreme Court denied her requests for review of California judicial decisions. *See id.* at 14. This argument is unpersuasive and ignores the purposeful availment requirement of personal jurisdiction.

Even construing Shao's assertions liberally, her argument merely presents conclusory statements about the alleged conspiracy without alleging any specific facts. For example, Shao alleges that the "Santa Clara County Court, California Sixth District Court of Appeal and California Supreme Court and the named justices/judges . . . plotted to stall Plaintiff's access to the courts and access to appeals." Pl.'s California Judicial Defs. Opp'n at 15. She similarly states in the amended complaint that the California Defendants engaged in a "scheme of illegal notice, alteration of docket and deterrence" in coordination with the United States Supreme Court. Am. Compl. ¶ 257. But beyond these conclusory assertions purporting to explain the wrongful denials of her various appeals, Shao does not allege any concrete facts to show that the California Judicial Defendants were engaged in a wide-ranging conspiracy, much less one involving individuals in the District of Columbia. Shao's amended complaint simply goes through the procedural history of her various cases and concludes from the many decisions she disagrees with that the California Judicial Defendants must have conspired with defendants based in D.C.—the Supreme Court Defendants, Congressional Defendants, this Court, and Francis—to continue denying her custody of her child. Shao summarily asserts that "any reasonable attorney or member of the public . . . would believe that there was a conspiracy." *Id.* ¶ 184; *see also id.* ¶¶ 296–97 (concluding from Supreme Court Justices' failure to recuse

themselves from ruling on her cases that they must have "conspired in one accord not to perform their Constitutionally imposed duty to decide on the . . . Requests for Recusal"). Accordingly, Shao's conspiracy argument presents nothing more than bald speculation that must be rejected by this Court. *See Jungquist*, 115 F.3d at 1031. The California Judicial Defendants' motion to dismiss is granted.

### b. The McManis Defendants

Next, the McManis Defendants also move to dismiss Shao's complaint for lack of personal jurisdiction. *See generally* McManis Defs.' Mot. Dismiss, ECF No. 65. In response, Shao seeks to strike the motion to dismiss for failure to respond to the Amended Complaint within the required twenty-one-day deadline specified by Fed R. Civ. P. 12. *See* Pl.'s Mot. Strike McManis Defs.' Mot. Dismiss, ECF No. 81. Because Shao has failed to meet her burden of proving proper service, the Court denies her motion to strike. And because Shao does not allege facts that show sufficient minimum contacts with the District of Columbia, the Court grants the McManis Defendants' motion to dismiss for lack of personal jurisdiction.

### i. Motion to Strike

In her motion to strike, Shao argues that the McManis Defendants' motion to dismiss should be stricken as untimely because it was not filed within the 21 days required under Fed. R. Civ. P. 12, or by August 10, 2018, and instead was filed on August 24, 2018. *See* Pl.'s Mem. Supp. Mot. Strike, ECF No. 81-1. The McManis Defendants retort that the motion to dismiss was timely because Shao never properly served her amended complaint. McManis Defs.' Opp'n Mot. Strike, ECF No. 98. The Court agrees.

Under the Federal Rules of Civil Procedure, a defendant must respond to a complaint within 21 days. Fed. R. Civ. P. 12(a)(1)(A)(i). However, this twenty-one-day period does not

begin until the defendant is properly served. *See Mann v. Castiel*, 681 F.3d 368, 373 (D.C. Cir. 2012). The plaintiff bears the burden of demonstrating that the defendant has been sufficiently served. *See Roland v. Branch Banking & Tr. Corp.*, 149 F. Supp. 3d 61, 64 (D.D.C. 2015). "[T]o do so, [s]he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Id.* at 64–65 (quoting *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)). If the summons is not delivered personally or to an individual's usual place of abode, Rule 4 requires that it be served by "delivering a copy of [the summons] to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e) (2). A signed return of service "constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." *Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 85-86 (D.D.C. 2009) (citing *O'Brien v. R.J. O'Brien Assocs., Inc.*, 998 F. 2d 1394, 1398 (7th Cir. 1993)).

Here, the McManis Defendants present "strong and convincing evidence" that Shao has failed to properly serve the complaint. Shao asserts that her agent properly served the McManis Defendants, citing the proof of service filed with the court. *See* Pl.'s Mem. Supp. Mot. Strike at 3. The proof of service notes that the summonses were left with two McManis Faulkner employees, "[a] lady who is slander [sic] with golden hair" and "another male, less than 5' 6" with black hair wearing glasses," both of whom allegedly claimed to be authorized to accept service. Return of Service at 1, ECF No. 74. However, the name of these individuals or their signature are not included. *See id.* Rather, the proof of service is signed by Shao's agent, Peychen Young, because both individuals "refused to sign receipt nor giving out [sic] their names." *Id.*

This admission alone suggests that Shao has failed her burden to establish sufficient service of process on the McManis Defendants. The employees in question deny that they ever told Shao's agent they were authorized to accept service, Declaration of Manuel Carvajal ¶¶ 4–6, McManis Defs.' Opp'n Mot Strike Ex. 1, ECF No. 98-1; Declaration of William Faulkner ¶¶ 3–4, McManis Defs.' Opp'n Mot Strike Ex. 2, ECF No. 98-2, and the fact that they refused to sign receipt of the complaint further casts doubt on Shao's agent's assertion that they claimed to be authorized to accept service. In any event, "claims by an agent of having authority to receive process or the fact that an agent actually accepts process is not enough to satisfy the service requirements of Rule 4(e)(2)." *Fenwick v. United States*, 691 F. Supp. 2d 108, 113 (D.D.C. 2010) (internal citations omitted); *see also Schwarz v. Thomas*, 222 F.2d 305, 308 (D.C. Cir. 1955) (finding that statements of alleged agents are not sufficient evidence of authority to accept process). Rather, if the summons is left with an agent, that agent must be "authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Here, both the McManis Defendants and the employees involved deny that the employees were authorized to accept service of process. *See* McManis Defs.' Opp'n Mot Strike at 3. Thus, the Court finds that Shao has failed to make proper service upon the McManis Defendants, and the motion to quash is denied.[10]

_____

[10] Even if it found that the McManis Defendants' motion to dismiss was untimely, the Court would still grant leave to file the motion *nunc pro tunc* because of the strong preference for resolving disputes on the merits rather than on purely procedural grounds. *See, e.g.*, *Hawkins v. Washington Metropolitan Area Transit Auth.*, 311 F. Supp. 3d 94, 102 (D.D.C. 2018) (noting "the Federal Rules of Civil Procedure's 'clear preference to resolve disputes on their merits'" (quoting *Cohen v. Bd. Of Trustees of the Univ. of Dist. of Columbia*, 819 F.3d 476, 482–83 (D.C. Cir. 2016))); *Acree v. Republic of Iraq*, 658 F. Supp. 2d 124, 128 (D.D.C. 2009) ("[B]ecause there is a strong preference for resolving disputes on the merits, district courts may, in appropriate circumstances, exercise their discretion against denying a motion on purely procedural grounds." (citing cases)).

ii. Personal Jurisdiction

Similarly to the California Judicial Defendants, the Court cannot exercise personal jurisdiction over the McManis Defendants because Shao has failed to show that they have sufficient minimum contacts with the District of Columbia. Shao acknowledges that the McManis Defendants are residents of California for the purposes of personal jurisdiction. *See* Am. Compl. ¶¶ 27–29. Likewise, the Amended Complaint makes clear that her claims against the McManis Defendants arise out of a custody dispute and malpractice suit which occurred in state and federal court in California. *See generally* Am. Compl. However, while Shao did not file an opposition to the McManis Defendants' motion to dismiss, the amended complaint also makes clear that, as with the California Judicial Defendants, she believes the McManis Defendants engaged in a conspiracy with D.C.-based defendants over whom this Court does have personal jurisdiction. Shao alleges in the Amended Complaint that McManis "aided and abetted the . . . irregularities that took place in the US Supreme Court" with respect to her cases and "likely . . . was influencing Judge Contreras to deter SHAO from suing his judicial friends." *Id.* ¶ 27. She similarly alleges that all three McManis Defendants conspired with Chief Justice Roberts to harass her. *Id.* ¶¶ 304–05.

As with the California Judicial Defendants, Shao fails to assert any facts beyond conclusory assertions to support her allegations of conspiracy. Shao does not point to *any* evidence that could link the McManis Defendants to D.C.-based defendants, and instead summarily concludes that they "appeared to conspire," *id.*, from the various legal decisions adverse to her over the past eight years. Without more, Shao has not demonstrated the required purposeful availment and this Court does not have personal jurisdiction over the McManis

Defendants. Accordingly, the McManis Defendants' motion to dismiss for lack of personal jurisdiction is granted.

### c. The Santa Clara Defendants

The Court also does not have personal jurisdiction over the Santa Clara Defendants. The Amended Complaint acknowledges that Leong, Murphy, and Oh are employees in Santa Clara County, and that the Santa Clara Defendants are California residents who allegedly caused her injuries through legal proceedings in California state court. *See* Am. Compl. at ¶¶ 56–57; 61–63. Shao nonetheless claims that this Court has personal jurisdiction over the Santa Clara Defendants because they were "co-conspirators in the common scheme of permanent parental [deprival]" involving D.C.-based defendants. Pl.'s Opp'n to Santa Clara Defs.' Mot. Dismiss ("Pl.'s Santa Clara Opp'n") at 5, ECF No. 135. But, as the Santa Clara Defendants point out in their reply, "Shao must allege *specific, plausible facts* connecting the [Santa Clara] Defendants to a conspiracy to establish personal jurisdiction over them." Santa Clara Defs.' Reply at 2, ECF No. 139 (emphasis added). Shao has not done so here when, aside from summarily concluding that the Santa Clara Defendants were part of a "common scheme to rob away Plaintiff's child custody illegally," Pl.'s Santa Clara Opp'n at 8, she does not point to any facts that would indicate the Santa Clara Defendants' involvement in a conspiracy involving defendants based in D.C. Accordingly, the Court must grant the Santa Clara Defendants' motion to dismiss for lack of personal jurisdiction.

### d. Janet Everson

Likewise, Shao's claims against Janet Everson are barred by lack of personal jurisdiction. Everson argues that the Amended Complaint makes "no allegations connecting [her] to the District of Columbia." Everson Mot. Dismiss at 3, ECF No. 45. In response, Shao again asserts

personal jurisdiction over Everson based on a conspiracy theory of personal jurisdiction.  *See* Pl.'s Opp'n Everson Mot. Dismiss ("Pl.'s Everson Opp'n") at 3–9, ECF No. 88.  However, Shao fails to allege any specific facts beyond conclusory assertions to indicate that Everson should be subject to personal jurisdiction in the District of Columbia.  The Amended Complaint recognizes that Everson is a resident of California and that the asserted claims against her arise out of a legal dispute in state and federal courts located in California.  *See generally* Am. Compl.  Shao's basis for extending personal jurisdiction over Everson is her alleged "active participation of [sic] the common scheme to continuously rob away Plaintiff's child custody illegally," Pl.'s Everson Opp'n at 6, when the conspiracy involves "a group of defendants . . . in California and a group of defendants . . . in the District of Columbia," *id.* at 8.  But as with the California Judicial Defendants, Shao alleges no specific facts to support her conclusion that Everson conspired with D.C.-based defendants, and the argument must thus be rejected by this court.  Accordingly, all claims against Everson are dismissed for lack of personal jurisdiction.

### e.  *Esther Chung*

Shao's claims against Esther Chung are also barred by lack of personal jurisdiction.  In the Amended Complaint, Shao only indicates that Chung is a California resident, Am. Compl. ¶ 69, who "severely hacked" into her files, *id.* ¶ 315.  Accordingly, Chung argues in her motion to dismiss that Shao "does not plead any facts showing that [Chung] . . . has any contacts with the District of Columbia," and thus that the Court does not have personal jurisdiction over her. Chung Mot. Dismiss at 4, ECF No. 80.  Shao again asserts conspiracy jurisdiction to claim personal jurisdiction over Chung, arguing that "[t]here is undoubtedly substantial connection of this forum to the complained conspiracies based on [Chung]'s active participation of [sic] the

common scheme [of parental deprival]." Pl.'s Opp'n to Chung Mot. Dismiss at 11, ECF No. 104.

However, as with the other moving defendants, Shao has failed to allege specific facts that support her allegations of a conspiracy. Shao alleges in the Amended Complaint that "3,000 files on three laptops of hers had been severely hacked by three specific individuals," including Chung, based on the fact that "the authors' names for these files were altered from SHAO's names to those individuals' names." Am. Compl. ¶ 315. Setting aside Shao's preposterous contention that a different author name for documents located on her computer necessarily indicates she was hacked—when any shared document modified by anyone could have resulted in a change to the author name field—Shao does not allege any facts to support a connection between Chung and the D.C.-based Defendants. Instead, she alleges that one of the so-called "hackers" "works closely with Intel Corp.," and that "Intel Corp. is closely connected with James McManis," thus creating the tie to the overall conspiracy. *Id.* at ¶ 316. Even viewing Shao's claims liberally, without more specific facts the Court cannot accept these "bald speculations" as the basis to find a conspiracy and to exercise personal jurisdiction over Chung. Accordingly, the Court grants Chung's motion to dismiss.

### f. Carol Tait-Starnes

Finally, Shao's claims against Carol Tait-Starnes are barred for lack of personal jurisdiction. The Amended Complaint is very sparse on allegations relating to Tait-Starnes, who is only alleged to have improperly participated in Shao's custody case as a psychologist for her child. *See* Am. Compl. ¶ 126. Again, the Amended Complaint acknowledges that Tait-Starnes is a California resident, *id.* ¶ 60, whose allegedly improper actions were taken in a California legal proceeding. Tait-Starnes argues in her motion to dismiss that the Court does not have personal

jurisdiction over her because all claims against her are based on actions that occurred in California, *see* Tait-Starnes Mot. Dismiss at 2, ECF No. 75-1, and Shao has not filed an opposition. The Court agrees with Tait-Starnes. To the extent Shao would have argued that Tait-Starnes is part of the same broader conspiracy Defendants are all alleged to have been a part of, the complete lack of facts relating to Tait-Starnes in the Amended Complaint—let alone to any connection she may have had to defendants based in D.C.—defeats that argument.

### C. Subject-Matter Jurisdiction

Next, the Court dismisses Shao's remaining claims for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction, and the law presumes that 'a cause lies outside this limited jurisdiction.'" *Morris v. United States Sentencing Comm'n*, 62 F. Supp. 3d 67, 72 (D.D.C. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Subject matter jurisdiction is a requirement that can never be waived. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Accordingly, "[w]hen a requirement goes to subject-matter jurisdiction, the courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez*, 565 U.S. at 141 (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Because Shao has proceeded *pro se*, the allegations in her complaint must be construed liberally. *E.g., Erikson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed'" (citations omitted)). However, "even a pro se plaintiff must meet his burden of proving that the Court has subject matter jurisdiction over the claims, including when the court raises the issue *sua sponte*." *Fontaine v. JPMorgan Chase, N.A.*, 42 F. Supp. 3d 102, 106 (D.D.C. 2014). Despite the requirement to liberally construe a pro se complaint, this "benefit is not [] a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009).

Here, the Court *sua sponte* dismisses all claims against all remaining defendants for lack of subject matter jurisdiction. First, this Court lacks subject matter jurisdiction over the claims for money damages against Judge Rushing and Francis on the basis of absolute judicial immunity. Next, this Court lacks subject matter jurisdiction over all remaining claims against the Supreme Court Defendants, the Federal Judicial Defendants, the Congressional Defendants, and Judge Rushing for lack of standing. The Court also lacks subject matter jurisdiction over claims against the American Inn Defendants, the Google Defendants, and Warnock because those claims are patently insubstantiable. And finally, the Court lacks subject matter jurisdiction over the aiding and abetting claims against Orlando, Fadem, Mitchell, Sussman, and Wang because these claims do not involve a federal question.

### 1. Absolute Judicial Immunity

Judge Rushing and Francis, who are sued for money damages, have not filed motions to dismiss. The Court dismisses the claims for money damages against these defendants *sua sponte* under the doctrine of absolute judicial immunity.

#### a. Legal Standard

It is well established that courts must dismiss complaints in a civil action in which a party "seeks monetary relief from a defendant who is immune from such a relief." 28 U.S.C. § 1915A(b)(2); *see also id.* § 1915(e)(2)(B)(iii). "Judges are absolutely immune from suits for money damages for 'all actions taken in the judge's judicial capacity, unless these actions are taken in complete absence of all jurisdiction.'" *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 17 (D.D.C. 2014) (quoting *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993)). "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Additionally, "a judge will not be

deprived of immunity because the action he took was in error, was done maliciously, or was in excess of authority." *Id.* In determining whether a judge was acting in his judicial capacity, courts should look to the "nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e. whether they dealt with the judge in his judicial capacity." *Mireless v. Waco*, 502 U.S. 9, 12 (1991) (*quoting Stump*, 435 U.S. at 362).

In addition, "[c]lerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process." *Thomas*, 61 F. Supp. 3d at 19 (quoting *Sindram*, 986 F.2d at 1460); *see also Roth v. King*, 449 F.3d 1272, 1287 (D.C. Cir. 2006) ("It is well established that judicial immunity 'extends to other officers of government whose duties are related to the judicial process'" (quoting *Barr v. Matteo*, 360 U.S. 564, 569 (D.D.C. 1959))). Tasks that are an integral part of the judicial process include a court administrator's "receipt and processing of a litigant's filings." *Sibley v. U.S. Supreme Court*, 786 F. Supp. 2d 338, 344 (D.D.C. 2011) (finding that the "receipt and processing of a litigant's filings are part and parcel of the process of adjudicating cases").

### b. *Claims for Money Damages Against Judge Rushing and Francis*

Shao brings claims for money damages against Judge Rushing and Francis. Because these claims involve acts solely taken in their judicial capacity, both benefit from absolute immunity, and the Court must accordingly dismiss Shao's claims for money damages against these two defendants.

First, Shao alleges in the Amended Complaint that Judge Rushing created a false docket entry in one of her cases, *see* Am. Compl. ¶¶ 31, 377, causing Shao to file "multiple motions in order to avoid her appeal[s] . . . to be dismissed [sic]," *id.* ¶ 377. Shao seeks $20,000 in damages

for attorney's fees and costs relating to those motions. *Id.* The court need not reach the merits of her allegations because a judge acting in his judicial capacity "will not be deprived of immunity because the action he took was done in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356. Here, Shao's allegations against Judge Rushing are all in connection with previous California state appellate litigation over which Judge Rushing was presiding. Thus, even read liberally, Shao's allegations involve "action[s] [Rushing] took . . . in error, . . . maliciously, or . . . in excess of his authority" in his official judicial capacity, *Stump*, 435 U.S. at 356, and Shao's claims for money damages are barred by absolute judicial immunity. The Court accordingly dismisses all claims for money damages against Judge Rushing for lack of subject matter jurisdiction.

Likewise, Shao seeks money damages against an employee of the Clerk's Office at the U.S. District Court for the District of Columbia, Jackie Francis, for "deterring filing and creating false docket [sic]," in violation of Shao's First Amendment rights. Am. Compl. ¶ 426. Shao alleges that these acts were not committed in an official capacity, and thus are not protected by judicial immunity. *See id.* However, even reading Shao's complaint liberally, Francis's alleged filing deterrence and creation of false docket entries qualify as "receipt and processing of a litigant's filing," and thus fall under the scope of actions that are an integral part of the judicial process. *See, e.g.*, *Reddy v. O'Connor,* 520 F. Supp. 2d 124, 130 (D.D.C. 2007) (holding that a "deputy clerk's alleged refusal to file documents [the] plaintiff submitted" was an action "quintessentially 'judicial' in nature because [it was] an integral part of the judicial process"). Accordingly, the allegations against Francis involve acts within her judicial capacity, and she is entitled to the protection of absolute judicial immunity on claims for money damages.

The Court dismisses all claims for money damages against Francis for lack of subject matter jurisdiction.

## 2. Standing

The Supreme Court Defendants, Federal Judicial Defendants, Congressional Defendants, and Judge Rushing have not filed motions to dismiss. However, this Court lacks the power to give Shao the relief she seeks on all remaining claims against these Defendants, and Shao thus fails the redressability requirement of standing. Because Shao lacks standing to bring her claims, the Court *sua sponte* dismisses all remaining claims against the Supreme Court Defendants, the Federal Judicial Defendants, the Congressional Defendants, and Judge Rushing for lack of subject matter jurisdiction.

### a. Legal Standard

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also, e.g.*, *Weaver's Cove Energy, LLC v. R.I. Dep't of Envtl. Mgmt.*, 524 F.3d 1330, 1334 (D.C. Cir. 2008) (dismissing action *sua sponte* for lack of standing); *Dorsey v. District of Columbia*, 747 F. Supp. 2d 22, 27 (D.D.C. 2010) (same). The party seeking to invoke the jurisdiction of a federal court bears the burden of establishing the elements of standing. *Huron v. Cobert*, 809 F.3d 1274, 1279 (D. C. Cir. 2016). First, the injured party "must have suffered an 'injury in fact.'" *Lujan*, 504 U.S. at 560. (citations omitted). An "injury in fact," requires the plaintiff to show "an invasion of a legally protected interest." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). The invasion must be both "concrete and particularized," *Lujan*, 504 U.S. at 560, and "'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Second, the injured party must show "a causal connection

between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. That is, the injured

party must show that the injury is "fairly …trace[able] to the challenged action of the defendant"

and not the result of "the independent action of some third party not before the court." *Id.*

Finally, standing requires a showing of redressability—"a likelihood that the requested relief will

redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).

Failing to establish any one of these three elements is sufficient to defeat the standing of an

injured party. *US Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

When reviewing whether an injured party has standing, the court must "analyze these elements

as if the plaintiffs were to be successful in their claim" rather than assessing the merits of the

claim. *McNeil v. Brown*, No. 17-cv-2602, 2018 WL 4623057, at *6 (D.D.C. Sept. 26, 2018)

(citing *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008)).

### b. Application to Shao's Claims

Shao lacks standing to bring her remaining claims against the Supreme Court Defendants,

Federal Judicial Defendants, Congressional Defendants, and Judge Rushing because this Court is

not capable of granting the relief she seeks. Because redressability evaluates whether the relief

requested is "likely [to] alleviate the particularized injury alleged," *West v. Lynch*, 845 F.3d

1228, 1235 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663-64 (D.C.

Cir. 1996)), it "requires that the court be able to afford relief through the exercise of its power,"

*Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992). Correspondingly, a plaintiff "must show

in the first instance that the court is capable of granting the relief they seek." *McNeil*, 2018 WL

4623057 at *6 (citing *Newdow v. Roberts*, 603 F.3d 1002, 1010-11 (D.C. Cir. 2000)); *see also*

*Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996) (explaining that redressability includes

consideration of "whether a federal court has the power to grant . . . relief"); *Lozansky v. Obama*,

841 F. Supp. 2d 124, 132 (D.D.C. 2012) (finding that plaintiffs' lacked standing because the court lacked authority to redress plaintiff's injury through requested relief for a writ of mandamus).

Even assuming that Shao were to be successful in establishing an injury-in-fact that is fairly traceable to the Supreme Court Defendants, Federal Judicial Defendants, Congressional Defendants, and Judge Rushing, this Court does not have the power to issue the remedy Shao seeks. The Court addresses in turn the claims against the Supreme Court Defendants, Federal Judicial Defendants, Congressional Defendants, and Judge Rushing.

### i. Supreme Court Defendants

Because Shao's requested relief asks this Court to exercise powers over the Supreme Court that it plainly does not have, the claims against the Supreme Court Defendants fail the redressability requirement of standing and cannot go forward.

First, Shao requests injunctive relief over the eight named Supreme Court Justices, including that they be ordered to disclose various potential conflicts of interests "on the Supreme Court website[;]" that they be ordered to disclose any gifts, scholarships, honoraria, and favors they may have received in connection with their relationship to the American Inn Defendants; and that they be enjoined from reviewing her appeals. Am. Compl. ¶ 350. Shao also requests that all Supreme Court Justices be impeached. *Id.* ¶ 348.

It is well established that a lower court does not have jurisdiction to compel the U.S. Supreme Court or its staff to review a case—or to take any action at all. *See, e.g.*, *In re Marin*, 956 F.2d 339, 340 (D.C Cir. 1992) ("[I]t seems axiomatic that a lower court may not order the judges or officers of a higher court to take any action." (quoting *Panko v. Rodak*, 606 F.2d 168, 171 n.6 (D.C. Cir. 1992))); *Reddy*, 520 F. Supp. 2d at 132 ("[T]he [lower court] plainly lacks

jurisdiction to compel official action by the U.S. Supreme Court justices or their staff."). Likewise, this Court also does not have the power to impeach a Supreme Court Justice. *See generally* U.S. Const. art. I, § 2, cl. 5 (delegating the "sole Power of Impeachment" to the House of Representatives). Because this Court lacks the power to issue the relief requested, both of Shao's requests for relief through injunction and impeachment will not be "likely [to] alleviate the particularized injury alleged." *West*, 845 F.3d at 1235 (quoting *Fla. Audubon Soc'y*, 94 F.3d at 663-64). Shao's requests for relief thus fail the redressability requirement of standing and her claims against the Supreme Court Justices must be dismissed for lack of subject matter jurisdiction.

Likewise, this Court does not have the power to impeach clerks of the Supreme Court, or to compel the Supreme Court to take any action toward its employees. Shao requests that clerks Bickell and Atkins be impeached for allegedly altering docket entries and conspiring to "disrupt or obstruct the normal function of the government unit, the Clerk's Office of the US Supreme Court." Am. Compl. ⁋ 348. This Court cannot give Shao the relief she seeks because it plainly does not have the power of impeachment. *See generally* U.S. Const. art. I, § 2, cl. 5. And even if this Court could declare impeachment, clerks of court are not appointed positions, and thus their removal would be an employment decision rather than an issue of impeachment. As is well established, the Supreme Court "has inherent supervisory authority over its Clerk." *Marin*, 956 F.2d at 340. Accordingly, the Supreme Court has the sole right "to correct the irregularities of its officer[s] and compel [them] to perform [their] duty," *id.* (quoting *Griffin v. Thompson*, 43 U.S. (2 How.) 244, 257 (1844)), and retains the sole power to remove Bickell or Atkins. *See also Reddy*, 520 F. Supp. 2d at 132 ("[T]he [lower court] plainly lacks jurisdiction to compel official

action by the U.S. Supreme Court justices or their staff.").  Shao's claims against Bickell and Atkins also fail the redressability requirement of standing and cannot move forward.

### ii.  Federal Judicial Defendants

Next, this Court also does not have the power to grant Shao's requested relief against the Federal Judicial Defendants.  Shao requests that this Court reverse the decisions, and declare the impeachment, of Judge Wallace, Am. Compl. ¶ 363, and Judge Koh, *id.* ¶ 359.  She further requests that this Court declare its own impeachment and impeach Francis.  *Id.* ¶ 426.  As discussed above, this Court does not have the power of impeachment.  *See generally* U.S. Const. art I, § 2, cl. 5.  Thus, even if the Court declared the impeachment of Judge Wallace and Judge Koh, that declaration would have no meaningful value and would not redress Shao's alleged injury.  Likewise, this Court does not have the authority to impeach itself or its clerks, and declaring the Court's own impeachment would have no value.  And finally, as to Shao's request that the Court invalidate Judge Wallace and Judge Koh's decisions in her cases, it is also well established that federal district courts do not have jurisdiction to reconsider decisions of other federal courts.  *See, e.g.*, *Atchison v. U.S. District Courts*, 190 F. Supp. 3d 78, 88 (D.D.C. 2016); *Fleming v. United States*, 847 F. Supp. 170, 172 (D.D.C. 1994).  Because they fail the redressability requirement of standing, Shao's claims against Judge Wallace, Judge Koh, Judge Contreras, and Jackie Francis cannot go forward.

### iii.  Congressional Defendants

Shao similarly lacks standing to bring a claim against the House Judiciary, the Senate Judiciary, Senator Feinstein, and Representative Swalwell because her requested relief cannot be redressed by this Court.  Shao asks that this Court declare that the House Judiciary Committee has a "duty to conduct a thorough investigation into crimes committed by [the] Supreme Court

Justices and Clerks and federal Court staffs." Am. Compl. ¶ 348. Shao further requests that this Court compel the House Judiciary Committee, the Senate Judiciary Committee, Senator Feinstein, and Representative Swalwell to impeach Judge Wallace, *id.* ¶ 362, and Judge Koh, *see id.* ¶ 359. As discussed above, this Court plainly does not have the power of impeachment. *See generally* U.S. Const. art I, § 2, cl. 5. Likewise, because that power is explicitly reserved for Congress, *see id.*, this Court does not have the power to compel Congress to impeach a sitting federal judge, *see, e.g.*, *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (finding no standing in action for writ of mandamus compelling Congress to act). If granted, the declaratory relief Shao requests would have no value, and thus would not redress her alleged injuries. As such, she lacks standing to bring her claims against the Congressional Defendants and the claims cannot go forward.

iv. Judge Rushing

Finally, Shao lacks standing to assert her non-monetary claims against Judge Rushing because she asks for relief the Court is not able to grant. In the Amended Complaint, Shao asks that Judge Rushing "be declared impeachment [sic] pursuant to California Penal Code §98 for severe obstruction of justice in violation of California Penal Code §96.5 and §182." Am. Compl. ¶ 376(4). California Penal Code §98 provides that "[e]very officer convicted of any crime defined in this Chapter, in addition to the punishment prescribed, forfeits his office and is forever disqualified from holding any office in [California]." Cal. Penal Code § 98. The section does not mention impeachment, so any declaration by this Court that a judicial officer is "impeached" pursuant to § 98 would have no effect. And in any event, this Court does not have the power to declare the guilt of an individual pursuant to a criminal statute, or to order the "impeachment" (or removal) of a state official. The remaining claims against Judge Rushing cannot go forward.

### 3. Patent Insubstantiability

Next, the Court dismisses Shao's claims against the American Inn Defendants, the Google Defendants, and Kevin Warnock as patently insubstantiable. Shao alleges that the American Inn Defendants aided and abetted the overall scheme of parental deprival by providing a platform for the various parties involved to communicate, including for attorneys to engage in *ex parte* communications with, and in the corruption of, state and federal judges. *See* Am. Compl. ¶¶ 370, 381–83. Shao further alleges that the Google Defendants conspired with Chief Justice Roberts and the McManis Defendants to hack into her computer, conduct various forms of surveillance on her, and prevent her from accessing online services provided by the Google Defendants. *See* Am. Compl. ¶¶ 305–14. Finally, Shao alleges that Kevin Warnock hacked into her computer to delete files, as part of a conspiracy orchestrated by the McManis Defendants to sabotage Shao's pending legal proceedings. *See* Am. Compl. ¶ 68. Because Shao's claims against these defendants are all "essentially fictitious," *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994) (quoting *Hagans v. Lavine*, 415 U.S. 528, 537 (1974)), the claims against the American Inn Defendants, the Google Defendants, and Warnock are dismissed as patently insubstantial. After briefly reviewing the standard for patent insubstantiability, the Court reviews Shao's claims against each set of defendants in turn.

#### a. Legal Standard

In limited cases, a court may dismiss a case *sua sponte* for lack of subject matter jurisdiction if a complaint is "'patently insubstantial'" and thus "present[s] no federal question suitable for decision." *Vasaturo v. Peterka*, 203 F. Supp. 3d 42, 44 (D.D.C. 2016) (quoting *Best*, 39 F.3d at 330). Declining to hear a claim because it is patently insubstantial is "reserved for complaints resting on truly fanciful *factual* allegations," while "*legally* deficient complaints" are

still reserved for 12(b)(6) dismissals.  *Id.* (quoting *Best*, 39 F.3d at 331 n.5).  Thus, to meet this standard, "claims [must] be flimsier than 'doubtful or questionable'—they must be 'essentially fictitious.'"  *Id.*  (quoting *Best*, 39 F. 3d at 330).  And "essentially fictitious" claims include "bizarre conspiracy theories, any fantastic government manipulations of [the] will or mind, [and] any sort of supernatural intervention."  *Id.* (alteration in original) (quoting *Best*, 39 F.3d 328 at 330).

### b.  American Inn Defendants

Because Shao's claims against the American Inns of Court, William A. Ingram American Inn of Court, and San Francisco Bay Area American Inn of Court are "essentially fictitious," they cannot move forward.  Shao asserts that the "giant gang, American Inns of Court" orchestrated "a series of multiple conspiracies . . . of judicial corruption with the common goal of permanent parental deprival and harassment since August 4, 2010."  Am. Compl. ¶ 5.  She further alleges that the American Inns of Court "started out as a social and professional networking arena for many attorneys, judges, and justices, but has become an inappropriate secret legal society in which financial interests and favors are traded behind the scenes, and outcomes of cases are decided before trial or appeal."  *Id.* ¶ 7.  As the Court understands Shao's accusations, she appears to believe both 1) that the American Inn Defendants facilitated a series of *ex parte* communications between the attorneys, clerks, and judges involved in Shao's custody litigation to predetermine the litigation's outcome or otherwise harass Shao during the pendency of the proceedings, and 2) that the American Inns of Court more generally is a dangerous organization providing a secret forum for illegal *ex parte* communications and judicial corruption.

On Shao's alleged facts, her claims against the American Inn Defendants involve exactly the type of "bizarre conspiracy theor[y]" that, even when viewed favorably toward Shao, is "clearly fanciful." *Best*, 39 F.3d at 330–31. Similar cases in this circuit have been dismissed as "clearly fanciful" under the doctrine of patent insubstantiality, including claims that government officials illegally wiretapped and facilitated "round-the-clock surveillance" of the plaintiff after he made comments to a TSA agent about security concerns, *Tooley v. Napolitano*, 586 F.3d 1006, 1008 (D.C. Cir. 2009), that the plaintiff was subjected to a campaign of harassment and surveillance by federal and state government officials originating from a string of unconnected events, *Curran v. Holder*, 626 F. Supp. 2d 30, 31 (D.D.C. 2009), and that a United States Senator hacked the plaintiff's phones and computers, tracked him by helicopter, and intentionally caused a city-wide power outage, *Lewis v. Bayh*, 577 F. Supp. 2d 47, 54-55 (D.D.C. 2008). The common theme in each of these claims was that they were not merely factually unsubstantiated, but factually fanciful to the point that they were "essentially fictitious," *Best*, 39 F. 3d at 330.

Shao's allegations against American Inn are similarly "conclusory and unsupported by factual details." *Curran*, 626 F. Supp. 2d at 34. Shao asserts, with no plausible foundation, that the American Inns of Court engaged in a conspiracy against her in order to predetermine the outcome of her custody litigation through a series of secret exchanges. *See* Am. Compl. ⁋ 7. She asserts that she lost prior cases because "the judges deciding her matters are all active members of the club the American Inns of Court, which provides opportunities for ex parte communications, favors, and gifts to flow between attorneys and judges." *Id.* ⁋ 10. Shao further alleges that American Inns of Court and the Supreme Court Justices have significant financial ties to one another, through a variety of donations, scholarships, business transactions, and gifts that lead to judicial corruption. *See, e.g.*, *id.* ¶¶ 23–24, 328–47. She believes that the Supreme

Court Justices, in refusing to recuse themselves and denying her various appeals, "further . . . made unlawful agreements to cover each other's financial interests with the American Inns of Court," *id.* ¶ 329, and more generally that the treatment of her cases by the Supreme Court provides "[a] clear example of such money-oriented corruption of the Roberts Court," *id.* ¶ 345.

Courts in this circuit have held that claims of a widespread conspiracy cannot go forward when a plaintiff "offers only a 'laundry list of wrongful acts and conclusory allegations to support her theory of conspiracy.'" *Curran*, 626 F. Supp.2d at 34 (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 233 (D.D.C. 2007). Shao provides no concrete factual support for her allegations of a wide-ranging, national conspiracy that supposedly involves lawyers and judges at all levels of the state and federal judiciary branches and is coordinated by the American Inn Defendants as a dangerous and corrupt intermediary. And the "laundry list of wrongful acts" she alleges, *id.* (quoting *Richards*, 480 F. Supp. 2d at 233), can simply be explained by a much more innocuous turn of events: the successive courts to have reviewed her claims disagreed with her arguments and found against her. Because Shao's conspiracy allegations are patently insubstantial, the Court dismisses all claims against the American Inn Defendants for lack of subject matter jurisdiction.

### c. The Google Defendants

Likewise, the Court finds that Shao's allegations against the Google Defendants are "essentially fictitious," and thus it dismisses the claims against them for lack of subject matter jurisdiction under the doctrine of patent insubstantiality. Shao claims that the Google Defendants conspired with the McManis Defendants and Chief Justice Roberts to harass her, including by hacking her computer in violation of the Wiretap Act. *See* Am. Compl. ¶¶ 305, 393. She asserts that Google "suspended services of Plaintiff's gmails without any preceding

notice because of Plaintiff's publication of the videos on the YouTube about the US Supreme Court Justices' financial interest with the Americans Inns of Court." *Id.* ¶ 67. Shao further alleges that emails she sent to various parties in her pending custody litigation were removed due to "email hackings by Google, Inc., and YouTube, Inc.," *id.* ¶ 247, and that comments on her personal YouTube page "were all systematically deleted by YouTube, Inc. within a day of SHAO having posted them," id. ¶ 306. Shao claims that all of her email addresses were subsequently suspended and that the Google Defendants escalated to conducting electronic surveillance on her and having vehicles follow her. *See id.* ¶¶ 307–13.

Shao asserts that Google and YouTube's decision to conspire with Chief Justice Roberts may have been motivated by a "special favor" the Chief Justice purportedly gave Google in an unrelated case. *Id.* ¶ 314; *see also* Docket, *Google, LLC v. Unwired Planet, LLC*, No. 17-357. Shao reads several routine steps in the *certiorari* process—including an extension of time Google sought to file its cert petition and the eventual placement of the petition on a conference list, which she characterizes as an improper "special conference"—as evidencing that "special favor." Am. Compl. ¶ 314. She concludes that the special favor, an illustration of the "money-oriented corruption of the Roberts Court," Am. Compl. at ¶ 345, could "explain why YouTube and Google might, without any notice, have been suspending all of SHAO's emails and YouTube services, and deleting all comments to SHAO's YouTube postings," *id.* ¶ 314.

As with Shao's claims against the American Inn Defendants, her allegations against Google and YouTube present "bizarre conspiracies" filled with "essentially fictitious facts." *Best*, 39 F.3d 328 at 330. Much like the plaintiffs in *Tooley* and *Curran*, who alleged that the government had coordinated surveillance campaigns against them following perceived slights, *see Tooley*, 586 F.3d 1007–08, *Curran*, 626 F. Supp. 2d at 34, Shao alleges that the Google

Defendants engaged in hacking, wiretapping, and physical surveillance as part of a conspiracy with the Chief Justice, presumably to hinder her exposition of the corruption she allegedly uncovered at the Supreme Court, *see id.* ¶¶ 305–14. These allegations of a "campaign of surveillance and harassment deriving from uncertain origins . . . constitute the sort of patently insubstantial claims" dismissed by courts in this Circuit. *Tooley*, 586 F.3d at 1010 (listing cases). The Court therefore dismisses the claims against the Google Defendants for lack of subject-matter jurisdiction.[11]

### d. Kevin Warnock

Finally, Shao's claim against Warnock involve the same type of "bizarre conspirac[y]" she alleges the Google Defendants are a part of, and because her allegations are "essentially fictitious," the Court dismisses the claim for lack of subject-matter jurisdiction as patently insubstantial. *Best*, 39 F.3d 328 at 330. Shao alleges that on April 5, 2018, she "discovered that about 3,000 files on three laptops of hers had been severely hacked by three specific individuals." Am. Compl. ¶ 315. According to Shao, she noticed the hack because "the authors' names for [files relating to one of Shao's cases] were altered from SHAO's name[]" to the name of other individuals on her computer. *Id.* Shao identifies Warnock as one such individual, and

---

[11] The Google Defendants separately move to dismiss Shao's claims for failure to state a claim because Shao does not make any factual allegations about the interception of a wire, oral, or electronic communication, when the interception of a communication is central to any Wiretap Act claim. *See* Google Defs.' Mot. Dismiss at 6, ECF No. 84 (citing 18 U.S.C. §§ 2510, 2511, 2520). The Court agrees. Shao bases her Wiretap Act claim solely on the Google Defendants' alleged deletion of posts and content linked to her Youtube and Google Accounts, suspension of those accounts, and interruption of other services provided by the Google Defendants. *See* Am. Compl. ¶¶ 393–400. While summarily concluding that the Google Defendants conspired to intercept electronic communications, Shao thus fails to provide *any* facts to support that conclusion. Her amended complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

alleges that following her discovery, Warnock "appeared to be angered . . . and started purging files, disabled keyboard, and would like [sic] to force SHAO to use wireless internet to allow them to continue monitoring SHAO's activities." *Id.* ¶ 318. Shao alleges that Warnock caused the deletion of litigation files, *id* ¶ 402, the destruction of her law firm website, shaolawgroup.com, *id.* ¶ 406, forced Shao to reformat her computer over ten times, *id.* ¶ 407, and somehow "damaged internet units" three times, *id.* Warnock supposedly hacked Shao's computer in order to assist the "co-conspirators in this case," including the McManis Defendants, Sussman, Judge Zayner, and possibly the Google Defendants. *See id.* ¶¶ 308, 404. The information purportedly gathered by Warnock was allegedly shared with this Court, in order to further the conspiracy to deny Shao access to justice. *See id.* ¶ 404.

As with the American Inn and Google Defendants, Shao's claims against Warnock involve a "bizarre conspirac[y]" with no factual support. *Best*, 39 F.3d 328 at 330. Shao alleges that some file names on her computer were changed and that other files or information was lost over the past year, and concludes from these facts that she was the victim of a prolonged hacking campaign, coordinated by members of the widespread, government-linked conspiracy against her. As with the Google Defendants, she infers from otherwise innocuous incidents that Warnock—who Shao does not know, aside from his name allegedly appearing on files on her computer—coordinated with defendants more directly involved in the overall conspiracy to hack into her accounts and interfere with her legal cases. Shao does nothing but provide a "laundry list of wrongful acts and conclusory allegations to support her theory of conspiracy," *Curran*, 626 F. Supp.2d at 34 (quoting *Richard*, 480 F. Supp. 2d at 233), and the Court accordingly dismisses the claim against Warnock for lack of subject matter jurisdiction under the doctrine of patent insubstantiality.

#### 4. Aiding and Abetting Liability

Finally, the Court dismisses Shao's last remaining claims, against Orlando, Fadem, Mitchell, Sussman, and Wang, because they do not state a valid federal cause of action. Shao only brings one claim against each of these five defendants, aiding and abetting, and all five are sued specifically for "aid[ing] and abett[ing] the common scheme of permanent parental deprival." Am. Compl. ¶¶ 386, 387, 389, 390, 391. Because this suit is expressly premised on federal question jurisdiction, *id.* ¶ 2, and all other claims have been dismissed, Shao must point to a federal source of law her aiding and abetting claim can be brought under. "Congress has not enacted a general *civil* aiding and abetting statute." *Owens*, *v. BNP Paribas, S.A.*, 897 F.3d 266, 277 (D.C. Cir. 2018) (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994)). And Shao does not point to any federal source of law her aiding and abetting claim arises under. Absent a source for federal question jurisdiction, Shao's aiding and abetting claims must be dismissed for lack of subject matter jurisdiction.[12]

---

[12] Shao notes that Wang "aided and abetted the court crimes that violated 42 U.S.C. 1983 as stated in Count VI." Am. Compl. ¶ 387. And while the complaint does not specify which violations Orlando, Fadem, Mitchell, and Sussman aided and abetted, all four are also alleged to have been involved in the effort to subvert Shao's state custody case. *See id.* ¶¶ 386, 389–91. To the extent Shao's aiding and abetting claims against Wang—or Orlando, Fadem, Mitchell, and Sussman—can be characterized as § 1983 claims, the Court dismisses them for failure to state a claim. In *Central Bank*, the Supreme Court found that § 10(b) of the Securities Act did not provide for aiding and abetting liability because the text of the statute clearly did not contemplate such liability. 511 U.S. at 176–77. "The key takeaway from *Central Bank* is that when Congress creates a private cause of action, aiding and abetting liability is not included in that cause of action unless Congress speaks to it explicitly." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 277 (D.C. Cir. 2018). Courts to have addressed the issue have found that because Congress did not explicitly provide for aiding and abetting liability in the text of § 1983, § 1983 does not support aiding and abetting liability. *See W. Daniels Land Ass'n v. Wasatch Cnty.*, No. 2:10-cv-558, 2011 WL 1584822, at *2 (D. Utah Apr. 26, 2011) (noting that, pursuant to *Central Bank*, there is no aiding and abetting liability under § 1983); *Theriot v. Woods*, No. 2:09-cv-199, 2010 WL 623684, at *7 (W.D. Mich. Feb. 18, 2010) (same); *see also Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 317 (2d Cir. 2007) (Korman, J., concurring in part and dissenting in part) ("Because Congress has not enacted a comparable civil aiding-and-abetting statute, a

# IV. CONCLUSION

For the foregoing reasons, Shao's renewed motion to disqualify this Court and to change venue (ECF No. 142) and motion to strike the McManis Defendants' motion to dismiss (ECF No. 81) are **DENIED**. The motions to dismiss by the California Judicial Defendants (ECF No. 31), Janet Everson (ECF No. 45), the American Inn Defendants (ECF No. 58), the McManis Defendants (ECF No. 65), Carole Tait-Starnes (ECF No. 75-1), Esther Chung (ECF No. 80), the Google Defendants (ECF No. 84), and the Santa Clara Defendants (ECF No. 117) are **GRANTED**. All remaining claims against all other defendants are **DENIED** for lack of subject matter jurisdiction. And because this case has been dismissed for lack of subject matter jurisdiction, the remainder of the pending motions are **DENIED AS MOOT**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: January 17, 2019                                    RUDOLPH CONTRERAS
                                                          United States District Judge

---

private party could not be subject to such liability in a civil action under 42 U.S.C. § 1983." (citing *Central Bank*, 511 U.S. at 181–82)).